UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────x
                                 :
SECURITIES EXCHANGE COMMISSION,  :
                                 :
            Plaintiff,           :
    v.                           :
                                 :
RESERVE MANAGEMENT COMPANY, INC.,:
RESRV PARTNERS, INC., BRUCE BENT SR., :  No. 09-CV-4346 (PGG) (AJP)
and BRUCE BENT II,               :
                                 :       ECF Case
            Defendants,          :
    and                          :       ORAL ARGUMENT REQUESTED
                                 :
THE RESERVE PRIMARY FUND,        :
                                 :
            Relief Defendant.    :
                                 :
─────────────────────────────────x

**RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC.,
BRUCE BENT SR. AND BRUCE BENT II'S REPLY MEMORANDUM OF LAW
<u>IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT</u>**

Robert B. McCaw
Lori A. Martin
Christopher J. Meade
Anne K. Small
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: 212-230-8800
Facsimile: 212-230-8888

*Counsel for Defendants Reserve Management Company, Inc., Resrv Partners, Inc., Bruce Bent Sr. and Bruce Bent II*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .......................................................................................................................1

ARGUMENT ................................................................................................................................3

I.   THE SEC FAILS TO ALLEGE ADEQUATELY SCIENTER ........................................3

     A.   The SEC's Attempt To Show Motive Beyond A Generalized Business
          Objective Fails ........................................................................................................3

     B.   The SEC Fails To Respond To The Fact That Defendants' Efforts To
          Consult Regulators—Including The SEC—Auditors, Lawyers, And Others
          Are Flatly Inconsistent With An Intent To Defraud ................................................5

     C.   The SEC Is Incorrect That Instantaneous Knowledge Of All Facts Can Be
          "Presumed" Based On Access Or An Ill-Defined "Duty To Monitor" ...................6

II.  THE COMPLAINT FAILS TO ALLEGE MATERIAL MISSTATEMENTS OR
     OMISSIONS .......................................................................................................................8

     A.   The SEC Fails To Address That The Valuation Of Lehman Securities Was
          A Statement Of Opinion And That Defendants' Statements Were
          Immaterial ................................................................................................................9

     B.   The SEC Fails To Counter Defendants' Argument That Their Stated Intent
          To Support The Fund Was A Non-Actionable Forward Looking Statement ........10

     C.   The SEC Fails To Cite A Single Case In Which Liability Attached Where
          The Allegedly Omitted Facts Were Disclosed Within 24 Hours ..........................12

III. THE COMPLAINT'S NON-FRAUD CLAIMS ALSO FAIL .........................................13

CONCLUSION ............................................................................................................................13

## TABLE OF AUTHORITIES

### CASES

*Acito v. IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995) ...................................................................................................4, 12

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)..............................................................................................................5

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009).....................................................................................................13

*Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*,
   479 F. Supp. 2d 349 (S.D.N.Y. 2007).......................................................................................9

*Gurary v. Winehouse*,
   190 F.3d 37 (2d Cir. 1999).......................................................................................................10

*Hart v. Internet Wire, Inc.*,
   163 F. Supp. 2d 316 (S.D.N.Y.), *aff'd*, 50 F. App'x 464 (2d Cir. 2001)...................................7

*Heller v. Goldin Restructuring Fund, L.P.*,
   590 F. Supp. 2d 603 (S.D.N.Y. 2008).......................................................................................4

*Higginbotham v. Baxter International, Inc.*,
   495 F.3d 753 (7th Cir. 2007) ...................................................................................................13

*In re Glenayre Technologies, Inc. Securities Litigation*,
   982 F. Supp. 294 (S.D.N.Y. 1997), *aff'd*, 201 F.3d 431 (2d Cir. 1999)..................................12

*In re PXRE Group, Ltd., Securities Litigation*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009).......................................................................................4

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)..................................................................................................3, 5

*Kinsey v. Cendant Corp.*,
   No. 04 Civ. 0582, 2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005) ............................................7

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)......................................................................................................7

