# DEWEY & LEBOEUF

Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019

tel +1 212 259 8555
fax +1 212 259 6333
cjclark@dl.com

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/23/09

December 22, 2009

**BY FACSIMILE**

Honorable Paul G. Gardephe
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

09 MD 2011 (PGG)

Re: *SEC v. Reserve Management Company, Inc., et al.*, No. 09 Civ. 4346 (PGG)

Dear Judge Gardephe:

We represent defendants Reserve Management Company, Inc. ("RMCI"), Resrv Partners, Inc., Bruce R. Bent, Sr., and Bruce R. Bent II (together, "Defendants") in the above-captioned action. We write seeking the Court's prompt direction regarding the implementation of its November 25, 2009 Order (the "Order") regarding pro rata distribution of The Reserve Primary Fund (the "Primary Fund").

As discussed at the hearing the Court held on December 11, 2009, RMCI has been working diligently since November 25th to perform the calculations and procedures necessary to implement the distributions ordered by the Court. In the course of those preparations, however, a number of questions have arisen about the proper way to implement the Order. Not unexpectedly, many of these issues revolve around the treatment of the so-called straddler investors covered in Paragraph 2(b) of the Order.

1.  **Prior Pro Rata Redemptions to Certain "Straddler" Investors Present Complications Under the Court's Order**

The work performed to date to identify accounts of "straddler" investors and calculate their appropriate distribution indicates that a number no longer have sufficient funds to recapture the amounts contemplated in Paragraph 2(b) of the Order. This is because the concept of treating "straddler" investors differently was not considered at the start of the prorata distribution

NEW YORK | LONDON MULTINATIONAL PARTNERSHIP | WASHINGTON, DC
ALBANY | ALMATY | BEIJING | BOSTON | BRUSSELS | CHICAGO | DOHA | DUBAI
FRANKFURT | HONG KONG | HOUSTON | JOHANNESBURG (PTY) LTD. | LOS ANGELES | MADRID | MILAN | MOSCOW
PARIS MULTINATIONAL PARTNERSHIP | RIYADH AFFILIATED OFFICE | ROME | SAN FRANCISCO | SILICON VALLEY | WARSAW

process. Based on their September 15/16, 2008 redemptions of $7.9 billion, the "straddler" group would be exposed to a claw back of $79.6 million based on an estimated final liquidation value of $0.99 per share, but the residual in these accounts currently is only $43 million.

We believe that the simplest, least expensive and most cost-efficient solution is for the Court to order that the Primary Fund recapture the funds remaining in these "straddler" accounts, treat these accounts as "straddler" accounts in accordance with the Court's Order and move forward with the distribution. We believe that this is what was anticipated by your Order as it made no provision to claw-back prior distributions. We believe that an order clarifying this issue and directing the Primary Fund to proceed will expedite the distribution process and be consistent with the Court's Order.

2. **Treating Clients Who Are Customers of Omnibus Retail Brokers and Banks as Straddler Investors Under Paragraph 2(b) of the Order and Purchasers Under Paragraph 2(a) of the Order Presents Problems**

RMCI's work on the "straddler" calculations has also revealed that a portion of the "straddler" investors are accounts held by omnibus banks/brokers. These institutions aggregate numerous individual accounts for their underlying customers, but RMCI's relationship is with the intermediary, not with the underlying individual.

Because of the layering of these accounts, RMCI does not have the ability to determine which underlying individual client accounts constitute "straddlers", if any. If RMCI continues its established practice and treat each omnibus bank/broker account as a single entity, RMCI is concerned that the intermediaries will have great difficulty in adjusting the individual investor accounts.

Based on our review of the Primary Fund's recordholder accounts, the Primary Fund believes that performing the "straddler" allocations to these accounts will result in a modest amount of funds that could be recaptured, approximately $474,165. However, the Primary Fund does not have the ability to determine the amount that could be recaptured at the omnibus broker or bank level. Likewise, RMCI does not have the ability to determine which underlying accounts at an omnibus broker/bank level belong to shareholders who purchased shares in the Fund after 3:00 p.m. on September 16, 2008 so that they can be treated in accordance with the Court's Order.

Considering the anticipated effort and the probable delay on the part of the banks/brokers in performing the "straddler" allocations and the difficulties in identifying the September 16, 2008 purchasers, exempting these omnibus accounts from the "straddler" designation and purchaser designations may be the more efficacious route with a Court Order so directing it. We believe that making a pro rata distribution to these omnibus brokers and banks, without taking

into consideration the treatment proposed by Paragraphs 2(a) and 2(b) of the Court's Order, will ensure a timely distribution to investors.

