UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>- against -<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>- and -<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | 09 Civ. 4346 (PGG)<br><br>ECF Case |

**DECLARATION OF CHRISTOPHER J. CLARK IN SUPPORT OF
DEFENDANTS' APPLICATION FOR INDEMNIFICATION EXPENSES
AND APPLICATION FOR INSURANCE PROCEEDS**

I, Christopher J. Clark, under penalty of perjury declare as follows:

**I.  Background**

1. I am an attorney admitted to practice in the State of New York and before this Court.

2. I am a partner at the law firm of Dewey & LeBoeuf, LLP ("D&L") and serve as counsel of record for Reserve Management Company, Inc., Resrv Partners, Inc., Bruce Bent, Sr., and Bruce Bent, II in connection with the above-captioned case brought by the Securities and Exchange Commission ("SEC"). Additionally, I serve as legal counsel to these and other defendants (collectively, the "Defendants") in connection with the above-captioned, related

multidistrict litigation pending before this Court, and related ancillary litigation pending in other jurisdictions arising from the same or similar allegations against the Defendants.

3. I submit this declaration in support of Defendants' Application for Indemnification Expenses and Application for Insurance Proceeds and in response to the Court's Order dated November 25, 2009 providing that "[w]ithin 45 days of entry of this Order, any Indemnitee must provide the magistrate judge or monitor with good faith estimates of his, her or its respective reasonable Indemnification Expenses based on the claims already filed." (SEC Dkt. No. 202 at ¶ 5(c)(ii).) Notwithstanding the obvious difficulty in estimating indemnification expenses at this stage of the proceedings, this affidavit is being submitted in good faith, and reflects D&L's reasonable estimation of the amount of anticipated indemnification expenses required to defend the claims already filed.[1]

## II. Reasonable Estimation of Defense Costs Subject to Indemnification and Advancement

4. D&L is a leading global law firm with more than 1,200 lawyers in 25 offices in 15 countries. D&L has considerable experience across numerous sectors, and specifically in the areas of securities litigation, mergers and acquisitions and corporate governance litigation, and white collar defense and investigations. D&L represents clients regarding a wide range of business regulatory and corporate governance matters, including representing corporations and individuals in complex securities class actions, shareholder derivative actions, government investigations, and civil and criminal enforcement proceedings.

5. Based on a review of D&L's recent representations in matters similar to the pending cases against the Defendants, as well as publicly available information regarding the legal

---

[1] Because the language in the November 25 Order is limited to the "claims already filed," this affidavit does not provide estimates for defense costs that would be associated with claims or proceedings not yet filed or initiated.

defense costs in similar cases handled by other law firms, D&L is able to provide a good faith, reasonable, and informed estimate of the anticipated costs for the representation of the Defendants in connection with this and other related litigation.  The estimates provided herein assume, as they must, that it will be necessary to defend all of these cases through trial.  In fact, the Defendants may be successful in obtaining the dismissal of the claims against them or the cases may be resolved in some other manner before trial, in which case the total costs estimated herein may be substantially less.

### A.  SEC Enforcement Proceedings

6. D&L has significant experience representing corporations and individuals in government investigations and enforcement proceedings, particularly SEC enforcement actions alleging violations of, *inter alia*, the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, and the Investors Advisers Act of 1940.  Attached hereto as **Exhibit A** is a select list of recent SEC enforcement matters in which D&L has served as defense counsel.

7. The SEC's complaint against certain of the Defendants alleges numerous violations of the Securities Act of 1933, Securities and Exchange Act of 1934, and Investment Advisers Act of 1940.  (*See* SEC Compl. ¶ 14.)  Based on an analysis of D&L's prior representations and publicly available information detailing the defense costs in similarly complex cases, defending against the SEC's charges will likely amount to millions of dollars in both fees and expenses.

8. Although it is difficult to estimate with particularity the amount of fees necessary to defend any specific case, legal fees and expenses in recent comparably complex criminal cases have exceeded tens of millions of dollars.  Although this is a civil SEC action, there is more publicly available data regarding the fees in analogous criminal cases, and this case will require


