**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | No. 09 Civ. 4346 (PGG)<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY DISCOVERY**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

STATEMENT OF RELEVANT FACTS ...............................................................3

ARGUMENT ............................................................................................................7

I. This Court Has The Discretion To Stay Discovery In This Case ..............................7

II. Good Cause Exists For A Stay Of Discovery Pending A Ruling On Defendants' Advancement Application ..............................................................8

A. A Stay Of Discovery In This Case Is Warranted By The Very Nature Of Advancement Rights ..............................................................8

B. A Stay Of Discovery Is Particularly Appropriate Here ..........................................11

CONCLUSION ..........................................................................................................13

# TABLE OF AUTHORITIES

CASES PAGE

*Am. Booksellers Ass'n v. Houghton Mifflin Co.*,
94 Civ. 8566, 1995 WL 72376 (S.D.N.Y. Feb. 22, 1995) ........................................................7

*Fasciana v. Elec. Data Sys. Corp.*
829 A.2d 160 (Del Ch. 2003)........................................................................................................9

*Herbert v. Lando*,
441 U.S. 153 (1979)......................................................................................................................7

*Homestore, Inc. v. Tafeen*,
888 A.2d 204 (Del. 2005) ............................................................................................................8

*Int'l Airport Ctrs. LLC v. Citrin*,
455 F.3d 749 (7th Cir. 2006) ........................................................................................................9

*In re Currency Conversion Fee Antitrust Litig.*,
No. MDL 1409, M21-95, 2002 WL 88278 (S.D.N.Y. Jan 22, 2002)........................................7

*James River Mgmt. Co. v. Kehoe*,
674 F. Supp. 2d 745 (E.D. Va. 2009) ..........................................................................................9

*Kaung v. Cole Nat'l Corp.*,
884 A.2d 500 (Del. 2005) ......................................................................................................9, 11

*Lipson v. Supercuts, Inc.*,
No. 15074-NCC, 1996 WL 560191 (Del. Ch. Sept. 10, 1996)..................................................9

*Miller v. U.S. Foodservice, Inc.*
402 F. Supp. 2d 607 (D. Md. 2005)..............................................................................................9

*Moore v. Painewebber, Inc.*,
No. 96 Civ. 6820, 1997 WL 12805 (S.D.N.Y. Jan. 14, 1997)....................................................7

*Naula v. Rite Aid of N.Y.*,
08 Civ. 11364, 2010 WL 2399364 (S.D.N.Y. Mar. 23, 2010) ....................................................7

*Reddy v. Elec. Data Sys Corp.*,
Civ. A 19467, 2002 WL 1358761 (Del. Ch. June 18, 2002) ...............................................9, 11

*Roller Bearing Indus., Inc. v. Paul*,
3:05 Civ. 508, 2010 WL 1257715 (W.D. Ky. Mar. 26, 2010)............................................9, 11

*Sec. & Exch . Comm'n v. FTC Capital Mkts., Inc, et al.*,
No. 9 Civ. 4755, 2010 U.S. Dist LEXIS 65417 (S.D.N.Y. June 29, 2010)....................................8

*Underbrink v. Warrior Energy Servs. Corp.*,
No. 2982-VCP, 2008 Del. Ch. LEXIS 65 (Del. Ch. 2008)....................................................8

*United States v. Cnty. Of Nassau*,
188 F.R.D. 187 (E.D.N.Y.1999.)....................................................................................7

Defendants Reserve Management Company, Inc. ("RMCI"), Resrv Partners, Inc. ("Resrv"), Bruce R. Bent, Sr. and Bruce R. Bent, II (the "Bents," and collectively with RMCI and Resrv, the "Defendants"), respectfully submit this memorandum of law in support of their Motion to Stay Discovery, pursuant to Federal Rule of Civil Procedure 26, until Defendants' January 11, 2010 Application for Indemnification Expenses has been decided.

