UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>    Defendants,<br><br>    and<br><br>THE RESERVE PRIMARY FUND,<br><br>    Relief Defendant. | No. 09 Civ. 4346 (PGG)<br><br>ECF Case |

**DEFENDANT BRUCE BENT SR.'S SUPPLEMENTAL MEMORANDUM OF LAW
IN OPPOSITION TO SEC'S MOTION FOR SUMMARY JUDGMENT**

DUANE MORRIS LLP
1540 Broadway
New York, NY  10036
(212) 692-1000
Attorneys for Defendants
Reserve Management Company, Inc. Resrv Partners,
Inc., Bruce R. Bent, Sr. and Bruce R. Bent II

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

FACTS .........................................................................................................................................2

ARGUMENT................................................................................................................................3

I.   The SEC Cannot Assert New Claims Against Bent Sr. ............................................................3

II.  Bent Sr.'s Statement To The Board About "Sufficient Capital"
     Was His Honest Opinion And Cannot Be The Basis For Liability ...........................................3

CONCLUSION..............................................................................................................................5

TABLE OF AUTHORITIES

Cases                                                                                                                  Page

In re Sec. Capital Assur. Ltd. Sec. Litig.,
    729 F. Supp. 2d 569 (S.D.N.Y. 2010).......................................................................................5

Nolte v. Capital One Fin. Corp.,
    390 F.3d 311 (4th Cir. 2004) ................................................................................................ 4-5

Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
    Commerce, 694 F. Supp. 2d 287 (S.D.N.Y. 2010) ......................................................................5

Wachovia Equity Secs. Litig. v. Wachovia Corp.,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)........................................................................................5

Woodward v. Raymond James Fin., Inc.,
    732 F. Supp. 2d 425 (S.D.N.Y. 2010)........................................................................................5

Wright v. Ernst & Young LLP,
    152 F.3d 169 (2d Cir. 1998).......................................................................................................4

PRELIMINARY STATEMENT[1]

In preparing its summary judgment motion, the SEC either did not look at its own Complaint or chose to ignore it.  The Complaint never sought to hold Bent Sr. liable as a primary violator of § 10(b) and does not even name Bent Sr. as a defendant on its § 17(a) claim; it only alleges that Bent Sr. aided and abetted a violation of § 10(b).  The SEC's motion nevertheless includes Bent Sr. in its discussion of §§ 10(b) and 17(a).  Having litigated the case to date on a completely different theory, it cannot change its claims – without notice – at summary judgment.  The SEC has not moved for summary judgment against Bent Sr. on the only § 10(b) theory it has actually pled against him – aiding and abetting – and thus it cannot obtain judgment against him under § 10(b), nor can Bent Sr. be held liable under § 17(a).

In any event, the SEC has failed to put forward a separate claim against Bent Sr. on any ground, referring instead to "the Bents" or "Defendants" collectively and without differentiation.  Group pleading does not suffice at summary judgment.  The only statement the SEC attributes directly to Bent Sr. is a line from the September 15, 2008 Board minutes that "sufficient capital could be made available."  The SEC does not explain why this statement was improper, claiming only that it was "functionally identical" to the Bent II 1:19 P.M. email.

The SEC's argument fails on two levels.  First, the two statements are not "functionally identical." (SEC Mem. p.15, n. 12)  While both were truthful when made, Bent Sr.'s statement to the Board was a statement of opinion as to whether the capital that RMCI could raise would be sufficient to meet an N.A.V. shortfall.  Bent Sr. has explained in detail why he believed, as of 1:00 P.M. on Monday, September 15, 2008, that RMCI could raise $100 million, and that would be sufficient.  (Ex. 2 ¶¶ 20-29.)  The SEC points to no evidence to suggest that Bent Sr. did not

---

[1] This supplemental brief sets forth certain additional arguments specific to the SEC's claims against Bent Sr.  Defendants' joint opposition brief is incorporated by reference, as are the arguments set forth in Defendants' accompanying preclusion motion.

actually believe this to be true when he said so. Second, this is a communication with the Board, not with investors, and thus the SEC cannot base a § 10(b) claim upon it. Such communications might be relevant to Advisers Act claims, but Bent Sr. is not an investment adviser, which leaves nothing of the SEC's case against him. Its motion should be denied.

