**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | No. 09 Civ. 4346 (PGG)<br><br>ECF Case |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRUCE BENT SR.'S MOTION FOR SUMMARY JUDGMENT**

DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
(212) 692-1000
Attorneys for Defendants
Reserve Management Company, Inc. Resrv Partners, Inc., Bruce R. Bent, Sr. and Bruce R. Bent II

TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 3 |
| I. Based on the Undisputed Facts, Bent Sr. Cannot Be Liable For Aiding and Abetting Any Securities Law Violations | 3 |
| II. Based on the Undisputed Facts, Bent Sr. Cannot Be Liable as a Control Person | 5 |
| CONCLUSION | 6 |

TABLE OF AUTHORITIES

Cases Page(s)

In re Alstom SA Secs. Litig.,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)....................6

Anwar v. Fairfield Greenwich Ltd.,
728 F. Supp. 2d 372 (S.D.N.Y. 2010)....................6

ATSI Commns., Inc. v. Shaar Fund, Ltd.,
493 F.3d 87 (2d Cir. 2007)....................5

Boguslavsky v. Kaplan,
159 F.3d 715 (2d Cir. 1996)....................6

Fezzani v. Bear Stearns & Co., Inc.,
384 F. Supp. 2d 618 (S.D.N.Y. 2004)....................6

Hemming v. Alfin Fragrances, Inc.,
690 F. Supp. 239 (S.D.N.Y. 1988)....................5

SEC v. DiBella,
587 F.3d 553 (2d Cir. 2009)....................4

SEC v. Espuelas,
699 F. Supp. 2d 655 (S.D.N.Y. 2010)....................3

SEC v. PIMCO Advisors Fund Mgmt.,
341 F. Supp. 2d 454 (S.D.N.Y. 2004)....................4

SEC v. Stanard,
2009 U.S. Dist. Lexis 6068 (S.D.N.Y. Jan. 27, 2009)....................4

SEC v. Tecumseh Holdings Corp.,
2009 U.S. Dist. Lexis 119869 (S.D.N.Y. Dec. 22, 2009)....................5

Defendant Bruce Bent, Sr. ("Bent Sr.") respectfully submits this supplemental memorandum of law in further support of his motion for summary judgment, in order to set forth certain additional arguments specific to the claims against him. (Defendants' joint memorandum of law, filed simultaneously herewith, is incorporated by reference.)

PRELIMINARY STATEMENT

Forty years ago, Bent Sr. co-invented the money market fund, a financial instrument which has brought benefit to millions of American investors. In early 2008, Bent Sr.'s principal investment vehicle, the Reserve Primary Fund (the "Fund"), invested approximately 1% of Fund assets in Lehman Brothers ("Lehman") commercial paper and medium term notes. Lehman was, at the time, a highly-respected, 158-year old investment bank. Moody's and S&P had rated Lehman's debt highly – Al and P1, respectively. The investment was fully compliant with SEC Rule 2a-7, which governs how a money market fund can invest.

On September 14, 2008, Bent Sr. and his wife flew to Italy to celebrate a long-planned fiftieth anniversary of the day they met. What they did not know when they boarded the flight was that, when they landed, the world would be on the precipice of what Ben Bernanke has described as "the worst financial crisis in global history, including the Great Depression." Lehman, whose stock was trading at $18 per share a mere one week earlier, was swept up in the maelstrom and filed for bankruptcy at 1:45 A.M. on September 15. Under Bent Sr.'s direction, the Fund published its holdings – a practice unique in the industry. As a result, institutional investors, aware of the Lehman position, called in redemption requests in massive numbers, triggering a run on the Fund. Meanwhile, the credit markets had frozen that day, which prevented the Fund from selling assets to fund redemptions.

It is against this backdrop that Bent Sr. landed in Rome early on Monday, September 15. When he arrived, Bent Sr. endeavored to stay informed by telephone (he did not have e-mail) as

to RMCI's efforts to save the Fund and protect the investors. However, a rapidly changing set of events meant that the key decisions were necessarily made in real-time by the Fund's managerial team at its New York headquarters.

In the aftermath of these events, the SEC claims that Bent Sr. "systematically violated the antifraud provisions of the federal securities laws." This is misplaced in the extreme. The SEC's notion that in the midst of a financial meltdown, from a cellphone in a rural Italian hotel room, and after a largely sleepless night on an overseas flight to celebrate a milestone anniversary, Bent Sr. masterminded, on the fly, a large scale fraudulent conspiracy on Fund investors, is as much at odds with the evidence as with common sense.

