UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
IN RE THE RESERVE FUND SECURITIES AND         :
DERIVATIVE LITIGATION                          :   MDL No. 09-md-2011 (PGG)
-----------------------------------------------------------------x
SECURITIES AND EXCHANGE                        :
COMMISSION,                                    :
                                               :
                    Plaintiff,                 :
                                               :
         v.                                    :   No. 09 Civ. 4346 (PGG)
                                               :
RESERVE MANAGEMENT COMPANY, INC.,              :   ECF CASE
RESRV PARTNERS, INC., BRUCE BENT SR.           :
and BRUCE BENT II,                             :
                                               :
                    Defendants,                :
   and                                         :
                                               :
THE RESERVE PRIMARY FUND,                      :
                                               :
                    Relief Defendant.          :
-----------------------------------------------------------------x

## PROPOSED JOINT PRETRIAL ORDER

Pursuant to the Court's Individual Practices, effective June 4, 2012, and the Court's Scheduling Orders, Plaintiff Securities and Exchange Commission and Defendants Reserve Management Company, Inc. ("RMCI"), Resrv Partners, Inc. ("Resrv Partners"), Bruce Bent Sr. ("Bent Sr."), and Bruce Bent II ("Bent II") respectfully submit their proposed joint pretrial order.

I.     **Full Caption of the Action**

       The full caption of the case is given above.

## II. Trial Counsel

### A. Plaintiff Securities and Exchange Commission

Nancy A. Brown
Senior Trial Counsel
Alexander J. Janghorbani
Senior Trial Counsel
Michael D. Birnbaum
Senior Counsel
New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281
Phone: (212) 336-1023 (Brown)
       (212) 336-0177 (Janghorbani)
       (212) 336-0523 (Birnbaum)
Fax: (212) 336-1319
Email: BrownN@sec.gov
       JanghorbaniA@sec.gov
       BirnbaumM@sec.gov

### B. Defendants RMCI, Resrv Partners, Bent Sr. and Bent II

| | | | |
|---|---|---|---|
| John Dellaportas | 212-692-1012 (tel.) | 212-692-1020 (fax) | dellajo@duanemorris.com |
| Fran M. Jacobs | 212-692-1060 (tel.) | 212-692-1020 (fax) | fmjacobs@duanemorris.com |
| Kathrine A. Gehring | 212-692-1093 (tel.) | 212-692-1020 (fax) | kagehring@duanemorris.com |

## III. Brief Statement as to the Basis of Subject Matter Jurisdiction

### A. Plaintiff Securities and Exchange Commission

Plaintiff brings this action pursuant to Section 20 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77t(b), Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. 78u(d), and Section 209 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-9(d). The Court has already found that jurisdiction exists over the Relief Defendant, the Primary Fund, pursuant to Section 25(c) of the Investment Company Act of 1940 (the "Investment Company Act"), 15 U.S.C. § 80a-25. (Memorandum Opinion, entered November 25, 2009 (DE 90), at 18.) This Court has jurisdiction to adjudicate

2

Plaintiff's claims pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Sections 21(d), 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 77u(e) and 78aa, and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14. Defendants admit that venue is proper in this District. (Answer, filed March 11, 2010 (DE 282) ¶ 17.)

    B.    <u>Defendants</u>

Defendants do not dispute that subject matter jurisdiction exists in this case.

**IV.**    **Brief Summary of Claims and Defenses Still to Be Tried and Those Not to Be Tried**

    A.    <u>Plaintiff Securities and Exchange Commission</u>

Plaintiff's claims to be tried are:

1.    RMCI, Resrv Partners and Bent II, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities, knowingly or recklessly have (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers of securities and upon other persons, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 therunder. Defendants admit that instrumentalities of interstate commerce were used by them to the extent that their general business practices were involved in connection with the transactions, acts, practice and courses of business alleged. (Answer (DE 282) ¶ 18.)

2.    Defendants Bent Sr. and Bent II, singly or in concert, directly or indirectly, aided and abetted each of the other Defendants' primary violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, by knowingly providing substantial assistance to the other Defendants' primary violations, in violation of Section 20(e) of the Exchange Act.

