UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | : 09 MD 2011 (PGG) |
| | : |
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : No. 09 Civ. 4346 (PGG) |
| RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II, | : ECF Case |
| Defendants, | : |
| and | : |
| THE RESERVE PRIMARY FUND, | : |
| Relief Defendant. | : |

MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION IN LIMINE FOR AN ORDER STRIKING
THE SEC'S DEPOSITION "COUNTER-DESIGNATIONS"

DUANE MORRIS LLP
1540 Broadway
New York, NY  10036
(212) 692-1000
Attorneys for Defendants
Reserve Management Company, Inc. Resrv
Partners, Inc., Bruce R. Bent, Sr. and Bruce R. Bent II

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

BACKGROUND ......................................................................................................................1

ARGUMENT – A PARTY MAY PROPERLY COUNTER-DESIGNATE ONLY THE
DEPOSITION TESTIMONY NEEDED TO ENSURE THAT THE JURY IS NOT LEFT
WITH A MISIMPRESSION ABOUT THE WITNESS'S TESTIMONY .....................................7

CONCLUSION ........................................................................................................................11

DEPOSITION DESIGNATIONS AND COUNTER-DESIGNATIONS ....................Appendix A

TABLE OF AUTHORITIES

Cases

In re Bennett Funding Group, Inc.
    1997 Bankr. LEXIS 2359 (Bankr. N.D.N.Y. Dec. 18, 1997),
    aff'd, 255 B.R. 616 (N.D.N.Y. 2000) ................................................................................. 9-10

Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,
    199 F.R.D. 487 (E.D.N.Y. 2001) ...........................................................................................9

Farr Man Coffee, Inc. v. Chester,
    1993 U.S. Dist. LEXIS 8992 (S.D.N.Y. June 28, 1993) ........................................................8

Frito-Lay of Puerto Rico, Inc. v. Canas,
    92 F.R.D. 384 (D.P.R. 1981) ...............................................................................................10

L-3 Commc'ns Corp. v. Osi Sys., Inc.,
    2006 U.S. Dist. LEXIS 19686 (S.D.N.Y. Apr. 11, 2006),
    rev'd in part and vacated in part on other grounds,
    283 Fed. Appx. 830 (2d Cir. 2008) ......................................................................................10

Trepel v. Roadway Express, Inc.,
    194 F.3d 708 (6th Cir. 1999) ................................................................................................9

Westinghouse Elec. Corp. v. Wray Equip. Corp.,
    286 F.2d 491 (1st Cir. 1961), cert. denied, 366 U.S. 929 (1961) ...........................................9


Statutes and Other Authorities

7 Moore's Federal Practice  (3d Ed.) ..........................................................................7, 8, 9

Fed. R. Civ. P. 32 ..................................................................................................7, 8, 9, 10

Fed. R. Evid. 106 ........................................................................................................ Passim

PRELIMINARY STATEMENT

This memorandum is submitted on behalf of defendants Reserve Management Company, Inc., Resrv Partners, Inc., Bruce R. Bent II, and Bruce R. Bent, Sr. (collectively referred to as "Defendants") in support of their motion in limine for an order striking the SEC's deposition "counter-designations" on the ground that they make no attempt to comply with the rule of completeness, and encompass new material which is not needed to ensure that the testimony Defendants designated does not leave the jury with a misimpression.

BACKGROUND

In the course of preparing the Joint Pre-Trial Order, Defendants provided the SEC with the designations of the testimony they intended to offer from the depositions of SEC witnesses. The SEC then produced a long list of "counter-designations." Defendants have no objection to the SEC's submitting appropriate counter-designations to ensure completeness. Under Fed. R. Civ. P. 32(a)(6) and Fed. R. Evid. 106, however, the SEC's right to counter-designate its own deposition testimony is limited to the extent needed to keep the testimony Defendants offer from being misunderstood. In this case, many of the SEC's "counter-designations" are unrelated to the testimony Defendants designated and introduce entirely new subjects. Such testimony is not only unnecessary to complete the testimony that Defendants designated, but it also constitutes inadmissible hearsay.

