UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

      v.                                                No. 09 Civ. 4346 (PGG)

RESERVE MANAGEMENT COMPANY, INC.,      ECF CASE
RESRV PARTNERS, INC., BRUCE BENT SR.
and BRUCE BENT II,

                Defendants,
  and

THE RESERVE PRIMARY FUND,

                Relief Defendant.
------------------------------------------------------------------------x

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS IN
LIMINE TO EXCLUDE THE TESTIMONY OF PURCHASER WITNESSES**

SECURITIES AND EXCHANGE
COMMISSION

Nancy A. Brown
Alexander J. Janghorbani
Michael D. Birnbaum
3 World Financial Center
New York, New York 10281
Tel: (212) 336-1023 (Brown)

Attorneys for Plaintiff

August 10, 2012

The Securities and Exchange Commission ("Commission" or "SEC") respectfully submits this memorandum of law in opposition to Defendants' motions in limine to exclude the testimony of purchaser witnesses ("Defs. Purchaser Br."), including rebuttal testimony (if necessary) of Peter Heydlauff ("Defs. Heydlauff Br.").[1]

## PRELIMINARY STATEMENT

Each of the witnesses on the Commission's purchaser witness list is qualified to testify to the fact that he, or persons acting under his supervision, made a purchase of Primary Fund shares on September 15 and/or 16, 2008. Each is also qualified to testify to what information would have been important to him or her in making an investment decision on those two days.

In some cases, that purchase was made because of information known to the purchaser; in Brian Moore's case, for example, he purchased Fund shares for Fidelity National Financial in the afternoon of September 16, 2008, after a phone call with a Reserve employee who assured him that the problems they were having with funding redemptions would be resolved. (Birnbaum Decl., Ex. S (Moore Dep. Tr. at 21, 94-97).) In others, the investors made the decision to purchase because they lacked information – material information that RMCI, Resrv Partners or any Defendant failed to disclose – that would have impacted these investors' investment decisions.

The purpose for calling these investors to testify is to establish that purchases were made after 1 p.m. on September 15 through September 16, 2008, after RMCI, Resrv Partners and Bent II's statements were disseminated, and before the truth was disclosed to the market. (The SEC continues to believe that no such evidence is necessary. Defendants' records and the concessions

---

[1] References to "DX" are to Defendants' proposed trial exhibits and are attached as Exhibit B to the August 10, 2012 Declaration of Michael Birnbaum in support of this brief ("Birnbaum Decl."). All references to "Ex" herein are to exhibits to the Birnbaum Declaration.

they made on Summary Judgment that there were purchases during this period are enough as a matter of law to satisfy the "in connection with" requirement of the Exchange Act. See SEC v. Goble, 682 F.3d 934, 947 (11th Cir. 2012) (10(b) fraud can be established "without identifying the purchase of any particular security," but holding that no purchase had occurred in that case). Because each of these witnesses has institutional, if not personal, knowledge of their respective purchases, each is qualified to testify under Fed. R. Evid. 602. In addition, each of these witnesses is also qualified to testify about materiality because each has personal knowledge of what was or would have been important to his or her (or their firm's) investment decision.

Finally, Peter Heydlauff of Principal Global Investors should be permitted to testify on rebuttal if needed to demonstrate the statements made to him by Reserve employees on September 15 and 16 (and before, when he was first considering the investment). Although, as demonstrated below, his testimony is not a necessary pre-requisite to the testimony of Tracy Reeg, the Principal employee who placed the order to buy Primary Fund shares, Defendants have no basis to preclude his testimony if the Court determines that Ms. Reeg may not testify to what she learned from him.

## ARGUMENT

### I. Each of the Witnesses Has Personal Knowledge of His or Her Entity's Investment Decision

Defendants agree that each of the entities with which these four witnesses are associated – Boyd (SuperValu, Inc.); Moore (Fidelity National Financial, Inc.); Reeg (Principal Global Investors) and Gamble (Henry Ford Health System) – purchased shares of the Primary Fund after 1 p.m. on September 15. (They would have to, since that is what their own records show. (DX 184).)) And Defendants do not seem to dispute that each of these witnesses is qualified to testify about that event, even if he was not the person who actually placed the order for the shares.

2

After all, Defendants noticed each of their depositions as "[Name of Entity] by [Deponent]," signaling that they expected each of the deponents to appear in his representative capacity, able and prepared to testify about the entity's activities. (Ex. T (Defendants' Subpoenas for Purchaser Depositions).)