*Podany v. Robertson Stephens, Inc.*,
   318 F. Supp. 2d 146 (S.D.N.Y. 2004).......................................................................................9

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ........................................................................................... 11

*Ross v. A. H. Robins Co.*,
   607 F.2d 545 (2d Cir. 1979) ............................................................................................. 3

*SEC v. Cuban*,
   No. 3:08-CV-2050-D, --- F. Supp. 2d ----, 2009 WL 2096166 (N.D. Tex. July 17, 2009) ....... 8

*SEC v. Texas Gulf Sulphur Co.*,
   401 F.2d 833 (2d Cir. 1968) ........................................................................................... 12

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Co.*,
   75 F.3d 801 (2d Cir. 1996) ............................................................................................... 4

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ..................................................................................... 3, 4, 7

*South Cherry Street, LLC v. Hennessee Group LLC*,
   No. 07-3658-cv, --- F.3d ----, 2009 WL 2032133 (2d Cir. July 14, 2009) ....................... 3, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ......................................................................................................... 3

## INTRODUCTION

The Complaint tells a story of an alleged fraud that occurred during a period of unprecedented market chaos caused by the Lehman bankruptcy and that lasted for approximately *24 hours*.  The fraud allegedly began soon after the Lehman announcement, when, while markets were reeling, Defendants purportedly misrepresented the estimated value of Lehman paper—even though (as the Complaint acknowledges) Defendants made clear that there was "no valid market" for the paper—and allegedly continued when Defendants told the Board and the public of their intent to enter into a credit support agreement.  With the landscape changing minute by minute, Defendants sought the advice and involvement of lawyers, accountants, Board members, regulators—including the Fed and the *SEC itself*—and spoke with investment bankers and competitors as they sought to save the Fund.  As the Complaint acknowledges, Defendants disclosed all of the facts that were allegedly omitted by the very next morning.  During these 24 hours, Defendants did not seek to (and did not) profit from their actions but, rather, sought to save the Fund and protect the Fund's investors.  And it was the Lehman bankruptcy—not any of Defendants' actions or statements—that caused the Fund to break the buck.

Although the SEC is more than willing to second-guess Defendants' actions on that chaotic day, the SEC has failed to adequately allege scienter, *i.e.*, facts that give rise to a "strong inference" of fraudulent intent.  Defendants' motive to save the Fund and protect investors' investment is the type of "generalized" motive, common to most corporate officials, that is insufficient as a matter of law; and the one case that the SEC cites to distinguish this line of cases is inapposite.  Nor can the SEC ignore the fact that Defendants sought guidance from numerous individuals and regulators (including the SEC itself) during the 24 hours, as these facts undercut any inference of fraudulent intent.  And the SEC is forced to make a remarkable assertion in order to compensate for the fact that the Complaint fails to allege that Defendants even *knew*

certain facts that they allegedly omitted:  Its opposition asserts that Defendants may be *presumed* to have had *instantaneous* knowledge of all facts—a proposition with no support in the case law and that would strip the scienter requirement of any meaning.  *See* Part I *infra*.

The SEC also fails to counter Defendants' arguments that there were no actionable misstatements or omissions.  Specifically, with respect to the valuation of Lehman securities, the SEC offers no response to Defendants' arguments that statements regarding the valuation were non-actionable statements of opinion (Mot. 16-17) and that, in context, Defendants' estimates were not material (Mot. 23-24).  Thus, at a minimum, the Court should dismiss claims relating to the Lehman valuation; and, to the extent that the SEC's proposed relief under 25(c) is premised on alleged mispricing of the Fund based on the Board's valuation of Lehman, that relief must also necessarily fail.  Similarly, the SEC fails to counter the argument that a statement of "intent" (whether to provide a credit support agreement or protect the Fund's NAV) is only actionable if the speaker did not have the intent at the time.  Finally, with respect to the alleged omissions: Although Defendants were faced with unprecedented market disruption triggered by the Lehman bankruptcy filing, the SEC acknowledges that Defendants disclosed all facts allegedly withheld by the next morning.  Tellingly, the SEC does not cite a single case—from the over 75 years since the enactment of the federal securities laws—involving an actionable omission where, as here, the allegedly omitted facts were disclosed within 24 hours.  *See* Part II *infra*.