### 3. Some Straddler Investors Redeemed After September 15th

In addressing the definition of a straddler investor, the Court states in Paragraph 2(b) of the Order that "distributions made to investors who were paid by the Primary Fund for a portion of their shares at a $1.00 NAV **on September 15, 2008** should be offset such that their total per share recovery does not exceed that of any other investor participating in the final pro rata distribution." (emphasis added) Some investors were able to redeem a portion of their shares on September 16, 2008 and thereafter. We understand that the intent of the Court's Order was to treat all such investors who were able to successfully redeem a portion of their shares as straddlers. Therefore, to avoid any possible confusion and to ensure that RMCI's straddler calculations capture all of the relevant shareholders, we would ask that the Court to enter an order confirming that Paragraph 2(b) also applies to those investors that redeemed after September 15th and that as such, they should also be subject to the straddler hold-back, except as noted in Section 4 below.

### 4. The Existing Exception for Service Transactional Withdrawals

As the Court is aware, when redemptions in the Primary Fund were frozen, an exception was made for small withdrawals that did not, in aggregate, amount to more than $10,000 per account, or a fund-wide total of $16.5 million. This concession was made with the encouragement of the SEC in recognition of the fact that a large number of retail Primary Fund investors utilized their accounts to pay ordinary expenses on a daily basis via check or debit cards. The investors taking advantage of this exception had their shares redeemed at an NAV of $1.00. While payments made through this program would exceed the value of shares redeemed through a pro rata distribution, it is our understanding that investors who utilized the exception should not be treated as straddler investors or otherwise be subject to efforts to reclaim a portion of those payments. In order to avoid any confusion over the treatment of those payments and to avoid any delay in making a pro rata distribution, we would ask that the Court issue an order clarifying that investors who utilized this option do not constitute part of the straddler investor group defined in Paragraph 2(b) and that the Primary Fund is not required to take any additional action to mitigate those payments.

5. **Purchasers After September 16th at 3:00 p.m.**

To avoid allowing certain investors who purchased shares in the Primary Fund after 3:00 p.m. on September 16, 2008 from obtaining an improper windfall, the Court limited the recovery for those investors to no more than the amount paid. Specifically, Paragraph 2(a) of the Order states that a shareholder shall "receive no more than the amount paid by such Unpaid Shareholder for each such share purchased." In the Memorandum Opinion supporting the Order, also dated November 25, 2009, the Court states that "[i]nvestors who purchased their shares after this point [in time] paid less than $1.00 per share and should not realize a windfall by participating in the pro rata distribution."

A review of RMCI's records indicates that investors who purchased after 3:00 p.m. on September 16th nevertheless paid one dollar per share, meaning that there would be no windfall and that they would recover exactly the amount they invested which is our understanding of the intent of this Court's Order. To that end, we ask that the Court issue an order clarifying that such purchasers should receive back the exact amount of money they paid for their shares and no more (except as excluded in Section 2 above regarding omnibus accounts). By way of example, that would mean that an investor who paid $10,000 to the Primary Fund after 3:00 p.m. on September 16, 2009 would receive back their entire $10,000 for the shares purchased.[*] Such a clarification would make it much simpler and more efficient for RMCI to process distributions for these investors and would remove a number of questions that could delay the distribution process.

6. **Treatment of "Zero-Balance" Investors That Made Subsequent Purchases**

RMCI's work to date has also revealed a number of investors who redeemed the entire balance of their holdings in the Primary Fund on September 15th or 16th, but thereafter purchased a new position in the Primary Fund. By way of example, the investor described above might have had a $10,000 position in the Primary Fund on the morning of September 15th and sold all 10,000 shares at an NAV of $1.00 at 11:00 a.m. that morning, bringing their account down to a balance of zero. Thereafter, at 3:30 p.m. on September 16th, that hypothetical investor made a separate new investment of $5,000 in the Primary Fund. It is our understanding of the Order that such an investor would be treated as a shareholder subject to Paragraph 2(a) of the Order and not as a straddler investor under Paragraph 2(b). As a result, the hypothetical investor described above would receive a payment of $5,000, the value of his purchase into the Primary Fund (see Section 5 above) and would not be subject to straddler investor calculations and treatment. To avoid any doubt on this issue and to expedite upcoming distributions, we would

---

[*] In calculating the dates and times of transactions as required by the Court's Order, RMCI will utilize the information from when an order is "time stamped" and first entered on RMCI's system. If that is not consistent with what was intended by the Court's Order, please let us know.

respectfully request that the Court issue an order confirming that such investors should be treated as shareholders subject to Paragraph 2(a) of the Order.

\* \* \* \* \*

In order to keep the redemption process moving as quickly as possible toward an anticipated $3.4 billion distribution during the week of January 25, 2010, we would ask that the Court either issue an order addressing the foregoing issues, or else schedule a conference call or hearing on these issues within the next few days.

If there is any additional detail that would assist the Court in addressing these issues, please let us know. It is important that we receive the Court's guidance as soon as possible, and our clients are available to answer any questions that you have regarding these issues. Once we receive the Court's views regarding the issues outlined above, RMCI will be in a better position to confirm that the distribution will be able to proceed during the above-referenced week.

Respectfully,

Christopher J. Clark

cc: Mark Holland, Esq. (via email)
Tariq Mundiya, Esq. (via email)
Nancy A. Brown, Esq. (via email)