similar effort and expense.  Indeed, given the relatively expansive discovery rights afforded parties in civil proceedings, litigating this civil case through trial and appeal will likely require more effort and expense than would be required in an analogous criminal case.  For example, in connection with the *United States v. Stein* case in this district, a criminal prosecution involving charges of conspiracy and tax invasion against nineteen former partners or employees of accounting firm KPMG, Judge Kaplan acknowledged the steep defense costs in analogous "recent high profile white collar prosecutions."  These actions included Jeffrey Skilling and Kenneth Lay's defense costs in the Enron matter of at least $70 million and $25 million, respectively; Richard Scrushy's defense costs in the HealthSouth matter of approximately $32 million; the Rigas family's defense costs in the Adelphia case of approximately $24 million; Dennis Kozlowski's defense costs of $17.7 million for his first trial and $8 million for his second in the Tyco matter; E. Kirk Shelton's defense costs of approximately $24 million in connection with the Cendant matter; and Sanjay Kumar's defense costs of approximately $14.9 million in the Computer Associates litigation, which resulted in a plea before trial.  *See United States v. Stein*, 495 F. Supp. 2d 390, 424 (S.D.N.Y. 2007) (discussing defense costs associated with these proceedings).  Attached hereto as **Exhibits C-H** are news accounts providing additional support for the cost estimates associated with defending these litigations.  Additionally, with respect to the costs associated with defending the individual defendants in the high-profile *Stein* case, the attorneys for the defendants submitted declarations to the court estimating defense costs in the range of $7 million to $24 million per defendant, for an average of $13 million per defendant. (*See* **Exhibit I**.)

    9. The figures above are consistent with my substantial experience in both prosecuting and defending such actions.  During my tenure at the United States Attorney's Office for six

years until I joined D&L in 2005, I served as co-lead counsel in the Adelphia litigation, *United States v. Rigas*, in which both the former CEO and former CFO of Adelphia Communications Corporation were convicted of numerous securities and bank fraud charges.  In this capacity, I helped manage and negotiate the landmark $750 million tri-party civil settlement with Adelphia and the Rigas family.  Accordingly, I am intimately familiar with the defense costs associated with prosecuting and defending highly complex civil and criminal enforcement action proceedings alleging violations of the securities acts.

      10.   As another example of the defense costs in comparable cases, D&L represents a special litigation committee of the board of directors of Brocade in connection with a complex shareholder derivative litigation arising out of the company's stock option practices.  In connection with that litigation, D&L is familiar with the costs of defending both corporations and individual defendants in SEC enforcement proceedings and related multidistrict derivative litigations.  For example, as disclosed in publicly available filings in the criminal action against Brocade's former CEO, Gregory Reyes, Brocade incurred approximately $19.5 million in legal fees in connection with its defense of the company in criminal, civil SEC, and other ancillary civil litigations (**Exhibit J**) and advanced another approximately $64.5 million in legal fees to its officers and directors, including over $46.7 million to Mr. Reyes, in connection with the same (**Exhibit K**).

      11.   As demonstrated by the foregoing, there are a variety of data points that can be used to provide a reliable, good faith estimate of the defense costs associated with a civil action brought by the SEC.  Accordingly, D&L anticipates potential defense costs for the SEC civil action of $22,500,000, broken down as follows:

- Pre-Discovery Period (e.g., research and analysis of potential offensive and defensive discovery motions, preliminary retention of experts, completion of initial dispositive motions practice, etc.)
  - Estimated cost of $500,000 per month for a total of 3 months at a total cost of $1,500,000.

- Discovery Period (e.g., drafting of offensive and defensive discovery submissions and responses, fact witness and expert depositions, preparation of expert reports, document review, extensive factual and legal analysis, etc.)
  - Estimated cost of $1,000,000 per month for a total of 6 months at a total cost of $6,000,000.

- Pre-Trial Period (e.g., preparation of pre-trial orders, motions in limine, trial briefs, jury instructions, dispositive motions practice, designation of exhibits and deposition testimony, preparation of direct and cross-examination testimony, etc.)
  - Estimated cost of $2,000,000 per month for a total of 3 months at a total cost of $6,000,000.

- Trial Period (e.g., participation in voir dire and trial, review of trial transcripts and testimony, dispositive motions practice, etc.)
  - Estimated cost of $3,000,000 per month for a total of 2 months at a total cost of $6,000,000.

- Post-Trial and Appeal Period (e.g., post-trial motions practice, preparation of appeal briefs and motions, etc.)
  - Estimated cost of $1,000,000 per month for a total of 3 months at a total cost of $3,000,000.

### B. Multidistrict Class Action Litigation

12. D&L also has significant experience representing corporations and individuals in connection with complex multidistrict consolidated class actions and other litigations involving various federal, state, and common law securities and corporate governance related causes of action. Attached hereto as **Exhibit B** is a select list of recent multidistrict litigations and/or complex derivative litigations in which D&L served as legal counsel.