**INTRODUCTION**

Defendants respectfully request that discovery in this matter be stayed until Defendants' pending application for the advancement of defense costs is resolved. The need for such a stay is established by the very nature of the right to "advancement" of defense costs, prior rulings of this Court and other courts, and fundamental notions of fairness.

In a decision issued in another case just 6 weeks ago, this Court – quoting a seminal Delaware case on the advancement of defense costs – recognized that the very essence of a party's right to advancement is the "*immediate interim* relief" it affords. For that reason, courts adjudicate advancement issues in the early stages of litigation, before a party has incurred significant defense costs potentially subject to advancement. That way – indeed, *only* that way – can a party's defense costs truly be "advanced," in any meaningful sense of the word, as they are incurred. In the case of advancement, justice delayed is indeed justice denied.

In accordance with this Court's Order dated November 25, 2009, Defendants filed an application for the advancement of their defense costs on January 11, 2010. The application was fully briefed by March 11, 2010 and has been pending since then.

Defendants have yet to obtain advancement of over $13 million in legal fees that they first began to incur approximately *twenty-one months ago*. Moreover, Defendants have not received rulings on several other applications that have been pending since March 2010, including an application for $30 million in management fees that first started accruing almost two full years ago, in September 2008; and a separate application for reimbursement of expenses incurred in managing the Fund since September 2009.

Thus, Defendants not only are being forced to finance their ongoing legal expenses, but they are being compelled to do so without any resort to (i) any of $30 million in management fees that they were owed through September 2009 and should already have been paid by now; (ii) any of the approximately $2.5 million in expenses Defendants incurred in managing the Fund between September and December 2009 for which they sought reimbursement in January 2010 and by now should already have been reimbursed for; (iii) any of the additional several million dollars that Defendants have incurred since December 2009 in managing the Fund; and (iv) any of the $9+ million in defense costs that had already been incurred as of January 2010 when Defendant first submitted their advancement application.

Under the circumstances, there is every reason for Defendants' advancement application (and other pending applications) to be decided expeditiously – and likewise very good cause for discovery in this case to be stayed until the advancement application is ruled upon. Forcing Defendants to continue to litigate and incur ever mounting unreimbursed defense costs above and beyond the tens of millions of dollars Defendants are already due in advancement and other amounts is manifestly unjust and highly prejudicial to Defendants. It also violates the language *and* plain intent of the

advancement provisions contained in the Amendment Number Two to, and Restatement of, The Declaration of Trust, Dated December 10, 1986, of the Reserve Fund (the "Declaration of Trust"); and subverts the strong legal, policy, and practical considerations that underlie contractual and statutory rights to advancement.

## STATEMENT OF RELEVANT FACTS

On November 25, 2009, this Court issued an Order and accompanying Memorandum Opinion ("Opinion") regarding, in relevant part, the Expense Fund and the payment of Indemnification Expenses. Docket Nos. 201, 202. The Order and Opinion contemplated the prompt resolution of claims relating to Indemnification Expenses. In its Opinion, the Court expressly noted that "[f]und indemnitees…will likely seek to have their legal fees advanced" (Docket No. 201 at 35), and the Court stated that, "[i]n order to address … *ongoing* expenses, the accompanying Order establishes an Expense Fund and provides a procedure for making claims on the Expense Fund." Docket No. 201 at 36 (emphasis added).

The Court required that, "[c]laims for past fees and expenses must be presented within 30 days of entry of the accompanying Order or they will be barred." Docket No. 201 at 36. The Court also required that Primary Fund indemnitees "provide good faith estimates of his or its reasonable indemnification expenses based on claims already filed" within 45 days of entry of the Order. *Id*. at 37. "The magistrate judge…*shall* review such claims [for past fees and expenses] and, *as soon as practicable*, *shall* submit a report and recommendation to the Court…The Court *shall* determine the amounts appropriate…and direct that payments…be made." Docket No. 202 ¶ 5(c)(i) (emphasis added). The magistrate judge is also responsible for submitting a report "setting forth which claims he

or she believes should be honored and what he or she estimates will be the Primary Fund's indemnification expenses." Docket No. 201 at 37.