## FACTS

For Bent Sr., the SEC has taken considerable liberties with the evidentiary record. While page limits prevent a full response, some corrections are in order. For example, the SEC claims that: "Not only did Bent Sr. approve most of Reserve *Insights,* he approved its dissemination to the ratings agencies." (SEC Mem. 27) The SEC gives no record citation for this claim, as none exists. Bent Sr. did not even see, let alone approve, "most of" Insights – only a few snippets of an earlier draft of the document were read to him over the telephone, while in his hotel room in Italy. (Ex. 2 ¶44.) Nor did he "approve" its dissemination to the rating agencies; the testimony is undisputed that he never approved its dissemination to <u>anyone</u>. (Ex. 2 ¶48.)

The SEC appears to base its contention on a call between Bent Sr. and Pat Ledford at 11:18 P.M. Italian time on Monday night. (SEC Ex. 23.) At the end of the call, which focused on other issues, Ledford stated in passing that the "capital support agreement … also went out to Moody's and S and P," to which Bent Sr. responded, "Okay, very good." (<u>Id.</u>) No discussion ensued; just final pleasantries and the call ended. At no point did Bent Sr. "approve" Ledford's sending Insights to anyone – Insights was not even mentioned on the call, and in any event had already been sent (without Bent Sr.'s knowledge) <u>long before the call</u>. (SEC Ex. 49.) As for Ledford's reference to a "capital support agreement," there is no allegation that any agreement was ever sent to the rating agencies, let alone that Bent Sr. approved it.

Such factual distortions abound. The SEC claims that: "At the time, Bent Sr. considered himself much more fully engaged than he is now willing to admit. He assumed responsibility for

supervising the collection of Lehman trading data and reporting it to the Trustees even though he was physically removed from the trading desk." (SEC Mem. p.27, n. 18)  The SEC apparently is paraphrasing Bent Sr.'s remark at the 8:00 A.M. Board meeting that: "When we find out what happens in the marketplace, then we will re-convene the board meeting, and then we will discuss with the board what – what we think is the best course of action at that point in time." (Ex. 2-G, pp. 13-14.)  Which in fact is what happened at 9:30 A.M.  (Ex. 2-H, p. 4.)

Next, the SEC argues that:

> Bent Sr. testified that he did 'nothing' to make sure that investors were made aware of Defendants' decision to abandon any purported plan to support the Primary Fund. … Bent Sr. explained that he assumed Bent II or counsel would have handled getting out that message to investors, *but there is no evidence that anyone shared Defendants' decision with Reserve employees tasked with communicating with investors*.

(SEC Mem. 9-10, emphasis added.)  Even were this were true, it would not be improper.  Bent Sr. was Board Chairman.  He had a right to rely on management to inform the sales staff, which is just what it did.  RMCI's Director of Sales testified (Opp. Ex. I, 243:20-244:4):

> Q.   And were you informed [by RMCI's General Counsel] that you were not to transmit the Insights piece to the public anymore?
> A.   That's correct.
> Q.   And did you convey that to your team?
> A.   Absolutely.
> Q.   Do you know if they continued to convey the Insights piece, either in written form or in substance, to investors?
> A.   I know they did not.

The SEC is so intent on imposing personal liability on Bent Sr. for things that happened in New York, while he was in a hotel in rural Italy with a cell phone and no email, that it ignores unfavorable evidence and declares the opposite to be true.  Having had years to build a real case against Bent Sr., the SEC still has nothing.  Its motion should be denied, and summary judgment should instead be granted to Bent Sr. for the reasons stated in his own motion.

ARGUMENT

I. The SEC Cannot Assert New Claims Against Bent Sr.

The Second Circuit has held that "a party is not entitled to amend its complaint through statements made in motion papers" or "in briefs". Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998). The new claims against Bent Sr. should be disregarded.