As is clear from his accompanying declaration, and from the evidentiary record (including the *three* depositions the SEC took of him), Bent Sr. was not responsible for any of the investor or rating agency communications with which the SEC takes issue. As for Trustee communications, the SEC's entire claim against Bent Sr. boils down to just a single sentence from the Monday 1:00 P.M. meeting minutes: "The Trustees questioned management respecting whether RMCI had sufficient capital to provide credit support to the Primary Fund and Bent Sr. represented that sufficient capital could be made available for this purpose." (Bent Sr. Ex. I.)

Basically, the SEC claims Bent Sr. was lying, because a later draft credit support agreement contained only $10 million of support, a "limit" not told to the Board at the 1:00 P.M. meeting. Discovery, however, has established the following undisputed facts:

- As of the 1:00 P.M. meeting when Bent Sr. answered that question, there was no $10 million figure. That amount only came into play later that day, after the SEC told RMCI's counsel that RMCI needed to include a specific amount in its proposed agreement. (Bent II Decl. ¶ 7.)
- Bent Sr. understood that the $10 million of credit support could be increased. (Bent Sr. Decl. ¶ 33.)
- Based on the value of RMCI's equity, Bent Sr. estimated that, with a little time, he could raise up to $100 million in credit support, an amount he

reasonably believed would be sufficient. (Bent Sr. Decl. ¶ 20.)

- Once redemptions had reached the point where the no credit support agreement that RMCI could muster would be effective, RMCI notified the SEC *at 8:00 A.M. on Tuesday morning*, and then the Board. (Bent Sr. Decl. ¶ 38.)

Lastly, no investor was harmed by any accused acts – the SEC has acknowledged in a February 10, 2011 letter to Court that "investor loss is not at issue in this case."

In the face of these undisputed facts, the SEC's claims against Bent Sr. are unavailing, notwithstanding their repeated invocation of the terms "aiding and abetting" and "control person." As set forth below, "guilt by association" does not satisfy the evidentiary standard for securities fraud. The SEC has had almost a year to find evidence that Bent Sr. lent "substantial assistance" to a securities fraud, and they have found none. Bent Sr. respectfully submits that summary judgment is warranted in his favor on all counts.

## ARGUMENT

Bent Sr. is named on six of seven Claims for Relief. The Complaint, for the most part, speaks generically of "Defendants," with little or no explanation to what the SEC believes Bent Sr. did wrong, and how that ties to the specific counts. While that may have been sufficient for the dismissal stage, "group pleading is and has always been just a pleading device, designed to aid plaintiffs at the pleading stage and prior to discovery but not to free them of their ultimate burden to link the defendant to the making of a misstatement." *SEC v. Espuelas*, 699 F. Supp. 2d 655, 660 (S.D.N.Y. 2010). Here, the SEC cannot possibly satisfy its burden to link Bent Sr. to any misstatement, and so summary judgment is warranted.

### I. Based on the Undisputed Facts, Bent Sr. Cannot Be Liable For Aiding and Abetting Any Securities Law Violations

Section 20(e) of the Exchange Act provides that "any person that knowingly provides substantial assistance to another person in violation of a provision of [the Exchange Act] . . .

shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided." To hold Bent Sr. liable as an aider and abettor, the SEC would have to prove that: (1) the primary wrongdoer committed a § 10(b) violation; (2) Bent Sr. had actual knowledge of the violation; and (3) he "substantially assisted" in the primary violation. *SEC v. PIMCO Advisors Fund Mgmt.*, 341 F. Supp. 2d 454, 467-468 (S.D.N.Y. 2004). Each of these three elements must be proven. *See SEC v. DiBella*, 587 F.3d 553, 566 (2d Cir. 2009) ("The three requirements cannot be considered in isolation from one another").

The SEC cannot satisfy any of these requirements as to Bent Sr. First, as set forth in Defendants' joint brief, there was no § 10(b) violation, nor any knowledge of one by Bent Sr. Even assuming, *arguendo*, those elements could be satisfied, there is no evidence of "substantial assistance" by Bent Sr. In *DiBella*, *supra*, the Second Circuit described the kind of showing the SEC would have to make to support a claim against an aider and abettor:

> Satisfaction of the [knowledge] requirement will . . . depend on the theory of primary liability[,] and . . . there may be a nexus between the degree of [knowledge] and the requirement that the alleged aider and abettor render "substantial assistance." Substantial assistance, in turn, requires a showing that "the aider and abettor proximately caused the harm to [the victim] on which the primary liability is predicated."