3

3. Defendants Bent Sr. and Bent II were directly or indirectly control persons of Defendant RMCI, and, pursuant to Section 20(a) of the Exchange Act, they are therefore jointly and severally liable with and to the same extent as Defendant RMCI for its violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

4. RMCI, Resrv Partners and Bent II, directly or indirectly, singly or in concert, in the offer and sale of securities, knowingly or recklessly have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit upon the purchaser or offeree, in violation of Section 17(a) of the Securities Act. Defendants admit that instrumentalities of interstate commerce were used by them to the extent that their general business practices were involved in connection with the transactions, acts, practice and courses of business alleged. (Answer (DE 282) ¶ 18.)

5. Defendants RMCI, Bent Sr. and Bent II, while acting as investment advisers, directly and indirectly, have employed devices, schemes and artifices to defraud clients and prospective clients; and have engaged in transactions, practices and courses of business which operate as a fraud or deceit upon clients and prospective clients, in violation of Sections 206(1) and (2) of the Advisers Act. Defendants admit that instrumentalities of interstate commerce were used by them to the extent that their general business practices were involved in connection with the transactions, acts, practice and courses of business alleged. (Answer (DE 282) ¶ 18.)

6. Defendants RMCI, Bent Sr., and Bent II, while acting as investment advisers to a pooled investment vehicle, have made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to an investor or prospective investor in the pooled investment vehicle or otherwise engaged in acts, practices, or courses of business that are fraudulent, deceptive or manipulative with respect to an investor or prospective investor in the pooled investment vehicle, in violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder. Defendants admit that instrumentalities of interstate commerce were used by them to the extent that their general business practices were involved in connection with the transactions, acts, practice and courses of business alleged. (Answer (DE 282) ¶ 18.)

7. Defendants Bent Sr. and Bent II, singly or in concert, directly or indirectly, aided and abetted RMCI's primary violations of Sections 206(1) and (2) of the Advisers Act by knowingly providing substantial assistance to RMCI's primary violations.

8. Defendants Bent Sr. and Bent II, singly or in concert, directly or indirectly, aided and abetted RMCI's primary violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder by knowingly providing substantial assistance to RMCI's primary violations.

Plaintiff's claim against the Relief Defendant under Section 25(c) of the Investment Company Act and Section 21(d)(5) of the Exchange Act has already been adjudicated. (Memorandum Opinion, entered November 25, 2009 (DE 90).)

B. <u>Defendants' Statement</u>

1. Following the Court's March 28, 2012 decision on the parties' motions for summary judgment, the following claims remain to be tried:

    A.    The SEC's claim that RMCI, Partners, Bent Sr., and Bent II made fraudulent statements in violation of Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, or violated Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), by aiding and abetting violations of Section 10(b) or Rule 10b-5 thereunder;

    B.    The SEC's claim that Bent Sr. and Bent II are liable as "control persons" under Section 20(a) of the Exchange Act of 1934, 15 U.S.C. § 78t(a);

    C.    The SEC's claim that RMCI, Partners, and Bent II are liable for violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); and

    D.    The SEC's claim that RMCI, Bent Sr., and Bent II violated, or aided and abetted in violations of, Sections 206(1), (2), and (4) of the Investment Advisers Act (the "Advisers Act"), 15 U.S.C. § 80b-6(1), (2), and (4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8;

2.    Defendants deny that they engaged in any conduct that violates Section 10(b) of the Exchange Act, Section 17(a) of the Securities Act, Sections 20(e) and 20(a) of the Exchange Act, or Sections 206(1), (2), or (4) of the Advisers Act or Rule 206(4)-8 thereunder. In particular, Defendants contend:

    A.    The SEC cannot establish a violation of Section 10(b) or Section 17(a) by RMCI, Partners, Bent Sr. or Bent II because:

        i)    The SEC cannot establish that Defendants made actionable statements or omissions "in connection with" a purchase or sale of securities;

        ii)    The SEC cannot establish that Defendants made any material misrepresentation, either by statements or omissions, to investors;

        iii)    The SEC cannot establish that Defendants made any material misrepresentation to any ratings agency, either by statements or omissions, in order to mislead investors or that was then communicated to investors;

        iv)    The SEC cannot establish that Defendants made any of the alleged misstatements with scienter, had any intent to deceive, manipulate, or defraud, or acted recklessly;

        v)    The SEC cannot establish that Defendants had any motive or intent to commit fraud;

vi) The SEC cannot establish that Defendants acted recklessly;

vii) The SEC cannot establish that Defendants' statements did not reflect their intent when made and that Defendants made statements with actual knowledge of falsity;

viii) The SEC cannot establish that Defendants are responsible for statements made by any other party; and

ix) The SEC cannot establish any violations of Section 20(e) of the Exchange Act because, in order to establish aiding and abetting liability, there must have been a primary violation of Section 10(b), which the cannot establish.

B. The SEC cannot establish any violation of Section 20(a) of the Exchange Act by Bent Sr. and Bent II because:

i) In order to establish control person liability, there must have been a primary violation of Section 10(b), which, as set forth in the preceding paragraph, the SEC cannot establish; and

ii) The SEC will be unable to show actual control over any other person and that the Bents were culpable participants in the conduct of any other person.

C. The SEC cannot establish a violation of Sections 206(1), (2), or (4) of the Advisers Act or Rule 206(4)-8 thereunder because:

i) Neither of the Bents was an investment adviser. Their conduct therefore is not subject to regulation under the Investment Advisers Act;

ii) RMCI's client was the Reserve Fund, and not any of the Fund's institutional or individual or investors. RMCI did not make any material representation to the Fund or to any of the Fund's Independent Trustees, nor was any misrepresentation made to the Independent Trustees, either by statement or omission, with scienter, or any intent to deceive, manipulate, or defraud the Fund, the Independent Trustees, or investors;

iii) The disclosures made to the Fund's Independent Trustees were consistent with RMCI's fiduciary obligations;

iv) Bent Sr. and Bent II cannot be liable for aiding and abetting violations under Sections 206(1), (2), and (4) and Rule 206(4)-8 because there was no primary violation of Sections 206(1), (2), and (4) or Rule 206(4)-8; because neither Bent Sr. nor Bent II knew of any fraud; and because neither Bent Sr. nor Bent II provided any substantial assistance to any primary violator; and

    v)  The statements on which some or all of the SEC's claims under the Advisers Act are based were not made by RMCI and therefore are not actionable under the Advisers Act.

  D.  Defendants relied in good faith on the advice of counsel and therefore did not act with the scienter necessary to establish fraud.

  E.  The statements on which some of the SEC's claims are based were unauthorized and therefore cannot be attributed to Defendants.

3. Pursuant to the Court's February 24, 2010 decision on Defendants' motion to dismiss the complaint, the SEC may not rely on any statements made by Bent Sr. concerning the valuation of the Fund's Lehman holdings in proving its claims.

4. Pursuant to the Court's March 28, 2012 decision on the parties' motions for summary judgment, the SEC cannot pursue any claims against Defendants based on a statement made to the Wall Street Journal on September 15, 2008 because the statement was never communicated to investors.

5. Issues concerning the remedies, if any, available in this case will not be determined by the jury and will only be considered by the Court in the event that the jury finds in the SEC's favor on the issue of liability. Defendants nevertheless dispute the scope or availability of the remedies of disgorgement, civil penalties, and injunctive relief for the following reasons:

  A  Disgorgement is not available as a remedy because Defendants not benefitted from any "ill-gotten gains";

  B.  The SEC cannot produce any evidence of "ill-gotten gains" and it therefore cannot recover civil penalties of more than the statutorily-fixed penalties since Defendants had no pecuniary gain, 15 U.S.C. § 77t(d), 15 U.S.C. § 78u(d), 15 U.S.C. § 80b-9(e);

  C.  Injunctive relief is not warranted given because Defendants' alleged misconduct occurred on an isolated occasion and was of limited duration, and there is no "realistic likelihood of recurrence"; and

D. Pursuant to the Court's March 28, 2012 decision on Defendants' Motion to Exclude portions of the SEC's Motion for Summary Judgment, the SEC is judicially estopped from seeking relief based on investor loss, and investor loss is not otherwise relevant to any of the SEC's claims.