Instead of cataloging each occasion on which the SEC counter-designated testimony which is not needed to complete the testimony Defendants designated, a few examples are given below. Rather than burden the Court with having to review all of the SEC's blatantly improper counter-designations, the SEC should be directed to go back and make proper counter-designations, which the Court can then review as needed.

This issue is particularly important because the Court will be carefully controlling the trial to avoid waste of jury time, including use of a "timed trial."  In recognition of these limits, Defendants undertook to carefully review the SEC depositions, and only designate the absolute minimum necessary to present the jury with a complete record.

For example, with respect to the deposition of Robert Plaze ("Plaze"), an Associate Director of the SEC's Investment Management Division with whom Defendants communicated during the critical September 15-16, 2008 period, Defendants did not designate any testimony Plaze gave between page 29 of his deposition (where he was asked about the effect of Lehman Brothers' bankruptcy on the financial markets) and page 36 (where he was asked about when he was first contacted about the Reserve Primary Fund (the "Fund")).  The SEC nevertheless "counter-designated" the following lengthy passages from pages 32 through 33 and 35 through 36 of the Plaze deposition:

> Q.      Did you have to sign off on any no-action letters?
>
> A.      Yes.
>
> Q.      Do you remember whether there was a no-action letter relating to Evergreen?
>
> MS. SZCZEPANIK:  I would ask that the witness contain his answers to registrants that have become a matter of public record.
>
> A.      Evergreen, I believe, was one of the – one of the fund groups.
>
> BY MS. JACOBS:
>
> Q.      About how many of the 12-to-15 fund groups that held Lehman securities contacted the SEC for some kind of relief on September 15th?
>
> A.      Several, but I cannot tell you how many of them, because other people were contacting us that day about concerns with other securities.

And I – undoubtedly, I have records, but I have not reviewed those records to identify what contacts we had that day and which ones related to Lehman Brothers, although I do know a number of them – a number of them did.

We had other securities at the time – AIG – others that we were receiving calls from – very, very busy period.

May I add something else?

Q.      Yeah.

A.      There was a method of addressing a problem without contacting us that was permitted under the rules.

A      Lehman Brothers bankruptcy meant that the securities were no longer eligible securities for money market funds, and funds were eligible – or could under the rules buy out the security for cash at that time – which some did – and so they would not have necessarily – but would have shown up on our list that we made, but they would not have necessarily contacted us in order to request no-action if the transactions they were proposing was for cash.

(Appendix A:  Plaze Dep. 32:23-34:14.)

Q.      Did you know the size of the Primary Fund?

A.      No, not until –

Q.      Did there come a time when you learned the size?

A.      There did.  That would have been Tuesday.

Q.      You didn't know the size of the fund  until Tuesday?

A.      Right.  We had not focused on the Reserve Fund.

Q.      Was there a fund that you were focusing on?

A.      Funds that we were focusing on were funds that had come to us and we were in the process of seeking no-action relief.

(Appendix A:  Plaze Dep. 35:16-36:5.)

Another example of the way the SEC handled counter-designations involves the

following testimony which Defendants designated from pages 78 and 79 of the Plaze deposition:

Q.      Would it be fair to say that one of the things that concerned you on the 15th was that institutional investors would be redeeming their interests in money market funds in a fairly large number?

A.      Investors across the board.  I would not have at that time focused on institutional investors.  We would have been concerned that the events and the validity of those events could have led to widespread redemptions.

(Appendix A:  Plaze Dep. 78:20-79:5.)

Even though the testimony Defendants designated only dealt with redemptions, the SEC

proceeded to "counter-designate" an entire page of unrelated material about a support agreement:

Q.      Were you aware that Ms. DiMartino drafted a no-action letter which provided for a Credit Support Agreement for the Primary Fund in the amount of $10 million?

MS. SZCZEPANIK:  Objection to the form.

A.      No.

BY MS. JACOBS:

Q.      And based upon what you know – what you knew on September 15th and 16th about the Primary Fund, do you have a sense of whether a $10 million Credit Support Agreement would have been adequate?

A.      Two hundred and eighty-five million – I never formed an opinion during that period of whether it would be adequate and you would be asking me to do this now based on 20/20 hindsight with $785 million position in Lehman Brothers that got marked down to – I believe, it was 18 cents, 23 cents, there was some discussion.  My current view, that would probably be inadequate.