And, of course, as Defendants must admit, two of them, Tracy Reeg and Brian Moore, actually did purchase Primary Fund shares on behalf of their entities.[2] The other two, John Boyd and Brian Gamble, as supervisors of the departments tasked with making cash management decisions, clearly knew the details of those decisions, and bore the ultimate responsibility for them in their respective organizations.[3] Familiarity with the investments that these entities made is all that is necessary to testify that an investment was made. But, in any event, corporate officers are considered to have personal knowledge of acts of their corporations. AGI Realty Serv. Group, Inc. v. Red Robin Intern. Inc., 81 F.3d 160, 1996 WL 143465, at *4 (6th Cir. Mar. 28, 1996); Catawba Indian Tribe of South Carolina v. South Carolina, 978 F.2d 1334, 1342 (4th Cir. 1992). At the very least, both witnesses can testify and introduce corporate records of the purchase transactions, if that were necessary. Searles v. First Fortis Life Ins. Co., 98 F Supp. 2d 456, 461-62 (S.D.N.Y. 2000) (noting that corporate officer would be qualified under Rule 602 to introduce corporate records at trial).

---

[2]  Defs. Purchaser Br. at 8 ("Reeg made only one of those purchases."); 6 ("Of the fourteen purchases of Fund shares that Fidelity made on September 15 and 16, 2008, the documentary evidence shows that Moore placed only two . . . .").

[3]  Ex. U (Boyd Declaration, executed April 22, 2011 ¶ 2 ("As Treasurer, one of my responsibilities is oversight of the cash management function for Supervalu[].")); Ex. V (Gamble Declaration, executed May 12, 2011 ¶ 2 ("In my role as Corporate Director – Treasury, I had responsibilities with respect to the cash management function of Henry Ford Health System . . . .").

## II. Each Witness Is Qualified to Testify to What Is Material to an Investment Decision

Each of these witnesses is similarly qualified under Fed. R. Evid. 602 to testify to the information that was important to him or his entity in making investment decisions. Each either made investment decisions on that day or supervised those who did. Each was familiar with his entity's investment policies, and each is qualified to answer questions about how his decision-making process would have been affected by knowledge of information that he did not know on those two days.

Courts routinely permit investors to establish materiality by testifying to the information that was or would have been important to them in making investment decisions, even if they did not know those facts at the time they decided to invest. In fact, even in criminal cases, investors are routinely permitted to answer hypothetical questions about the importance of undisclosed information to their investment decision, clearly facts that they did not know.[4] And in none of those cases was the investor's qualification to testify to facts not known to him challenged, because in each case, what made his testimony relevant was what information he thought significant to an investment decision. Each of those investors was qualified to speak to that issue, just as each of these investors should be.

---

[4] See, e.g., United States v. Platten, 448 F. App'x 873, 876 (11th Cir. 2011) (affirming trial court's decision to allow investor to testify to the impact on his investment decision of information that he did not know); United States v. Laurienti, 611 F.3d 530, 549-50 (9th Cir. 2010) (rejecting defendant's challenge to prosecution's examination of investors with questions about how disclosure of undisclosed facts would have affected investment decision); United States v. Dukes, 242 F. App'x 37, 45-46 (4th Cir. 2007) (affirming use of hypothetical questioning with investor about effect of undisclosed information); United States v. Hatfield, No. 06-CR-0550 (JS), 2010 WL 2541057, *2 (E.D.N.Y. June 10, 2010) (permitting use of hypothetical questioning of investors); cf. United States v. Jennings, 487 F.3d 564, 581-82 (8th Cir. 2007) (in government corruption prosecution, state employee permitted to testify that he would not have approved state contract had defendant disclosed his financial interest).

Thus, irrespective of what these investors knew about the Primary Fund on September 15, 2008 or September 16, 2008, each is qualified to testify about the importance of facts that they were not told.