**ARGUMENT**

**I.     THE SEC FAILS TO ALLEGE ADEQUATELY SCIENTER**

**A.     The SEC's Attempt To Show Motive Beyond A Generalized Business Objective Fails**

The SEC's opposition fails to make up for the deficiencies in the Complaint's allegations of motive, which fail to create a "strong inference" of fraudulent intent.[1]  The SEC has never suggested, let alone alleged, that Defendants sold (or attempted to sell) shares during the one-day purported fraud.  *See, e.g.*, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) (affirming dismissal of complaint; "There is no claim here that false statements were made in an effort to sell off shares held by management[.]").  Rather, Defendants acted to try to save the Fund and protect its investors.  This motive, however, would apply to "most corporate directors and officers," and is the type of "generalized" motive that is insufficient as a matter of law to create an inference of fraudulent intent.  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) ("Motives that are generally possessed by most corporate directors and officers do not suffice[.]"); *see also, e.g.*, *S. Cherry St., LLC v. Hennessee Group LLC*, No. 07-3658-cv, --- F.3d

---

[1]     Although the SEC suggests that the "strong inference" standard might only apply to private litigants (Opp. 11 & n.8), this is incorrect.  The SEC engages in a rhetorical sleight-of-hand, taking advantage of the fact that both Rule 9(b) and the Private Securities Reform Act of 1995 ("PSLRA") require a plaintiff to plead facts giving rise to a "strong inference" of scienter.  Two years ago, in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the Supreme Court held that a "strong inference" under the PSLRA requires more:  "[T]o qualify as 'strong,'" the Court held, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.* at 314.  As Defendants explained in their opening brief (at 13 & n.7), the Second Circuit has yet not addressed whether, after *Tellabs*, the "strong inference" under Rule 9(b) must meet the *Tellabs* PSLRA standard, and courts have split on that question.  But there is no split as to whether, at a minimum, Rule 9(b) requires the SEC to meet at least the standard that has applied for three decades, *see, e.g.*, *S. Cherry St., LLC v. Hennessee Group LLC*, No. 07-3658-cv, --- F.3d ----, 2009 WL 2032133, at *9 (2d Cir. July 14, 2009); *Ross v. A. H. Robins Co.*, 607 F.2d 545, 556 (2d Cir. 1979) (requiring "strong inference" of fraudulent intent under 9(b)); the only question is whether *Tellabs* requires *more*.

----, 2009 WL 2032133, at *9 (2d Cir. July 14, 2009); Mot. 12.[2] Indeed, Defendants were willing to sacrifice their business to protect the Fund's shareholders, undercutting even generalized allegations of scienter.[3]

The SEC seeks to distinguish the precedent involving "generalized" motives by arguing that "Defendants possessed a concrete and personal stake in the success or failure of the Reserve Funds" (Opp. 23), yet the sole case upon which the SEC relies demonstrates why the Complaint is deficient. *See id.* (citing *Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 621 (S.D.N.Y. 2008)). The SEC correctly states that the court in *Heller*, which concluded that scienter had been adequately pleaded, noted that the defendants there "possessed the unique incentive, as managers of a struggling, privately-owned investment fund in which they possessed a personal financial stake." Opp. 23 (internal quotation marks and citation omitted). But the court's decision did not turn on the mere fact that the defendants had a "personal financial stake" in their fund, as the SEC suggests. Rather, the court explained, the defendants personally *gained* from the alleged fraud, which allegedly caused the plaintiff to invest in their fund, "both in terms of management fees and . . . returns on required personal investments made in the [f]und." *Heller*, 590 F. Supp. 2d at 620 (citation omitted). No such gain or attempted gain is alleged here.