13. As in estimating the defense costs associated with defending corporations and individuals in SEC enforcement proceedings, D&L can also draw upon its significant prior experience in similar multidistrict consolidated litigations, as well as publicly available reports

regarding the legal defense costs in similar cases handled by other law firms, in estimating the defense costs associated with multidistrict consolidated litigations. For example, as referenced above, D&L represents a special litigation committee of the board of directors of Brocade in connection with a complex shareholder derivative litigation arising out of the company's stock option practices. Brocade incurred approximately $6.1 million in defending the corporation against civil litigation related to the company's stock option's practice (**Exhibit J)**.

14. Although private civil defense costs in defending complex, multidistrict, consolidated class action litigations are often undisclosed to the public, comparable lodestar figures for the work performed by lead plaintiffs' counsel associated with such matters are widely available, and also can provide a reliable data point in estimating the potential defense costs in connection with this case.

15. For example, in the complex MDL litigation in this district, *In re Adelphia Communications Corporation Securities and Derivative Litigation*, 03-mdl-1529 (S.D.N.Y.), counsel for the lead plaintiffs expended 83,038.33 hours on the litigation at an estimated cost of $33,686,468, representing a blended hourly rate (including paralegal time) of approximately $405/hour. *See In re Adelphia Communications Corp. Securities and Derivative Litigation*, No. 03-mdl-1529, 2006 WL 3378705, *2 (Nov. 16, 2006 S.D.N.Y.). Based on my experience working on the *Adelphia* litigation while at the U.S. Attorney's Office, I believe that it provides a good indication of the time and expense required to litigate complex MDL cases.

16. Another complicated MDL securities litigation involved Worldcom, Inc.[2] In that case, lead counsel represented to this Court that it expended 277,868 hours on the litigation for a collective lodestar of $83,183,238.70, representing a blended hourly rate of approximately

---

[2]     *In re Worldcom, Inc. Securities Litigation*, 02-cv-3288 (S.D.N.Y.).

$300/hour. *See In re Worldcom, Inc. Securities Litigation*, 388 F. Supp. 2d 319, 353-54 (S.D.N.Y. 2005).

17. As demonstrated by the foregoing, there are a variety of data points that can be used to calculate a reliable, good faith estimate of the defense costs associated with a multidistrict class action litigation. Accordingly, D&L anticipates potential defense costs for the MDL action against Defendants of $18,300,000, broken down as follows:

- <u>Pre-Discovery Period</u> (e.g., research and analysis of potential offensive and defensive discovery motions, preliminary retention of experts, preliminary interviews, initial dispositive motions practice, etc.)
    - Estimated cost of $700,000 per month for a total of 3 months at a total cost of $2,100,000.

- <u>Discovery Period</u> (e.g., drafting of offensive and defensive discovery submissions and responses, fact witness and expert depositions, preparation of expert reports, document review, extensive factual and legal analysis, etc.)
    - Estimated cost of $800,000 per month for a total of 6 months at a total cost of $4,800,000.

- <u>Pre-Trial Period</u> (e.g., preparation of pre-trial orders, motions in limine, trial briefs, jury instructions, dispositive motions practice, designation of exhibits and deposition testimony, preparation of direct and cross-examination testimony, etc.)
    - Estimated cost of $1,500,000 per month for a total of 3 months at a total cost of $4,500,000.

- <u>Trial Period</u> (e.g., participation in voir dire and trial, review of trial transcripts and testimony, dispositive motions practice, etc.)
    - Estimated cost of $1,500,000 per month for a total of 3 months at a total cost of $4,500,000.

- <u>Post-Trial and Appeal Period</u> (e.g., post-trial motions practice, preparation of appeal briefs and motions, etc.)
    - Estimated cost of $800,000 per month for a total of 3 months at a total cost of $2,400,000.

**C. Related Ancillary Proceedings**

18. D&L also has significant experience coordinating and defending various ancillary state, federal, and regulatory cases consisting of related individual actions that, for one reason or

another, are not consolidated into the primary multidistrict litigation. These cases often involve coordinating with local counsel and extensive supervision and participation in local proceedings.

19. In light of the inherent uncertainty in estimating the defense costs associated with such ancillary actions, based on our prior significant experience in this area, a reasonable, good faith estimate of the defense costs that would be required to represent the Defendants in such proceedings would be $3 million based on the ancillary cases pending as of the date of this filing.