Pursuant to the Court's November 25, 2009 Order and Opinion, Defendants filed an application for Indemnification Expenses, including the advancement of defense costs, on January 11, 2010 ("application for advancement"). *See* Docket No. 242. A number of opposition briefs were filed on January 25, 2010, and Defendants filed a reply brief in support of their application on February 12, 2010.

On February 24 and 25, 2010, respectively, the Securities and Exchange Commission ("SEC") and the Independent Trustees of The Reserve Primary Fund (the "Independent Trustees") sought leave to submit sur-reply letters regarding, among other things, the issues of advancement and indemnification.

Defendants submitted a letter to the Court on February 26, 2010 in which Defendants opposed the filing of sur-reply letters. Defendants argued that another round of briefing was not necessary and that the Court had at that point already received over "120 pages" regarding the issues. *See* February 26, 2010 Letter at 1. Defendants noted that they had raised no new matters in their reply briefs that warranted the submission of sur-replies, and Defendants argued that allowing additional submissions by the SEC and the Independent Trustees would "unnecessarily extend the process by several more weeks." February 26, 2010 Letter at 1. Defendants urged the Court that no "further submissions are necessary and…the matter is read[y] for determination by Your Honor." February 26, 2010 Letter at 2. Defendants concluded by stating that, "[w]hat it appears the SEC and Independent Trustees are actually trying to accomplish is to have the 'last word' on the topics in question, which is inconsistent with the Court's original scheduling

order, and with the almost universal practice of allowing moving parties to file the last brief." February 26, 2010 Letter at 1.

On March 1, 2010, the Court granted the SEC's and Independent Trustees' requests for leave to file sur-reply letters, but ordered that they file their letters by March 5, 2010. The Court also granted Defendants leave to file a response to the sur-reply letters, and ordered the response be filed within 5 days of the filing of the sur-reply letters. Docket No. 278.

The SEC and the Independent Trustees timely filed their respective sur-reply letters, and Defendants timely filed their response. In their response, Defendants pointed out that the sur-replies improperly asserted that the Bents' potential liability rested solely on their RMCI roles rather than their Fund officer roles; speciously attacked the independent legal opinion submitted by Professor Stephen A. Saltzburg in support of Defendants' advancement application; and erroneously suggested that the Independent Trustees (and not the Court) are ultimately responsible for determining Defendants' advancement rights. *See* March 11, 2010 Letter.

On June 24, 2010, the Court issued a Civil Case Management Plan and Scheduling Order (the "Scheduling Order") which provided, among other things, that fact discovery in the case must be completed by October 1, 2010. Docket No. 321. Subsequently, the Court ordered that discovery in three related matters – *In re The Reserve Primary Fund Securities & Derivative Litigation*, No. 08 Civ. 8060, *Ameriprise Financial Services, Inc. v. The Reserve Fund*, No. 09 Civ. 1288, and *Ross v. Reserve Management Fund*, No. 08 Civ. 10261 – be consolidated to some degree with discovery in this action.

On July 30, 2010, Defendants submitted a letter to the Court regarding the status of settlement negotiations. Defendants informed the Court that the parties had been devoting substantial time to pursuing a settlement but that settlement negotiations had ultimately come to a close, after the parties had reached an impasse. In the same letter, Defendants discussed their pending applications, including their advancement application. Defendants set forth reasons the advancement application should be resolved "expeditiously," and noted that Defendants would "be compelled to file a motion to stay discovery until the pending applications have been decided." July 30 Letter at 4.