II. Bent Sr.'s Statement To The Board About "Sufficient Capital" Was His Honest Opinion And Cannot Be The Basis For Liability

The SEC asserts that Bent Sr.'s prediction that "sufficient capital could be made available" was knowingly false, simply because "Bent II recalled that RMCI had approximately $50 million in available assets in September 2008, which was hundreds of millions of dollars short of the $785 million of Lehman exposure the Fund faced." (SEC Mem. 17) This argument is premised on the assumption that everybody knew at 1:00 P.M. on Monday, September 15 that the Fund's $785 million in A1/P1-rated Lehman paper would be worthless.

That would have required not merely 20-20 hindsight, but outright clairvoyance. Bent Sr. had no inside information about Lehman. Certainly he had access to far less information than Moody's and S&P, which rated the Lehman paper A1/P1 through its bankruptcy filing. Nor did he have any reason to doubt the validity of Lehman's financial statements, which the SEC had certified and showed billions more in assets than liabilities. (Ex. 2 ¶ 26.) The Lehman Examiner has since found that Lehman employed Enron-style accounting, which the SEC knew about but did not disclose. At the time, however, not only Bent Sr. but the entire Board of Trustees trusted Lehman's SEC-certified financials. Indeed, at the Monday 8:00 A.M. Board meeting, Trustee William Montgoris – a former Bear Stearns CFO and COO – remarked that "to assume that the [Lehman paper] was worth zero …. is ridiculous." (Ex. 2-G, 5:22-23.)

Even before the 2008 financial crisis, securities liability could not be premised on an incorrect prediction of "sufficient capital." Nolte v. Capital One Fin. Corp., 390 F.3d 311, 315-

- 4 -

16 (4th Cir. 2004) (rejecting Rule 10b-5 claim that "management lied to investors when it opined that Capital One maintained sufficient capital" where no facts showing management disbelieved opinion at the time). Since 2008, the Courts in this District has been flooded with cases premised upon a party's failure to foresee the financial crisis, and have rejected them all.  For example, in Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce, 694 F. Supp. 2d 287, 301 (S.D.N.Y. 2010), Judge Pauley held that:

> The Complaint describes an unprecedented paralysis of the credit market and a global recession. Major financial institutions like Bear Stearns, Merrill Lynch, and Lehman Brothers imploded as a consequence of the financial dislocation.…. CIBC like so many other institutions, could not have been expected to anticipate the crisis with the accuracy Plaintiff enjoys in hindsight ….

In Woodward v. Raymond James Fin. Inc., 732 F. Supp. 2d 425, 436 (S.D.N.Y. 2010), Judge Patterson held: "There is no basis for inferring … that Defendants had scienter; it is much more likely that Defendants (like many other financial institutions) underestimated the magnitude of the coming economic crisis and believed that they were taking adequate risk management and cautionary measures".  In In re Sec. Capital Assur. Ltd. Sec. Litig., 729 F. Supp. 2d 569, 596 (S.D.N.Y. 2010), Judge Batts held: "Defendants, 'like so many other institutions' floored by the housing market crisis 'could not have been expected to anticipate the crisis with the accuracy plaintiffs enjoy in hindsight.'"  In Wachovia Equity Secs. Litig. v. Wachovia Corp., 753 F. Supp. 2d 326, 356 (S.D.N.Y. 2011), Judge Sullivan held: "To find scienter on these facts would be to assume that the duration of the financial crisis was both inevitable and foreseeable to Defendants … . [L]ack of clairvoyance simply does not constitute securities fraud".

## CONCLUSION

Here too, Bent Sr. lacked the clairvoyance to foresee that even $100 million would not be sufficient.  That does not constitute securities fraud.  Since the SEC cannot point to anything else that Bent Sr. specifically did wrong, its motion as to Bent Sr. should be denied.

Dated: New York, New York
June 13, 2011

Respectfully submitted,

DUANE MORRIS LLP

By: _____/s/ Fran M. Jacobs_____
       Fran M. Jacobs
       John Dellaportas
       Kathrine A. Gehring
1540 Broadway
New York, NY  10036
(212) 692-1000
Attorneys for Defendants Reserve Management
  Company, Inc., Resrv Partners, Inc., Bruce R.
  Bent, Sr. and Bruce R. Bent II