587 F.3d at 566 (citations omitted).

It is not enough to show that a defendant was careless or even reckless; aiding and abetting liability requires "actual knowledge of the violation by the aider and abettor." *SEC v. Stanard*, 2009 U.S. Dist. Lexis 6068, *88 (S.D.N.Y. Jan. 27, 2009).

Here, the Complaint identifies only three specific acts by Bent Sr. which the SEC alleges were in any way wrongful. First, there is Bent Sr.'s statement to the Board at the September 15 1:00 P.M. meeting that "sufficient capital" could be made available. (Compl. ¶¶ 72-73.) Second, there is the claim that Bent Sr. "reviewed and commented on [a] draft press release."

*Id.* ¶ 89. Third, there is the claim that Bent Sr. was informed "via telephone that [RMCI's CIO, Patrick Ledford] believed the rating agencies would be 'fat and happy' after having received the affirmative message of credit support for the Fund set forth in 'The Reserve Insights.'" *Id.* ¶ 96.

None of these allegations comes close to constituting "substantial assistance." As the Court explained in granting summary judgment to the defendant in *SEC v. Tecumseh Holdings Corp.*, 2009 U.S. Dist. Lexis 119869, *17 (S.D.N.Y. Dec. 22, 2009), "it is well-established in the Second Circuit that 'mere awareness and approval of [a] primary violation is insufficient to make out a claim for substantial assistance.' Inaction is only sufficient if 'it was designed intentionally to aid the primary fraud or it was in conscious or reckless violation of a duty to act."

Here, there is no evidence that Bent Sr. did anything from his hotel room in Italy to substantially assist anyone in making any misrepresentations. Bent Sr. is therefore entitled to summary judgment on the SEC's claim against him for aider and abettor liability.

II. Based on the Undisputed Facts, Bent Sr. Cannot Be Liable as a Control Person

The SEC's claims against Bent Sr. fare no better under § 20(a) of the Exchange Act. To establish a prima facie case, the SEC would have to show: "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

The SEC cannot satisfy any of these three elements. As set forth in Defendants' joint brief, it cannot establish a primary violation. Nor can it establish control. For purposes of § 20(a), "[a] person's status as an officer, director or shareholder, absent more, is not enough to trigger liability." *Hemming v. Alfin Fragrances, Inc.*, 690 F. Supp. 239, 245 (S.D.N.Y. 1988). "The Section 20(a) defendant must not only have actual control over the primary violator, but

have 'actual control over the transaction in question.'" *In re Alstom SA Secs. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005). A separate showing of control and culpable participation has to be made for each defendant. *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1996) ("liability requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability").

Bent Sr. was with his wife in Italy at all relevant times. Although he did as much as he could to stay informed about what was happening at RMCI, the fact remains that he was on a different continent six times zones away, with no e-mail access and a single cell phone. From this remote location, Bent Sr. did not have control over investor communications: he saw no e-mails, including Bruce Bent II's 1:19 e-mail, and he did not know what RMCI's sales and marketing staff was saying or doing. While part of a draft of the Insights piece was read to him over the phone, Bent Sr. never saw the whole document in its entirety; never saw the piece that was ultimately released; and never approved it for publication. (Bent Sr. Decl. ¶ 44.)

Control person liability cannot be imposed just because someone was out of the office. *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 414 (S.D.N.Y. 2010) (holding that appearing "on the emails as passive recipients . . . does not suffice to allege their culpable participation"); *Alstom, supra*, 406 F. Supp. 2d at 490 ("Culpable participation clearly requires 'something more than negligence'"); *Fezzani v. Bear Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 646 (S.D.N.Y. 2004) (holding that "even significant participation . . . scheme to defraud is not equivalent to directing [party] to engage in that scheme").

There is no evidence of any such culpable participation here. Bent Sr. is therefore entitled to summary judgment on the SEC's claim against him for control person liability.

## CONCLUSION

Accordingly, Bent Sr. is entitled to summary judgment on all counts against him.

Dated: New York, New York
May 13, 2011

Respectfully submitted,

DUANE MORRIS LLP

By: /s/ Fran M. Jacobs
Fran M. Jacobs
John Dellaportas
Kathrine A. Gehring
1540 Broadway
New York, NY 10036
(212) 692-1000
Attorneys for Defendants
Reserve Management Company, Inc. Resrv Partners, Inc., Bruce R. Bent, Sr. and Bruce R. Bent II