## V. Statement Listing Each Element or Category of Damages Sought

Plaintiff does not seek "damages." Rather, Plaintiff seeks disgorgement of any ill-gotten gains derived by Defendants from the conduct alleged in the Complaint, plus prejudgment interest on those amounts, including all fees, bonuses or other payments earned or claimed under any agreements or otherwise pertaining to assets under management after September 16, 2008. Plaintiff also seeks civil penalties pursuant to Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act and Section 209(3) of the Advisers Act, and injunctive relief against further violations by any Defendant of any of the provisions of the Securities Act, the Exchange Act and the Advisers Act charged. Whether the Commission is entitled to any of these remedies is a matter reserved for the Court and will not be a matter for the Jury to determine. Aaron v. SEC, 446 U.S. 680, 701 (1980) (injunctive relief is an equitable remedy to be decided by the Court); Chauffers, Teamsters, and Helpers Local No. 391 v. Terry, 494 U.S. 558, 570 (1990) (disgorgement is an equitable remedy to be decided by the Court); 15 U.S.C. § 78u(d)(3) (the "court shall have jurisdiction to impose, upon a proper showing, a civil penalty"). Pursuant to the Court's ruling delivered at the March 28, 2012 hearing, Plaintiff understands that the Court does not intend to rule on any application by the Plaintiff for disgorgement, penalties or injunctive relief until such time as liability is determined.

VI.     **Statement by Each Party as to Whether the Case Is to Be Tried to a Jury**

      A.   <u>Plaintiff Securities and Exchange Commission</u>:   Plaintiff has no objection to Defendants' jury demand on all claims. Plaintiff anticipates that it will need two weeks for the presentation of its case in chief.

      B.   <u>Defendants</u>:   The case is to be tried with a jury. Defendants anticipate that 10 trial days will be needed.

VII.    **Statement as to Whether All Parties Have Consented to Trial by Magistrate Judge**

      The parties do not consent to trial of the case by a magistrate judge.

VIII.   **Stipulations or Agreed Statements of Fact or Law**

      1.   Plaintiff is the United States Securities and Exchange Commission ("SEC").

      2.   The four defendants in this case ("Defendants") are Reserve Management Company, Inc. ("RMCI"), Resrv Partners, Inc. ("Resrv Partners"), Bruce Bent Sr. ("Bent Sr."), and Bruce Bent II ("Bent II").

      3.   RMCI was, until March 31, 2011, a registered Investment Adviser and was, on September 15 and September 16, 2008, the registered Investment Adviser entity for the Reserve Primary Fund (the "Fund").

      4.   Resrv Partners was, until November 24, 2010, a registered broker-dealer and member of FINRA. On September 15 and September 16, 2008, Resrv Partners was the broker-dealer and the distributor for the Fund.

      5.   Bent Sr. was, on September 15 and September 16, 2008, the Chairman of RMCI and Resrv Partners, and Chairman of the Board of Trustees of the Primary Fund (the "Fund").

6.  Bent II was, on September 15 and 16, 2008, the Vice Chairman and President of RMCI, the Vice Chairman of Resrv Partners, and the Co-Chief Executive Officer and Senior Vice President of the Fund.

7.  The Fund is a series of the Reserve Fund, a Massachusetts business trust registered with the SEC under the Investment Company Act as an open-ended investment company.

8.  The Primary Fund prospectus in effect as of September 15, 2008 contained the following disclosure:

> An investment in the Fund is not insured or guaranteed by the U.S. government, FDIC or any other governmental agency. Although [the] Fund seeks to preserve the value of your investment at $1.00 per share, it is possible to lose money by investing in [the] Fund.

9.  In September 2008, RMCI employed the following in addition to Bent Sr., Bent II, and Bent II's brother, Arthur Bent,: Catherine Crowley ("Crowley"), General Counsel and Fund Secretary; Patrick Ledford ("Ledford"), Chief Investment Officer; Patrick Farrell, Chief Financial Officer; Christina Massaro ("Massaro"), Chief Compliance Officer; and Michael Luciano, Portfolio Manager.