But I do not recall being asked to form an opinion of that nor – I do not recall being asked to form an opinion of it, but must say under the circumstances two years ago, I probably would have formed the same opinion I do now – that it would be inadequate.

- 4 -

> Can I – before I communicated such a view, I would have reached out to other colleagues and the staff in the division to have asked their views those few times I did that.

(Appendix A:  Plaze Dep. 79:6-80:11.)

Although Defendants designated no Plaze testimony from pages 83 through page 93, that did not stop the SEC from "counter-designating" nearly two pages of completely unrelated testimony from pages 86 through 88 (see Appendix A:  Plaze Dep. 86:21-88:12.)

The SEC did the same thing a few pages later.  Defendants did not designate any Plaze testimony about suspending redemptions on page 98, but the SEC "counter-designated" all of the following testimony:

> Q.      Would suspending redemptions have been an avenue?
>
> A.      That would have been outside of my decision-making capacity, and I have received a number of phone calls in the past saying – seeking that as a first alternative before we get to discussing the other things.
>
> That is a very, very serious alternative, one that has to be approved by the Commission itself and the staff is without authority to do that.
>
> One that has serious consequences to the market and to the fund, and particularly to find investors, and so that typically would not be an alternative – that would never be an alternative the staff raised.
>
> But I can tell you that there were some phone calls from typically – there were some phone calls in which that came up.

(Appendix A:  Plaze Dep. 98:14-99:7.)

The SEC also "counter-designated" the following testimony from pages 114 and 115 of Plaze's deposition which is unrelated to either the testimony Defendants designated on page 112 (which was about advice Plaze sought from the head of his Division) or the testimony they designated on page 116 (which was about other no action letters):

Q.      Were you aware that any funds issued some kind of statement saying that they had worked out or they were in the process of working out a Support Agreement?

A.      My memory is that fund affiliates filed 8K statements with the Commission disclosing that information, and in some cases, I was notified that was about to happen, and some cases, I discovered it or Ms. Blass discovered it.

It would not be normal for a fund group to contact me and discuss what they could or could not disclose to their investors.

Q.      Did it come to your attention that investors had been informed that funds were working out Credit Support Agreements?

MS. SZCZEPANIK:  Objection, form.

A.      I – the 8Ks came to my attention, that investors were told that the fund advisor had bought out the security so that it was no longer – no longer held, I recall being told.

(Appendix A:  Plaze Dep. 114:9-115:3.)

If the SEC wanted Mr. Plaze to explain to the jury his actions as to these various matters unrelated to Defendants' designations, then it should have named his as a trial witness in its case –in-chief, which would have subjected his live testimony to cross-examination.  But it is unjust and highly prejudicial for the SEC to clutter up Defendants' case with needless testimony from its own witnesses whom it has intentionally chosen to shield from the jury.

The SEC adopted the same approach to "counter-designations" for the other SEC deponents as well.  Thus, while Defendants themselves designated no testimony between pages 24 and 32 of the deposition of Dalia Blass ("Blass"), an attorney in the SEC's Division of Investment Management whom the SEC has identified as one of its trial witnesses, the SEC "counter-designated" the following testimony from page 28 of her deposition:

Q.      In the course of the work that you did on what you described as money market bailouts, had you dealt with any funds

- 6 -

which had support agreements which did not come from bank
affiliates?

> A.    I believe so.

(Appendix A:  Blass Dep. 28:10-14.)

Whether or not the gratuitous Blass testimony is meaningful, it is wholly unnecessary for

the sake of completeness.  Worse yet was the SEC's handling of its 30(b)(6) witness, Michael

Holland ("Holland").  Even though page 131 was the very last page of testimony that Defendants

designated from Holland's deposition, the SEC "counter-designated" large chunks of unrelated

testimony that appears on pages 137, 138, 139, 142, 143, 144, 145, 146, 149, 150, 152, 153, 160,

161, 162, 167, 168, 169, 171, 172, and 173.  (Appendix A:  Holland Dep.)  None of these

"counter-designations" can be justified on completeness grounds, and the testimony is not

admissible on any other theory.