A.  The Information in the Minds of the Purchaser Witnesses Is Not Hearsay, Regardless of How They Obtained It

Defendants complain that the information that most of the purchaser witnesses had was hearsay – delivered to them by others in their organization. But investors are qualified to testify about their investment decisions even if they heard the issuer's statements through others. None of it is hearsay because none of it is being offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Indeed, the Commission claims that those statements were false.[5]

In addition, testimony that these witnesses made their investment decisions based on information conveyed to them by others is admissible state of mind evidence, regardless of the source, and irrespective of whether the information conveyed was true or not. This evidence shows what the listener heard, believed, and found important about a statement (not the source of the information or whether it was true). United States v. Detrich, 865 F.2d 17, 20-21 (2d Cir. 1988) (reversing exclusion of statement to DEA agents about witness' plans to get married to prove only what defendant knew of witness' plans). In Detrich, the Court explained that statements offered as evidence of another's state of mind do not fall within the definition of

---

[5] See United States v. Feldman, 825 F.2d 124, 126-27 (7th Cir. 1987) (testimony of investors as to what they were told by defendants sales force were not hearsay in securities fraud prosecution where government claimed statements were false); United States v. Hathaway, 798 F.2d 902, 905 (6th Cir. 1986) (same); United States v. Wellington, 754 F.2d 1457, 1464 (9th Cir. 1985) (same).

5

801(c) where they are not offered to prove the truth of the matter asserted because the "[declarant's] credibility is not at issue." Id. at 21.[6]

So it is here. For example, whatever Tracy Reeg of Principal learned from her analyst, Peter Heydlauff, about the Reserve's statements on these days will not be offered for the truth of what he was told. First, as we have argued, the Commission contends that those statements were in fact false. But also, just like those statements erroneously excluded in Detrich, they all go to explain Reeg's state of mind in deciding to purchase Primary Fund shares on September 16, 2008. Therefore, they are admissible as non-hearsay.

### B. Peter Heydlauff Should Be Permitted to Testify as a Rebuttal Witness if Necessary

Peter Heydlauff was a Principal analyst who wrote a report about the Reserve Primary Fund, recommended that Principal add the Primary Fund to its list of approved investments, and received both oral assurances from Reserve sales people about the safety of the investment on September 15 and passed on the *Insights* he received to others at Principal on September 16, 2008. (Ex. W, Reeg Declaration executed Apr. 27, 2011, ¶¶ 4-8.) As we have argued above, his testimony is not necessary to make Tracy Reeg's testimony admissible. But, if the Court should disagree, he should be allowed to testify. Defendants have known about him, his role in Principal's selection of the Primary Fund, and his interactions with the Reserve since summary

---

[6] See also United States v. Dupre, 462 F.3d 131, 136-37 (2d Cir. 2006) (rejecting defendants' argument that investors' emails complaining about fraud were hearsay since they were offered to show state of mind of defendants and rebut their argument that they had no idea that their operations were fraudulent); Smith v. Duncan, 411 F.3d 340, 346 n.4 (2d Cir. 2005) (explaining the difference between out of court statements offered to demonstrate the witness' state of mind (which are non-hearsay), and out of court statements offered for the truth and which show the declarant's state of mind under Fed. R. Evid. 803(3)); cf. SEC v. MacDonald, 699 F.2d 47, 51 (1st Cir. 1983) (reversing trial court's decision to exclude statement made to defendant where statement was offered to show what defendant knew, holding "[a]n ingredient of belief is what one is told, whether or not it is true in fact.")

judgment, the same time they learned about Tracy Reeg. The Court gave Defendants leave to depose investors. That they chose not to depose him as well as Reeg is no reason to bar him from testifying should he be needed. Defendants claim that they could have only deposed the four investor employees whose declarations we submitted at Summary Judgment. But this is not the case; the Court granted Defendants leave to depose investors; they were aware of Heydlauff at the time, and chose not to seek his deposition.

Defendants' arguments under Rule 37(c) would have much greater weight had they not added two witnesses to their most recent witness lists that had never before been identified. (Ex. X (Defendant's witness list, attached to Plaintiff's July 9, 2012 Letter to the Court).) On that list, Defendants declared their intention to call two Reserve employees, Daniel Boruch and Catherine Birch, whom they had never before identified in their disclosures. And Defendants apparently intend to call both witnesses in their case in chief, not as rebuttal witnesses to be called only if necessary. Therefore, if they are to be taken at their word, any argument that the parties are limited to calling only those witnesses who appeared in their initial disclosures should be applied with equal force to them and should bar their attempts to call either Boruch or Birch during trial.

## **CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court deny Defendants' motions in limine to exclude the testimony of purchaser witnesses, including any rebuttal testimony from Peter Heydlauff.

Dated: New York, New York
       August 10, 2012

SECURITIES AND EXCHANGE COMMISSION

By: _____
    Nancy A. Brown
    Alexander J. Janghorbani
    Michael D. Birnbaum
    Securities and Exchange Commission
    3 World Financial Center, Room 400
    New York, New York 10281-1022
    Tel. (212) 336-1023 (Brown)