---

[2] For example, the Second Circuit has rejected the following motives as insufficient to create a strong inference of scienter (because they are "generalized" motives that would be held by most corporate officials): the desire of executives to keep the positions they hold, *Shields*, 25 F.3d at 1130; the desire to maintain a high bond or credit rating, *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 814 (2d Cir. 1996); and incentive compensation, *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995). As noted (Mot. 12), if the mere fact that a company was in trouble was sufficient to make out a motive for its executives to commit fraud, "virtually any company that attempted to raise capital, especially in a woeful economic climate, would face specious securities fraud allegations." *In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 533 (S.D.N.Y. 2009); *see also id.* at 532 (collecting cases).

[3] While the SEC perhaps thinks (with the benefit of hindsight) that Defendants should have closed up shop on the morning of September 15, Defendants' motive to try to save the business does not and cannot create a strong inference of fraudulent intent. *See* n.2 *supra*.

- 4 -

### B. The SEC Fails To Respond To The Fact That Defendants' Efforts To Consult Regulators—Including The SEC—Auditors, Lawyers, And Others Are Flatly Inconsistent With An Intent To Defraud

The SEC fails to respond to the fact that many of its own allegations undercut an inference of fraudulent intent. The SEC acknowledges that during the roughly 24 hours of the purported fraud—a period of unprecedented market chaos—Defendants actively sought the advice, involvement, and guidance of a number of lawyers, auditors, Board members, and regulators, as Defendants sought to respond to rapidly changing events.[4] Indeed, Defendants and their counsel repeatedly communicated with—and sought guidance from—the SEC itself. *See, e.g.*, Osnato Decl. Ex. 15, 9/16 Mins. at 1-2.[5] Notably, the SEC does not allege that any of Defendants' statements to the SEC were false or misleading.

Instead, the SEC alleges that these allegations ought not be considered on a motion to dismiss. Opp. 21. Contrary to the SEC's unsupported assertion, these allegations are of paramount importance as the Court evaluates whether the SEC has met its burden to plead allegations that create a strong inference of fraudulent intent: That Defendants sought the advice and guidance of a large number of individuals, entities, and regulators—including the SEC— during the chaotic 24 hours undercuts any inference of fraudulent intent. *See Kalnit*, 264 F.3d at 140-41 (because plaintiff's theory "defies . . . reason," it "does not yield a reasonable inference of fraudulent intent" (internal quotation marks omitted)); *see also Ashcroft v. Iqbal*, 129 S. Ct.

---

[4] The Complaint describes how Defendants involved and consulted "certain Independent Trustees and their outside regulatory counsel, inside and outside counsel to RMCI and, at various times, certain managing directors of RMCI and a representative from KPMG LLP, the Primary Fund's outside auditor." Compl. ¶ 54. The Complaint further alleges that Defendants called the Federal Reserve. Compl. ¶ 53. Defendants also sought guidance from internal counsel, seeking guidance, for example, on both the 1:19 e-mail and the *Reserve Insights* piece. Mot. 11 n.6.

[5] The SEC conspicuously omits these facts from its Complaint and opposition; it does not, however, contest that these communications occurred.

1937, 1950 (2009) (a court must "draw on its judicial experience and common sense" in evaluating whether a complaint, as a whole, states a "plausible claim for relief" under Rule 8).

### C. The SEC Is Incorrect That Instantaneous Knowledge Of All Facts Can Be "Presumed" Based On Access Or An Ill-Defined "Duty To Monitor"

In response to Defendants' argument that the Complaint fails to allege critical facts—namely, that Defendants *knew* the facts that they allegedly failed to disclose—the SEC offers a novel legal proposition. As the Defendants pointed out (at 14-15), although the Complaint alleges that Defendants did not disclose redemption levels at the 9:30 a.m. Board meeting (Compl. ¶ 60), the Complaint fails to allege that Defendants knew of the redemption levels at that time. Similarly, the Complaint faults Defendants for not disclosing at the 1 p.m. Board meeting that State Street had suspended redemptions (Compl. ¶¶ 62, 75(a)), but does not allege that Defendants had knowledge of the suspension at the time of the 1 p.m. meeting.[6] Mot. 15.