### D. Estimated Ordinary and Expert Expenses

20. D&L estimates that a reasonable amount of expenses for all litigations relating to telephone and telecopy services, photocopying, travel and subsistence, document production, word processing and secretarial services, postage and delivery, computerized research, litigation support, electronic and other data storage and retrieval, filing fees, and the like would be approximately $3,000,000.

21. D&L estimates that a reasonable amount of expenses in connection with the retention of experts and consultants for all litigations would be approximately $3,000,000.

### E. Summary of Total Anticipated Defense Costs and Expenses

22. D&L recognized a variety of shared efficiencies and economies of scale in building its assumptions for use in estimating the anticipated defense costs in connection with this matter and the related matters. Specifically, D&L took into account any duplicative efforts that would have been associated with defending the actions separately without the benefit of the cumulative resources and work product produced in connection with defending the litigations concurrently, and adjusted its estimates downward in accordance with these assumptions. Furthermore, the estimates provided herein were specifically produced for the purposes of only

the specified matters, and are not a reliable estimate of fees or expenses in connection with any unrelated future litigations.[3]

23. The following chart provides a summary of the **$49.8 million** in total defense costs estimated by D&L in connection with defending the Defendants for all pending litigations:[4]

| SEC Enforcement Action | | | |
|---|---|---|---|
| Phase of Litigation | Cost/Mo. | Estimated Mos. | Total Estimate |
| Pre-Discovery Phase | $500,000 | 3 | $1,500,000 |
| Discovery Phase | $1,000,000 | 6 | $6,000,000 |
| Pre-Trial Phase | $2,000,000 | 3 | $6,000,000 |
| Trial Phase | $3,000,000 | 2 | $6,000,000 |
| Post-Trial and Appeal Phase | $1,000,000 | 3 | $3,000,000 |
| Subtotal | | | $22,500,000 |
| MDL Action | | | |
| Phase of Litigation | Cost/Mo. | Est. Mos. | Estimate |
| Pre-Discovery Phase | $700,000 | 3 | $2,100,000 |
| Discovery Phase | $800,000 | 6 | $4,800,000 |
| Pre-Trial Phase | $1,500,000 | 3 | $4,500,000 |
| Trial Phase | $1,500,000 | 3 | $4,500,000 |
| Post-trial and Appeal Phase | $800,000 | 3 | $2,400,000 |
| Subtotal | | | $18,300,000 |
| Estimated Cost to Defend Ancillary Civil Litigations | | | $3,000,000 |
| Estimated Ordinary and Expert Expenses | | | $6,000,000 |
| Grand Total Estimate | | | $49,800,000 |

---

[3]    In addition, as noted in Defendants' Memorandum of Law in Support of their Application for Indemnification Expenses, Resrv Partners, Inc. ("Resrv") is entitled to indemnification under the Distribution Agreement, dated July 30, 2007, between Resrv and The Reserve Fund. (Defs.' Mem. at 3, 7 n.10.) Resrv's total estimated Indemnification Expenses under the Distribution Agreement are included in the estimate for the Bent Parties' total estimated Indemnification Expenses.

[4]    The Independent Trustees' estimated Indemnification Expenses – $22.5 million – further demonstrates the reasonableness of this estimate. (*See* SEC Dkt. No. 236.)

### III. Authentication of Other Attached Documents

24. Attached hereto as **Exhibit L** is a true and correct copy of Amendment Number Two to, and Restatement of, The Declaration of Trust, dated December 10, 1986, of The Reserve Fund.

25. Attached hereto as **Exhibit M** is a true and correct copy of the Distribution Agreement between The Reserve Fund and Resrv Partners, Inc., dated July 30, 2007.

26. Attached hereto as **Exhibit N** is a true and correct copy of the undertaking executed by Bruce R. Bent Sr., Bruce R. Bent II, and Arthur T. Bent III to repay the advances received from The Reserve Fund, which was received by the Trustees of The Reserve Fund on November 20, 2009.

27. Attached hereto as **Exhibit O** is a true and correct copy of a letter drafted by Professor Stephen J. Saltzburg, dated November 9, 2009, and received by the Trustees of The Reserve Fund on November 20, 2009.

28. Attached hereto as **Exhibit P** is a true and correct copy of a letter drafted by Professor Stephen J. Saltzburg, dated November 19, 2009, and received by the Trustees of The Reserve Fund on November 20, 2009.

Dated: New York, New York
       January 11, 2010

s/ Christopher J. Clark
Christopher J. Clark
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (202) 259-8000
Fax: (202) 259-6333

*Counsel to Defendants*