On August 2, 2010, the SEC submitted a letter to the Court in which the SEC purported to respond to Defendants' July 30 letter. In its letter, the SEC repeated several arguments it had made in its previous submission regarding Defendants' applications. Notably, however, the SEC did not expressly dispute Defendants' assertion that the advancement application should be decided expeditiously. Although the SEC presented in its letter a proposal for bifurcating the case into a liability phase and a penalty and disgorgement phase, the SEC nowhere explained whether or how this proposal obviated the need for a prompt ruling on the advancement application, or eliminated any basis for Defendants' intended motion to stay discovery.

On August 3, 2010, the Court issued an Order directing Defendants to respond to the SEC's proposal to bifurcate discovery, and to "include any arguments they wish the Court to consider concerning discovery." Docket No. 324. By letter dated August 5, 2010, Defendants addressed the various (repetitious) points regarding advancement that the SEC had made in its August 2, 2010 submission. Defendants also advised the Court

that, in accordance with the Court's August 3, 2010 Order, Defendants would make submissions to the Court regarding discovery on August 11.

## ARGUMENT

### I. This Court Has The Discretion To Stay Discovery In This Case

It is within the inherent power of a district court "to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Moreover, Rule 26 of the Federal Rules of Civil Procedure expressly provides that a district court, upon motion, may "control…the sequence and timing of discovery." *Am. Booksellers Ass'n v. Houghton Mifflin Co.*, 94 Civ. 8566, 1995 WL 72376, at *1 (S.D.N.Y. Feb. 22, 1995) (Keenan, J.). A district court's control over discovery includes the discretion to stay discovery for "good cause shown." *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, M21-95, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002); *see also Naula v. Rite Aid of N.Y.*, 08 Civ. 11364, 2010 WL 2399364, at *3 (S.D.N.Y. Mar. 23, 2010) (Gardephe, J.) ("the decision whether or not to stay…a proceeding rests within a district judge's discretion.").[1] A stay of discovery is appropriate, and "good cause" is established where, for example, a stay of discovery protects a party from undue burden or expense. *See, e.g.*, *Am. Booksellers Ass'n*, 1995 WL 72376, at *1 (a district court may "make *any* order which justice requires to protect any party…from annoyance, embarrassment, oppression, or *undue burden or expense*, including…that discovery not be had." (emphasis added)).

[1] *See also United States v. Cnty. of Nassau*, 188 F.R.D. 187, 188 (E.D.N.Y. 1999) (a district court may stay or limit discovery for "good cause" shown); *Moore v. Painewebber, Inc.*, No. 96 Civ. 6820, 1997 WL 12805, at * 1 (S.D.N.Y. Jan. 14, 1997) (same).

## II. Good Cause Exists For A Stay Of Discovery Pending A Ruling On Defendants' Advancement Application

### A. A Stay Of Discovery In This Case Is Warranted By The Very Nature Of Advancement Rights

As this Court has previously held, the very essence of advancement is that it provides a party "with *immediate interim* relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with …legal proceedings." *Sec. & Exch. Comm'n v. FTC Capital Mkts., Inc. et al.*, No. 09 Civ. 4755 (PGG), 2010 U.S. Dist. LEXIS 65417, at *13 (S.D.N.Y. June 29, 1010) (Gardephe, J.) (quoting *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005)).

The "immediate interim" nature of advancement applies equally in connection with civil and criminal proceedings. The seminal *Homestore* case, quoted by this Court in *FTC Capital Markets*, involved legal fees largely incurred in *civil* matters, and in emphasizing the "immediate interim" nature of advancement rights, the *Homestore* made no distinction between civil and criminal matters. *See, e.g.*, *Underbrink v. Warrior Energy Servs. Corp.*, No. 2982-VCP, 2008 Del. Ch. LEXIS 65, at *2 (Del. Ch. 2008) (applying *Homestore* in addressing advancement of legal expenses in civil action).[2] Given the "immediate interim" nature of advancement, it stands to reason that advancement issues should be adjudicated, if at all possible, at the very earliest stages of a litigation – and in fact, courts generally do so. Indeed, given the nature of advancement, courts not only reach advancement issues early, they resolve them quickly, when possible, often through summary proceedings.