10. KPMG LLP ("KPMG") acted as the Fund's accountant and independent auditor in September 2008.

11. Oversight for the management of the Fund was provided by a Board of Trustees, which consisted of eight trustees, seven of whom were independent (the "Independent Trustees"). Bent Sr. was the only trustee who was not an Independent Trustee.

12. As of September 15, 2008, the Independent Trustees were Ronald Artinian, a former Executive Vice President and Senior Managing Director of Smith Barney; William Montgoris, the former Chief Operating Officer of The Bear Stearns Companies, Inc.; Santa

Abicocco, formerly the Treasurer of Nassau County and Board Member of the New York State Banking Board; Edwin Ehlert Jr; Frank J. Stalzer; William Viklund; and Stephen P. Zieniewicz.

13. Lehman Brothers Holdings, Inc. ("Lehman") filed for bankruptcy on Monday, September 15, 2008.

14. On September 15 and 16, 2008, the financial markets were in turmoil.

15. All of the alleged statements and omissions on which the SEC's claims are based occurred on September 15 or 16, 2008, in the wake of Lehman's bankruptcy filing.

16. As of September 15, 2008, the Fund held Lehman medium term notes and commercial paper in amounts totaling $785 million.

17. The Fund's investment in Lehman complied with all then-applicable SEC guidelines for money market funds, including that the Lehman paper was highly rated and the Fund's Lehman holdings fell below the maximum permissible amount of securities of any one issuer.

18. None of the SEC's claims is based on an allegation that the Fund's investment in Lehman paper was itself unlawful.

19. The Fund disclosed its Lehman holdings in its Quarterly Schedule of Portfolio Holdings, which RMCI filed with the SEC.

20. On September 14, 2008, before Bent Sr. knew about the Lehman bankruptcy, he and his wife left for Italy on a long-planned trip to celebrate the fiftieth anniversary of the day they met.

21. The Board met by telephone on September 15, 2008 at 8:00 a.m., 9:30 a.m., and 1:00 p.m., and on September 16, 2008 at 10:00 a.m., 12:00 p.m., 1:45 p.m., 3:45 p.m., and 4:15 p.m.

22. The Board's first meeting took place by telephone at approximately 8:00 A.M. on September 15 (the "8:00 Board Meeting").

23. The 8:00 Board Meeting was recorded.

24. At the 8:00 Board Meeting, Bent II advised the Board that the Fund's Lehman holdings constituted 1.18% of total assets.

25. Bent II also reported at the 8:00 Board Meeting that "we have redemptions queued up for $5.2 billion out of [the] Primary" Fund.

26. Bent Sr. advised the Board at the 8:00 Board Meeting that "[i]f Lehman is set – marked to market at 55 percent, then we're at the half of one percent level."

27. Bent Sr. further advised the Board at the 8:00 Board Meeting that "the double-whammy on that is, obviously, as the assets of the fund go down, the more significant the Lehman holdings become, relative to the total assets of the fund."

28. The Board agreed to reconvene at 9:30 A.M. to consider how to assign fair value to the Fund's Lehman holdings.

29. At the 9:30 A.M. Board meeting, which was also recorded, Ledford reported that, with respect to Lehman commercial paper, there were "no actual trades being done."

30. The Board voted at its 9:30 A.M. meeting to mark down the Fund's Lehman holdings to 80% of par.

31. The 1:00 P.M. Board Meeting was not recorded.

32. No witness has testified, and the SEC has not taken the position, that Bent Sr. or Bent II provided any specific redemption figure at the 1:00 P.M. Board Meeting on September 15.

33. At the 1:00 P.M. Board Meeting, the Board authorized Goldberg and DiMartino

to contact the SEC about putting a credit support agreement in place.

34. On September 15, 2008, Goldberg and DiMartino discussed a potential credit support agreement with Robert Plaze and Dalia Blass, SEC staff working in the SEC's Division of Investment Management.

35. During their conversation, Plaze told Goldberg and DiMartino that he would send them a sample credit support agreement.