For the Court's convenience, a set of Defendants' deposition designations along with the

SEC's "counter-designations" is annexed hereto as Appendix A.  Neither the Court nor

Defendants should have to shoulder the burden of sorting through the SEC's many "counter-

designations" to see if any qualify under the rule of completeness.  Rather, the SEC's "counter-

designations" should be stricken in their entirety, with leave for the SEC to resubmit proper ones

in accordance with the Federal Rules.

ARGUMENT

A PARTY MAY PROPERLY COUNTER-DESIGNATE
ONLY THE DEPOSITION TESTIMONY NEEDED TO
ENSURE THAT THE JURY IS NOT LEFT WITH A
<u>MISIMPRESSION ABOUT THE WITNESS'S TESTIMONY</u>

Rule 106 of the Federal Rules of Evidence and Rule 32(a) of the Federal Rules of Civil

Procedure govern the admissibility of deposition testimony.  7 <u>Moore's Federal Practice</u>

§ 32.02[3] at 32-16 (3d Ed.) ("The admissibility of a deposition is determined by reference to

both Rule 32(a) and the Federal Rules of Evidence"). Under Rule 106, "[w]hen a . . . recorded

statement or part thereof is introduced by a party, an adverse party may require the introduction

at that time of any other part or any other . . . recorded statement which ought in fairness be

considered contemporaneously with it." Similar language appears in Fed. R. Civ. P. 32(a)(6),

which states:

> If only part of a deposition is offered in evidence by a
> party, an adverse party may require the offeror to introduce any
> other part which ought in fairness be considered with the part
> introduced, and any other party may introduce any other parts.

Comparing Fed. R. Evid. 106 and Fed. R. Civ. P. 32(a)(6), one commentator pointed out:

> Rule 32(a)(6) thus substantially restates Rule 106 of the
> Federal Rules of Evidence, which governs introductions of other
> portions of related writings or statements. Both rules enable an
> adverse party to require a party who has introduced only a part of a
> recorded statement or deposition to introduce any other part that
> ought in fairness be considered.
>
> (Moore's Federal Practice, supra, § 32.61[2][b] at 32-70; emphasis
> added.)

Indeed, the only distinction the commentator discerned between Fed. R. Evid. 106 and

Fed. R. Civ. P. 32(a)(6) was in terms of when they required that the remainder of the recorded

statement be introduced. Moore's Federal Practice, supra, Ibid. Both Fed. R. Evid. 106 and Fed.

R. Civ. P. 32(a)(4) embody the common law rule of completeness. Ibid. The purpose of the rule

is "to preclude the selective use of deposition testimony that might convey a misleading

impression." Farr Man Coffee, Inc. v. Chester, 1993 U.S. Dist. LEXIS 8992, at *63 (S.D.N.Y.

June 28, 1993). Where the testimony counter-designated constitutes new material which is not

needed to keep the testimony that the other party designated from being misleading, it is

inadmissible. As the court explained in Farr Man Coffee, Inc. (1993 U.S. Dist. LEXIS 8992,

*64-65):

> In accordance with Rule 32(a)[6], <u>plaintiffs' designations of Mr. Walker's and Newlands' deposition testimony are admissible only where necessary to dispel a false impression</u> or give a more complete impression than is conveyed in defendants' designation.  <u>Those portions offered by plaintiffs that introduce new material – which do not serve to "give the whole picture" of a portion previously proffered by defendants – are inadmissible</u>.
>
> *    *    *
>
> Those portions of Mr. Newlands' and Mr. Walker's deposition testimony proffered by plaintiffs are <u>admissible only when necessary to complete a relevant but limited proffer by the defendants</u>.

(Emphasis added.)