The SEC seeks to correct these deficiencies in its Complaint by suggesting that access to facts, and therefore knowledge of such facts, can and should be "presumed," such that Defendants should be deemed to have *instantaneous* knowledge of all facts. *See* Opp. 20 ("access to that information can be presumed"). Yet the law does not recognize any such presumption. Under Rule 9(b), it is the SEC's burden to plead facts with particularity that give rise to an inference of fraudulent intent, not Defendants' burden to overcome a "presumption"[7]

---

[6] And with respect to the level of redemptions discussed at the 1 p.m. Board meeting: Even putting aside the official Board minutes, which state that Defendants disclosed there had been $16.5 billion in redemption requests and there appeared to be "a run on the Primary Fund" (Osnato Decl. Ex. 3, 9/15 Mins. at RF-SEC-00178719), the Complaint conclusorily asserts that Defendants "vastly understated the actual level of redemptions as of 1:00 p.m." (Compl. ¶ 75(b)), but fails to allege the actual redemption levels or what Defendants said. Mot. 21 n.13.

[7] The SEC articulates its presumption in a variety of ways but, in all cases, seeks to relieve itself of its pleading burden. *See, e.g.*, Opp. 19 (arguing that Bent II "cannot seriously argue that no one at RMCI told him" that State Street had stopped funding redemptions); *id.* at 20 ("the Bents could have and should have found out" the level of redemptions and that State Street stopped finding redemptions).

that they knew certain facts (such as redemption levels or State Street's suspension of redemption) at specific times, even though these facts are not alleged in the Complaint.[8]

And the SEC cites no support for the remarkable notion that if a corporate official has access to information, that information can be *instantaneously* attributed to that official. Such a standard would be unworkable and would strip the scienter requirement of any meaning.[9] In the present case, for example, the Complaint alleges a day-long fraud, during which Defendants went from meeting to meeting, and phone call to phone call, speaking with regulators, lawyers, auditors, and Board members. It is not enough for the SEC to suggest, in hindsight, that during this time Defendants ought to have obtained or focused on certain information—against the backdrop of unprecedented illiquidity in the world financial markets, and the largest run on banks since the Great Depression—rather than other information, or ought to have prioritized their time differently. *See Hart v. Internet Wire, Inc.*, 163 F. Supp. 2d 316, 321 (S.D.N.Y.) (allegations that reduce to the assertion that a defendant "ought to have known" are insufficient (internal quotation marks omitted)), *aff'd*, 50 F. App'x 464 (2d Cir. 2001); *cf. Shields*, 25 F.3d at

---

[8] It is well-established that mere assertions that "a corporate officer had 'access' to information that contradicted the alleged misstatements are insufficient to raise a strong inference of scienter." *Kinsey v. Cendant Corp.*, No. 04 Civ. 0582, 2005 WL 1907678, at *6 (S.D.N.Y. Aug. 10, 2005). And while the SEC is correct that a plaintiff may in the appropriate case establish recklessness by demonstrating that the defendant had access to certain facts (Opp. 17), the Second Circuit made clear in the very case invoked by the SEC, *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000), that there are "several important limitations on the scope of liability for securities fraud based on reckless conduct." Most pertinent here, "[w]here plaintiffs contend that defendants had access to contrary facts, they must *specifically identify* the reports or statements containing this information." *Id.* (emphasis added). The SEC has failed to specifically identify where (if anywhere) this information resided within RMCI.

[9] Just last month, the Second Circuit reiterated that recklessness means "'conscious recklessness,' *i.e.*, a state of mind *approximately actual intent*, and *not merely a heightened form of negligence*." *S. Cherry St.*, 2009 WL 2032133, at *10 (internal quotation marks omitted; emphasis in original). The "presume[ption]" of instantaneous access advanced by the SEC cannot be squared with this requirement.

1129 ("The pleading strongly suggests that the defendants should have been more alert and more skeptical, but nothing alleged indicates that management was promoting a fraud.").