---

[2] We also note that neither *FTC Capital Markets* nor *Homestore* (nor any other case we are aware of) holds that to be immediately enforceable, a contractual or statutory advancement right requires a concomitant Sixth Amendment claim or showing of immediate need.

As one Delaware court has aptly put it, "***by its very nature, a proceeding [regarding the advancement of defense costs] must be summary in character, because if advance indemnification is to have any utility or meaning, a claimant's entitlement to it must be decided relatively promptly***." *Lipson v. Supercuts, Inc.*, No. 15074-NCC, 1996 WL 560191, at *2 (Del. Ch. Sept. 10, 1996) (emphasis added).[3]

Other courts have acknowledged the "*necessity* of *promptly* adjudicating issues of advancement," *James River Mgmt. Co. v. Kehoe*, 674 F. Supp. 2d 745, 748 (E.D. Va. 2009) (emphasis added), and made abundantly clear that advancement claims should be treated promptly and in "summary" fashion. *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509 (Del. 2005); *see also, e.g.*, *Reddy v. Elec. Data Sys. Corp.*, Civ. A. 19467, 2002 WL 1358761, *9 (Del. Ch. June 18, 2002) (persons claiming a right to the advancement of attorneys' fees "should be entitled to have their claims adjudicated by this court in a *summary fashion*") (emphasis added)); *Miller v. U.S. Foodservice, Inc.*, 402 F. Supp. 2d 607, 620 (D. Md. 2005) (same); *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 167 (Del. Ch. 2003) (same); *see also Roller Bearing Indus., Inc. v. Paul*, 3:05 Civ. 508, 2010 WL 1257715, at *4 (W.D. Ky. Mar. 26, 2010) (same).

To require Defendants, prior to a ruling on their advancement application, to continue to incur the very substantial defense costs associated with the discovery in this complex case pursuant to the rigorous discovery schedule that the Court established in its June 24, 2010 Order, is plainly inconsistent with the "immediate interim" nature of

[3] As Judge Posner of the United States Seventh Circuit Court of Appeals has pointed, the law of advancement is "rather a Delaware specialty." *Int'l Airport Ctrs. LLC v. Citrin*, 455 F.3d 749, 750 (7th Cir. 2006). Courts throughout the country – just as this Court did in *FTC Capital Markets* – frequently rely upon Delaware case law regarding advancement issues.

advancement and contrary to the commonplace practice of addressing advancement issues in summary proceedings in the early stages of litigation.

Quite simply, all of the various considerations that prompt courts to address advancement issues early and in summary fashion constitute ample good cause for a stay of discovery in this case pending a resolution of Defendants' advancement application.

It bears note that the SEC's zeal to prosecute its claims against Defendants, and its firm (but misguided) conviction that Defendants engaged in serious wrongdoing that substantially harmed investors, provide absolutely no basis for (i) delaying the resolution of Defendants' advancement application; (ii) denying Defendants' motion for a stay pending such a resolution; or (iii) denying advancement to Defendants. Needless to say, parties seeking advancement of defense costs frequently stand accused of wrongdoing – that is why they are incurring legal fees in the first place – and it would upset the very notion of advancement and the strong legal, policy, and practical grounds that underlie advancement jurisprudence to permit the aims of a plaintiff, however noble they are thought to be, to cloud the resolution of a defendant's advancement rights.