36. Following the 1:00 Board Meeting, Massaro found a template for a no-action letter and sent it to DiMartino to give her a head-start in drafting the documents the SEC would need.

37. At 1:19 P.M., Bent II sent an e-mail to Directors of Sales and Marketing with a copy to Crowley, stating:

> We (Reserve Management Company, Inc.) intend to protect the NAV on the Primary Fund to whatever degree is required. We have spoken with the SEC and are waiting [for] their final approval which we expect to have in a few hours. You may communicate this to clients on an as needed basis.

38. Within ten minutes after Bent II sent his e-mail, Crowley circulated a clarification which stated: "We haven't entered into the agreements yet; that's why Bruce's email said we intend to. We will submit a form of the agreement to the SEC this afternoon for its review and approval which we expect to obtain."

39. Once Crowley received the draft no action letter from DiMartino, she forwarded it to another in-house RMCI attorney, Scarlet Du ("Du"), and to Massaro.

40. DiMartino sent a draft of a support agreement to Crowley at 7:16 P.M., and she followed up with a revised draft of the no action letter at 7:27 P.M.

41. At 7:42 A.M. on September 16, 2008, Goldberg sent Plaze and the head of the SEC's Division of Investment Management an e-mail which stated in part that the Fund "can't

14

price," "doesn't have enough cash to meet redemptions," and is "going out of business."

42. Shortly before 4:00 P.M. on September 16, 2008, the Board reduced its valuation of the Fund's Lehman paper to zero, and a press release was issued announcing that the NAV for the Fund was $0.97 per share.

Additional Stipulations Regarding Evidence

1. With the exception of emails to or from Eric Lansky, all emails marked with a time stamp ending "GMT" reflect Eastern Daylight Time plus four hours.

2. The phone line used by Elliott Goldstein on September 15-16, 2008 was not recorded.

**IX. Witness Lists**

A. Plaintiff:  Appended hereto as Exhibit A is Plaintiff's list of witnesses it plans to call at trial or may call at trial if the need arises. All with be offered live.

B. Defendants:  Appended hereto as Exhibit B is Defendants' list of witnesses it plans to call at trial.

Plaintiff specifically objects to Defendants' witness list to the extent that it fails to comply with this Court's Individual Practices and the Federal Rules of Civil Procedure, including, but not limited to, its failure to identify whether its witnesses will be presented by live testimony or by deposition designation, fails to identify witnesses by name, and purports to reserve Defendants' rights to amend their list and to call without prior identification, impeachment or rebuttal witnesses.

X.  **Deposition Designations and Cross Designations**

   A.  <u>Plaintiff</u>:   Plaintiff plans to call its witnesses live, either in its case in chief or in rebuttal. Nonetheless, it has provided Defendants (and appends hereto as Exhibit C) its counter/cross designations to the testimony designated by Defendants.

   B.  <u>Defendants</u>:   Appended hereto as Exhibit D are Defendants' Deposition Designations with Plaintiff's objections thereto.

XI.  **Exhibit List and Objections**

   A.  <u>Plaintiff's Exhibit List</u>:  Appended hereto as Exhibit E is Plaintiff's Exhibit List with Defendants' Objections, and a list of Plaintiff's Exhibits to which Defendants did not respond.

   B.  <u>Defendants' Exhibit List</u>:   Appended hereto as Exhibit F is Defendants' Exhibit List with Plaintiff's Objections.

Dated: New York, New York
       June 11, 2012                               Respectfully submitted,

SECURITIES AND EXCHANGE              DUANE MORRIS LLP
COMMISSION

By: _____            By: _____
    Nancy A. Brown                       John Dellaportas
    Alexander J. Janghorbani             Fran M. Jacobs
    Michael D. Birnbaum                  Katherine Ghering

3 World Financial Center             1540 Broadway
New York, New York  10281            New York, New York  10036-4086
Tel:  (212) 336.1023 (Brown)         Tel:  (212) 692.1012 (Dellaportas)

Attorneys for Plaintiff Securities and    Attorneys for Defendants
Exchange Commission                       Reserve Management Company, Inc., Resrv
                                          Partners, Inc., Bruce Bent Sr., and Bruce Bent
                                          II