<u>Accord</u> <u>Blue Cross & Blue Shield of N.J., Inc.</u> v. <u>Philip Morris, Inc.</u>, 199 F.R.D. 487, 489 (E.D.N.Y. 2001) ("trial judge may order an omitted portion of a statement placed in evidence when 'necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion"); <u>In re Bennett Funding Group, Inc.,</u> 1997 Bankr. LEXIS 2359, *14 (Bankr. N.D.N.Y. Dec. 18, 1997), <u>aff'd</u>, 255 B.R. 616 (N.D.N.Y. 2000) ("FRE 106 is intended to 'correct a misleading impression created by taking matters out of context'"); <u>see</u> <u>also</u> <u>Westinghouse Elec. Corp.</u> v. <u>Wray Equip. Corp.</u>, 286 F.2d. 491, 494 (1st Cir. 1961), <u>cert.</u> <u>denied</u>, 366 U.S. 929 (1961) (referring to what is now Rule 32(a)(6) as providing "a method for averting, so far as possible, any misimpressions from selective use of deposition testimony").

The SEC should not, in any case, be permitted to use the "counter-designation" process to introduce its own deposition testimony at trial.  <u>Moore's Federal Practice</u>, <u>supra</u>, § 32.29 at 32-51 ("a party's deposition testimony, when offered by that party, is hearsay").  <u>Trepel</u> v. <u>Roadway Express, Inc.</u>, 194 F.3d 708, 718-719 (6th Cir. 1999) (where district court failed to determine "which additional deposition statements should 'in fairness' be introduced along with the

- 9 -

statement Roadway introduced," it was error to allow Roadway "to admit the deposition

testimony, and in doing so, evade the bar of the inadmissible hearsay rule," under which a

party's own deposition is inadmissible); L-3 Commc'ns Corp. v. Osi Sys., Inc., 2006 U.S. Dist.

LEXIS 19686, *8 (S.D.N.Y. Apr. 11, 2006), rev'd in part and vacated in part on other grounds,

283 Fed. Appx. 830 (2d Cir. 2008) (Fed. R. Civ. P. 32(a)(3) provides that "an adverse party [may

use] for any purpose" the deposition of a party's 30(b)(6) witness; since "L-3 is not the adverse

party," it cannot offer 30(b)(6) deposition testimony); Frito-Lay of Puerto Rico, Inc. v. Canas, 92

F.R.D. 384, 392 (D.P.R. 1981) ("whereas the deposition of an adverse party may be used for any

purpose, it is clear that a party's own deposition is not admissible"; party failed to identify

"additional parts of his deposition which he claimed ought in fairness to be considered with the

parts introduced by Frito Lay, pursuant to Rule 32(a)[6]").  If the SEC wanted to present the

testimony of its own witnesses, it should have listed them as trial witnesses and called them to

testify live before the jury.  It did not do so, and cannot introduce their testimony on Defendants'

case by using the "counter-designation" label.

   In this case, the SEC's "counter-designations" include wholly new material.  It is

inappropriate to require the Court or Defendants to do what the SEC should have done – confine

its "counter-designations" to those limited matters that ought in fairness be considered with

Defendants' designations.  As the court pointed out in In re Bennett Funding Group, Inc., supra,

1997 Bankr. LEXIS 2359, *15-16, where "the Bank's counsel has not directed the Court to any

specific portions" of a deposition "it believes would correct what it perceives to be misleading

information presented by the Trustee using redacted portions of the deposition," the court was

under no obligation to do so itself, and the additional evidence was treated as inadmissible.

Based on the same reasoning, the SECS "counter-designations" do not comply with Fed. R.

Evid. 106 and Fed. R. Civ. P. 32(a)(4), and should be stricken.

CONCLUSION

For the reasons set forth above, it is respectfully submitted that this Court should grant

Defendants' motion in limine for an order striking the SEC's deposition "counter-designations"

on the ground that they make no attempt to comply with the rule of completeness, and

encompass new material which is not needed to ensure that the testimony Defendants designated

is not misleading.

Dated:  New York, NY
         July 23, 2012

Respectfully submitted,

DUANE MORRIS LLP

/s/ *John Dellaportas*
By:_____
     John Dellaportas
     Fran M. Jacobs
     Kathrine A. Gehring
1540 Broadway
New York, NY  10036
(212) 692-1000
Attorneys for Defendants
  Reserve Management Company, Inc. Resrv
  Partners, Inc., Bruce R. Bent, Sr. and Bruce
  R. Bent II

- 11 -

# APPENDIX A