Nor does the SEC adequately explain the basis for its alternative theory: that Defendants had a "duty to monitor," on an ongoing basis, all of the information the SEC now asserts Defendants *should* have known. The SEC does not offer any contours of the purported duty it would have imposed on Defendants: Apparently, it would seek to impose on a defendant a duty to know all information at all times (even in the midst of unprecedented worldwide market chaos), and to disclose all information instantaneously. Such a duty is ungrounded in rules or precedent, and would be practically unworkable. *Cf. SEC v. Cuban*, No. 3:08-CV-2050-D, --- F. Supp. 2d ----, 2009 WL 2096166, at *13 (N.D. Tex. July 17, 2009) (dismissing complaint for failure to adequately allege duty, explaining that "[t]o permit liability based on" the SEC's wide-reaching theory "would exceed [its] authority").

Because the Complaint fails to allege Defendants' knowledge, any claims relating to statements or omissions involving redemption levels (at the 9:30 a.m. and 1 p.m. Board meetings (Compl. ¶¶ 60, 75(b))), or State Street's suspension of redemptions (at the 1 p.m. Board meeting (Compl. ¶ 75(a))) should be dismissed.

## II. THE COMPLAINT FAILS TO ALLEGE MATERIAL MISSTATEMENTS OR OMISSIONS

The SEC's opposition ignores Defendants' arguments with respect to the two categories of alleged misstatements (relating to (1) the valuation of the Fund's Lehman holdings (Compl. ¶¶ 57-58), and (2) Defendants' "intent" to support the Fund (*e.g.*, Compl. ¶¶ 71-73, 77-78, 92)). And, with respect to the alleged omissions (pertaining to (1) the level of redemptions (Compl. ¶ 60), and (2) liquidity from State Street (Compl. ¶¶ 61-62, 75(a))), the SEC fails to cite a single

case in which liability has been found when all of the alleged omitted facts were disclosed within 24 hours.  *See* Mot. 15 (describing four categories of alleged misstatements and omissions).

### A. The SEC Fails To Address That The Valuation Of Lehman Securities Was A Statement Of Opinion And That Defendants' Statements Were Immaterial

The opposition completely fails to respond to Defendants' argument (at 16-17) that Defendants' views of the appropriate valuation for Lehman debt on the morning of September 15 were non-actionable statements of opinion.  As explained, valuation of such securities, for which no organized market exists, is "considerably more a statement of opinion than a report of an objectively determinable fact."  *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 362 (S.D.N.Y. 2007).  To state a claim for fraud, the SEC thus must allege facts demonstrating "with particularity that defendants did not sincerely believe the opinion they purported to hold."  *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004).  The Complaint fails to do so.  And the opposition offers no response to these arguments.

The SEC also fails to respond to Defendants' argument (at 23-24) that, in context, Defendants' statements regarding the valuation of Lehman were not material.  The SEC conclusorily asserts that in its view certain misstatements or omissions "are plainly material" (Opp. 25), but its materiality discussion (Opp. 24-26) makes no mention of Defendants' alleged statements and omissions regarding the valuation of Lehman paper.  The Complaint alleges that Defendants made a material misstatement by telling the Board that bids on Lehman papers were "'being thrown out there anywhere from 45 to 80 cents on the dollar.'"  Compl. ¶ 57 (alteration incorporated).  But *the very same paragraph* acknowledges that Defendants told the Board "that there 'was no valid market' for Lehman paper."  *Id.*; *see also, e.g.*, Osnato Decl. Ex. 3, 9/15 Mins. at RF-SEC-00178717 (market indicators were merely "third party analysts' conjectures"); *see generally* Mot. 23-24.

Thus, at a minimum, this Court should dismiss the SEC's claims to the extent they are based on allegations regarding Defendants' view of the appropriate valuation of Lehman debt on the morning of September 15 (Compl. ¶¶ 57-58).  And, to the extent that the SEC's proposed relief under 25(c) is premised on an incorrect valuation of Lehman (or alleged misstatements or omissions relating to the valuation of Lehman), that relief must also necessarily fail.