As one frequently-cited Delaware Court opinion explained (concerning an action by a Board against a director, but with equal application to the SEC's action against Defendants):

> [I]t is *highly problematic* to make the advancement right of [individuals] dependent on the motivation ascribed to their conduct by the suing parties. *To do so would be to largely vitiate the protections afforded by…contractual advancement rights*. Corporate advancement practice has an admittedly maddening aspect. At the time that an advancement dispute ripens, it is often the case that the corporate board has drawn harsh conclusions about the integrity and fidelity of the corporate official seeking advancement. The board may well have a firm basis to

> believe that the official intentionally injured the corporation. It therefore is reluctant to advance funds for his defense, fearing that the funds will never be paid back and resisting the idea of seeing further depletion of corporate resources at the instance of someone perceived to be a faithless fiduciary. *But, to give effect to this natural human reaction as public policy would be unwise*.

*Reddy*, 2002 WL 1358761, at *15-17 (emphasis added); *see also*, *e.g*., *Roller Bearing Indus., Inc.*, 2010 WL 1257715, at *4 (quoting in full the above passage from *Reddy*); *Kaung*, 884 A.2d at 509 (internal quotations omitted) ("The scope of the advancement proceeding…[should be] limited to determining the issue of entitlement according to the corporation's advancement provisions and not to issues regarding the movant's alleged conduct in the underlying litigation.").

**B. A Stay Of Discovery Is Particularly Appropriate Here**

As noted, courts routinely decide advancement issues early in a litigation, so that parties with advancement rights are afforded the "immediate interim" relief those rights are intended to confer. *A fortiori*, there should be no further delay in a ruling on advancement in this case – and Defendants should not be compelled to incur additional unreimbursed defense costs – especially given that: (i) Defendants here *already* have incurred over $13 million in defense costs and those defense costs began to accrue approximately *twenty-one months ago*; (ii) Defendants promptly submitted their application for advancement in complete conformance with this Court's November 25, 2009 Order (after Defendants had previously spent many months unsuccessfully seeking their defense costs directly from the Fund); (iii) the Court's November 25, 2009 Order, issued nine months ago, plainly contemplated the prompt resolution of issues relating to Indemnification Expenses and likewise expressly contemplated that some parties would be seeking advancement of their defense costs; (iv) the briefing of Defendants'

advancement application has been completed and the application has been pending for more than five months; and (v) the complex nature of these proceedings (multiple defendants, multiple claims, a dozen affirmative defenses, discovery consolidated to some degree with three related actions, etc.) is such that Defendants will incur literally millions of dollars in additional ongoing defense costs in connection with upcoming discovery (whether conducted pursuant to the Court's current discovery schedule, the SEC's bifurcation proposal, or the discovery schedule Defendants propose in their August 11 letter to the Court).

Furthermore, to cover their ongoing defense costs, Defendants do not even have access to any of the $30 million that they earned in management fees and have been owed through September 2009 (a portion of those fees have been owed since late 2008, almost two years ago) and Defendants likewise have no resort to any of the approximately $2.5 million in expenses Defendants incurred in managing the Fund between September and December 2009 for which they sought reimbursement in January 2010. Defendants are also already out of pocket the several additional millions of dollars that Defendants have incurred in managing the Fund since December 2009. Finally, Defendants continue, to this day, to cover the expenses of managing the Fund out of their own pockets.

***Given all of these various circumstances (individually and collectively), it is difficult to imagine a more compelling need for the expeditious resolution of advancement issues – and a stay of discovery pending such a ruling – than exists here.*** It is manifestly unjust – and directly contrary to long-established advancement jurisprudence – for Defendants to have to litigate any further without a ruling on their advancement application.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court issue an Order granting its Motion to Stay Discovery until Defendants' Application for Indemnification has been fully resolved.

Dated: August 11, 2010
New York, New York

Respectfully submitted,

**DEWEY & LEBOEUF LLP**

By: /s Stephen A. Best

Stephen A. Best (*pro hac vice*)
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 346-8000
Facsimile: (202) 346-8102
sbest@dl.com

Christopher J. Clark
Kevin C. Wallace
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
cjclark@dl.com
kwallace@dl.com

*Attorneys for Defendants*