### B. The SEC Fails To Counter Defendants' Argument That Their Stated Intent To Support The Fund Was A Non-Actionable Forward Looking Statement

The SEC also fails to respond adequately to Defendants' argument (at 17-21) that statements of intent—such as an intent to enter a credit support agreement or an intent to support the Fund's NAV—are not actionable unless the plaintiff alleges facts establishing that, at the time the statement was made, the defendant intended not to perform.  *See Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir. 1999).  But the Complaint alleges no such facts, and the SEC fails to respond to this case law.

The SEC's allegations essentially boil down to the assumption that Defendants *must have* misrepresented their intention, because *as it turns out* (on this extraordinary day in which the landscape was changing by the minute), they did not provide the support ultimately required and their other efforts to support the Fund were unsuccessful.  Compl. ¶¶ 78, 115-17.  But that is not the test.  That Defendants intended to enter a credit support agreement is supported by the fact that, as the SEC alleges, Defendants and their counsel took steps toward a credit support agreement.  Compl. ¶ 98.  Indeed, as the SEC knows (but fails to acknowledge), Defendants and counsel consulted with the SEC a number of times on September 15 about the credit support agreement.  In addition, consistent with Defendants' statement that they intended to support the Fund to "whatever degree . . . required," Defendants pursued numerous avenues to try to save the Fund (such as seeking assistance from the Fed (Compl. ¶ 53); negotiating with investment

- 10 -

bankers and competitors as they searched for a possible buyer (Compl. ¶¶ 104-05, 107); and taking steps toward a credit support agreement (Compl. ¶ 98)).

The SEC seeks to read one of Defendants' statements—that they intended to support the Fund's NAV to "whatever degree . . . required"—as relating not to the pursuit of every avenue, but as only pertaining to the amount Defendants intended to provide. Opp. 12-15. But, even so limited, the SEC ignores the relevant question under a scienter analysis: what did Defendants *believe* would be required. In other words, if a speaker believes that a certain amount will be required, stating an intention to provide that amount is fraudulent only if there was no such intention. And the fact that Defendants had the "capacity" to support the Fund at this level provides inferential support that they had such an intention. Mot. 20 n.11.[10] That more is ultimately required does not render the initial intent fraudulent. *See, e.g.*, *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (defendant is not required to anticipate a doomsday scenario).[11]

Finally, and shockingly, the SEC again asserts that the 1:19 e-mail was fraudulent because the e-mail stated that RMCI was awaiting "final approval" from the SEC for the credit support agreement though "no request for approval had been submitted." Opp. 15. Yet the SEC has ripped the relevant statement in two, and the full statement contains no possible misstatement

---

[10] Somewhat oddly, the SEC attempts to convert a factual statement about Defendants "capacity" to support the Fund into a purported concession relating to Defendants' intent. A one-sentence footnote in Defendants' opening brief reads: "At the time the statement [in the 1:19 email] was made, Defendants had the capacity to support the NAV, based on an 80% valuation of Lehman, so long as redemptions stayed in a certain range." Mot. 20 n.11. According to the SEC, with this footnote, Defendants "profess that their intention was not . . . to protect the Fund to whatever degree was required." Opp. 13. But, on its face, the footnote is a statement of historical *fact*; it says nothing about Defendants' intent. It is, moreover, a statement about Defendants' own capacity, not about Defendants' ability to seek to protect the Fund in other ways, such as by seeking assistance from the Fed (Compl. ¶ 53) or private parties (Compl. ¶¶ 104-05, 107).

[11] *See also* Mot. 24-25 (Defendants' statements with respect to intent to enter a credit support agreement were, in context, immaterial). In addition, as noted, the Fund broke the buck due to the bankruptcy of Lehman, not because of any alleged misstatement or omission.

(or ambiguity).  The e-mail in question (stating that RMCI was awaiting "final approval" from the SEC) was sent only to counsel and four other officers or employees of RMCI and, within 10 minutes, counsel replied to the entire group that "*[w]e haven't entered into the agreements yet*; *that's why Bruce's email said we intend to.*"  Martin Decl. Ex. A, 1:29 p.m. E-mail (emphasis added); Mot. 19.  It is inappropriate (and misleading) for the SEC to ask the Court to evaluate only half of the relevant statement, especially in light of the fact that the other half makes clear that there was no such misstatement.

> **C.     The SEC Fails To Cite A Single Case In Which Liability Attached Where The Allegedly Omitted Facts Were Disclosed Within 24 Hours**

The SEC fails to cite a single case in which liability is found when all the allegedly omitted facts were disclosed within 24 hours.[12]  Indeed, the SEC fails to cite a single case in which delay in disclosure—of any length—was found to be actionable.  Instead, the SEC cites only *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 850 n.12 (2d Cir. 1968) (en banc), where the Second Circuit held that "timing of disclosure is a matter [of] business judgment," and *In re Glenayre Technologies, Inc. Securities Litigation*, 982 F. Supp. 294, 297 (S.D.N.Y. 1997), in which the court explained that "defendants had a right to ensure that any announcement . . . be accurate and the timing of such an announcement is a matter of business judgment," *aff'd*, 201 F.3d 431 (2d Cir. 1999).[13]  Although the SEC ignores the holdings of these cases—that timing of disclosure involves a matter of "business judgment"—the SEC acknowledges that "the Fund had an obligation to ensure that disclosures were accurate."  Opp. 26.  It is precisely that obligation—

---

[12]     As noted, the Complaint also fails to allege that Defendants had knowledge of the relevant facts at the time that they allegedly failed to disclose them.  *See* Part I.C. *supra*.

[13]     The SEC also oddly asserts, in a footnote, that "Defendants' reliance on *Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) . . . is misplaced."  Opp. 26 n.17.  As Defendants pointed out (at 22), *Acito* rejected the very theory upon which the SEC relies, holding:  "Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud."  47 F.3d at 53.

- 12 -

against the backdrop of unprecedented and quickly-changing market conditions—that renders the SEC's theory of a duty of instantaneous disclosure both without legal support and wholly inappropriate. "Taking the time necessary to get things right is both proper and lawful. Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 761 (7th Cir. 2007) (Easterbrook, J.). Because the law does not (and cannot) require instantaneous disclosure, and because the facts allegedly omitted were disclosed within 24 hours, there were no actionable omissions as a matter of law.

### III.  THE COMPLAINT'S NON-FRAUD CLAIMS ALSO FAIL

The SEC closes its opposition by asserting that (1) "Defendants make no attempt to address the Commission's claims that do not require that fraudulent intent be pled"; and (2) "Defendants' arguments also ignore entirely the Commission's 'control person' claims[.]" Opp. 27. Both assertions are in error. Defendants noted in their opening brief (at 23 n.15) that all seven of the SEC's claims are predicated on alleged misstatements or omissions, and all seven require the SEC to plead materiality. To the extent that the SEC's claims rest on inactionable statements of opinion or intention (Mot. 16-21), they too fail, irrespective of whether scienter must be pled. And the SEC's assertion that "Defendants' arguments . . . ignore entirely" the SEC's control person claims flies in the face of well-established law:  Where, as here, a complaint fails to adequately pled a "primary violation," it thereby fails to adequately plead "control person liability." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 207 (2d Cir. 2009).

### CONCLUSION

For the foregoing reasons and those in Defendants' opening brief, the motion to dismiss should be granted.

- 14 -

August 12, 2009

                                      Respectfully submitted,

                                      <u>s/ Lori A. Martin</u>
                                      Robert B. McCaw
                                      Lori A. Martin
                                      Christopher J. Meade
                                      Anne K. Small
                                      WILMER CUTLER PICKERING
                                         HALE AND DORR LLP
                                      399 Park Avenue
                                      New York, NY 10022
                                      Telephone: 212-230-8800
                                      Facsimile: 212-230-8888
                                      lori.martin@wilmerhale.com

                                      *Counsel for Defendants Reserve*
                                      *Management Company, Inc., Resrv*
                                      *Partners, Inc., Bruce Bent Sr. and*
                                      *Bruce Bent II*