| | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 9/10/12 |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE<br>SOUTHERN DISTRICT OF NEW YORK | |
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | ECF CASE<br><br><br><br>ORDER<br><br><br>09 Civ. 4346 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

This action arises from the collapse of the Reserve Primary Fund, a money market fund that held debt securities issued by Lehman Brothers with a face value of $785 million as of September 14, 2008 – the date that Lehman Brothers announced that it would file a bankruptcy petition. In the wake of Lehman's collapse, Defendant Reserve Management Company, Inc. ("RMCI") and other entities and individuals associated with the Primary Fund were named as defendants in numerous lawsuits. This Order concerns the distribution of proceeds from an Investment Management Insurance Policy (the "Policy") that RMCI had obtained from the National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("the Insurer").

RMCI, Reserve Partners, Inc., the Primary Fund, and a number of other Reserve Funds are "Named Insureds" under the Policy, which provides for $10 million in coverage.

(Holland Decl., Ex. D, Endorsement 2) The Policy period is April 14, 2008 through April 14, 2009. See id. Declarations (cover page) item 2. "[A]ny past, present or future partner, officer, director, trustee, managing member or employee" of any Named Insured is an "Insured" under the Policy. (Id., Endorsement 8) The Policy provides coverage for "Wrongful Acts" committed in connection with "rendering or failing to render Investment Advisory Services for others for compensation in the course of the Entity Insured's business as an Investment Adviser." (Id., § 1) A "Wrongful Act" is defined as "any breach of duty, neglect, error, misstatement, misleading statement, omission or other act wrongfully done or attempted by the Insured." (Id. at § 2(i)) The Policy obligates the Insurer to "pay the Insured's Defense Costs as they are incurred." (Id. at § 1)

> The Policy further provides that it
>
> does not apply:
>
> (1) to any claim arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act, or any knowing or willful violation of any statute as determined in a final adjudication by a court of competent jurisdiction. . . .

(Id., Endorsement 7)

> The Policy also contains the following "Order of Payments" provision:
>
> In the event of payment of any sums which the Name Insured shall become legally obligated to pay as damages resulting from any claim for which payment is due under the provisions of this policy ("Loss"), then the insurer shall in all events:
>
> (a)   first, pay Loss for which the insured is not permitted by common or statutory law to indemnify any Individual Insured, or is permitted or required to indemnify such Individual Insured but does not do so by reason of Financial Impairment; and then
>
> (b)   only after payment of Loss has been made pursuant to Clause (a) above, with respect to whatever remaining amount of the Limited of Liability is available after such payment, at the written request of the chief executive officer of the Named Insured,

2

> either pay or withhold payment of such other Loss for which the Named Insured is permitted or required to indemnify any Individual Insured; and then
>
> (c)     only after payment of Loss has been made pursuant to Clause (a) and (b) above, with respect to whatever remaining amount of the Limited of Liability is available after such payment, at the written request of the chief executive officer of the Named Insured, remit such payment to the Named Insured or directly to or on behalf of an Individual Insured.

(Id. Endorsement 6)

After the first lawsuits against RMCI and related entities and individuals were filed, RMCI, through its insurance broker Frank Crystal & Company, provided notice of these claims to American International Group ("AIG"), the authorized claims department for the Insurer. (Birch Decl. ¶¶ 11-13, Ex. B) AIG reviewed several invoices for defense costs submitted by RMCI and agreed to pay out the full Policy proceeds of $10 million. (Birch Decl. ¶¶ 18-19) In a November 25, 2009 Order, the Court directed that the "proceeds of [the Policy] shall be held in a joint account of RMCI, the Fund, and the Independent Trustees, and shall be distributed pursuant to the terms and conditions of the Policy and applicable law." (Dkt. No. 202; Nov. 25, 2009 Order at 5-6) There is no dispute here that Defendants have incurred more than $10 million in "Defense Costs" within the meaning of the Policy.

## PROCEDURAL HISTORY

The Court's November 25, 2009 Order directed the parties to make efforts to "reach agreement within 14 days after this Order is entered as to the allocation of the Insurance Proceeds." (Nov. 25, 2009 Order at 5-6) When the parties could not reach an agreement, the Court ordered the parties to brief the issue. (Dkt. No. 212) The Court received submissions

3

from the Defendants and the Primary Fund's Independent Trustees.[1] (Dkt. Nos. 218, 219, 245, 246)

In September 2010, the Court was informed that the Independent Trustees had been dropped from all suits in which they had previously been named as defendants. The Court then issued an Order dated September 10, 2010 directing that any party, person or entity wishing to make a submission concerning the proper disposition of the insurance proceeds should do so by September 20, 2010. (Dkt. No. 333, 09 Civ. 4346; Sept. 10, 2010 Tr. at 33-34) In response, the Court received letters from Defendants and from the Independent Trustees, who stated that they no longer had any claims under the Policy. No Insured other than the Defendants have made a claim against the Policy.

Following a January 11, 2011 conference with the parties, the Court invited Defendants to submit a proposed order regarding the proper disposition of the insurance proceeds. (Dkt. No. 358; Jan. 11, 2011 Order at 2) In January 26, 2011 letters, the Independent Trustees and the SEC responded with their objections to the Defendants' proposed Order. The Defendants submitted a response dated February 4, 2011.

The Court has considered all of these submissions, and concludes, for the reasons stated below, that the proceeds from the Policy should be released to the Defendants forthwith.

## DISCUSSION

### I. ARGUMENTS CONCERNING DISTRIBUTION OF INSURANCE PROCEEDS

RMCI contends that it is entitled to immediately receive all of the proceeds of the Policy because (1) it is a Named Insured and the only party that has made a claim under the Policy; (2) it has incurred well in excess of $10 million in Defense Costs; and (3) the Order of

---

[1] The Commission endorsed the Independent Trustees's arguments concerning the allocation of the insurance proceeds. (Dkt. No. 257 at 14)

4

Payments provision does not apply to the payment of Defense Costs, which must be paid "as they are incurred." (Def. Br. 1-2)

At the time of the original briefing in December 2009, the Independent Trustees had made a claim under the Policy. The Independent Trustees withdrew their claim in September 2010, however. (Sept. 20, 2010 Holland Ltr.) The Trustees argue, however, that the Primary Fund and Yield Plus Fund may have claims against the Policy. (Id.; Jan. 26, 2011 Holland Ltr. at 1-2) Relying on the "Order of Payments" provision, the Trustees also contend that the insurance proceeds must first go to any individuals who are not indemnified or who should be indemnified but have not been because the indemnifying organization (the Fund or RMCI) lacks the funds to pay. In order to determine which of the Defendants are entitled to proceeds, and in what amounts under this provision, the Independent Trustees argue that the Court should first resolve which individuals and entities are entitled to indemnification, and by whom. Finally, the Trustees argue that Defendants may have engaged in criminal or fraudulent conduct, for which the Policy does not provide coverage. (Trustees Br. 12; see Holland Decl., Ex. D, Endorsement 7)

The dispute between Defendants and the Independent Trustees presents a question of contract interpretation. See, e.g., Kimmins Indus. Serv. Corp. v. Reliance Ins. Co., 19 F.3d 78, 81 (2d Cir. 1994) (applying contract principles to interpret an insurance policy). It is well settled that under New York law an insurance policy is a contract which, like any other contract, must be construed to effectuate the parties' intent as expressed by their words and purposes. See Jakobson Shipyard, Inc. v. Aetna Cas. and Sur. Co., 961 F.2d 387, 389 (2d Cir.1992). An insurance policy will be read as a whole in order to determine whether an ambiguity exists, and a policy should be read so that no provision is rendered meaningless. County of Columbia v. Continental Ins. Co., 612 N.Y.S.2d 345, 349 (1994).

A.      **The Policy Provides For Payment Of Defense Costs "As They Are Incurred"**

The Policy clearly states, at multiple points, that Defense Costs are to be paid "as they are incurred." (Holland Decl., Ex. D, cover page, §1 Defense Costs) Under New York law[2], an insurer's duty to defend or to pay for the defense of its insured is "independent of the ultimate success of the suit against the insured." In re Worldcom, Inc. Sec. Litig., 354 F.Supp.2d 455, 464 (S.D.N.Y. 2005). New York courts have consistently found that once an action against an insured is found to be within the coverage of a policy, the insurer must pay the insured's defense costs as they are incurred, even where a policy is silent on the timing of payment. Id. (finding that insurance costs were to be paid "as they were incurred" despite policy's silence on the timing of payment where insurer contended that policy had been rescinded); Nu-Way Envt'l, Inc. v. Planet Ins. Co., No. 95 Civ. 573(HB), 1997 WL 462010, at *2 (S.D.N.Y. Aug. 12, 1997) (holding that payments had to be made on a contemporaneous basis where contract was silent on timing of payment); PepsiCo, Inc. v. Continental Cas. Co., 640 F.Supp. 656, 660 (S.D.N.Y. 1986) (finding that insurer had responsibility to reimburse contemporaneously because that was when fees were "incurred"); McGinniss v. Employers Reinsurance Corp., 648 F.Supp. 1263, 1271 (S.D.N.Y. 1986) (following PepsiCo in finding that once an action against an insured has been found to be within the coverage of the policy, the insurer must pay the insured's defense costs as they are incurred). "The duty to pay defense costs 'exists whenever a complaint against the insured alleges claims that may be covered under the insurer's policy.'" In re: Worldcom, 354 F.Supp. 2d at 464, (quoting Federal Ins. Co. v. Tyco Int'l Ltd., 2004 WL 583829, at *6

---

[2] Both the Insurer and the Insureds are based in New York, and the insurance contract was entered into in New York. Each page of the policy states that the "forms and rates must meet the minimum standards of the New York insurance law and regulations." (Holland Decl. Ex. D) Therefore, New York law applies to the interpretation of the Policy. See, e.g., Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145 (2d Cir. 2003); Zurich Ins. Co. v Shearson Lehman Hutton, 84 N.Y.2d 309, 317-318 (1994) (citing Restatement [Second] of Conflict of Laws § 188).

6

(N.Y. Sup. 2004). Courts have observed that "to hold otherwise would not provide insured with protection from financial harm that insurance policies are presumed to give." Nu-Way, 1997 WL 462010, at *3; McGinniss, 648 F.Supp. at 1271. Where, as here, the plain language of the Policy provides for the reimbursement of Defense Costs "as they are incurred," contemporaneous payments must be made. See McGinniss, 648 F.Supp. at 1271.

The argument that Defendants may have engaged in fraudulent, criminal, or other improper conduct subject to exclusion under the Policy does not justify reading out of the Policy their right to payment of Defense Costs "as they are incurred." Under Endorsement 7, exclusions to the Policy apply only upon "a final adjudication" by a court of competent jurisdiction.[3] (Holland Decl., Ex. D, Endorsement 7) Neither the Trustees nor the Commission has cited any case law suggesting that the mere allegation of conduct covered by an exclusion is sufficient to deny an insured its right to contemporaneous payment of defense costs as they are incurred.[4]

### B. Resolution Of The Insurance Issue Need Not Await A Determination Of Defendants' Rights To Indemnification Under Other Agreements

The Reserve Fund's Declaration of Trust provides for indemnification of "any present or former Trustee or Officer" for expenses, including attorneys' fees, incurred in "any

---

[3] Endorsement 7 replaced earlier language in the Exclusions section of the Policy suggesting that an Insured facing allegations of "fraud, dishonesty, criminal or malicious acts or omissions" was required to disprove these allegations by a "final adjudication," after which the Insurer would then "reimburse the Insured for all reasonable Defense Costs which would have been collectible under this policy." (Holland Decl., Ex. D at § 4 Exclusions and Endorsement) The language referencing reimbursement after a favorable "final adjudication" was deleted in Endorsement 7, tending to confirm that the parties' intent was that Defense Costs would be reimbursed as incurred, subject to a later final adjudication that an exclusion applied.

[4] The parties have not addressed, and this Court expresses no view as to, whether Defendants could be required to disgorge insurance proceeds used to defray their defense costs in the event of an adjudication that they had engaged in fraud, were thus not entitled to the insurance proceeds, and other Insureds had a claim against the insurance proceeds.

7

threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative, to which [the Trustee or officer] is or was a party . . . by reason of the fact or facts under which he is an indemnitee" unless the Trustee or officer has engaged in "disabling conduct." (Holland Decl., Ex. A at Seventh ¶ 11(c)(1)(i)-(ii),(iv)). The Bents have made claims for indemnification and advancement of their defense costs under the Declaration of Trust and other agreements, and all parties agree that these claims could potentially overlap with their claims under the Policy. The Bents' indemnification claims are sub judice. See Dkt. Nos. 242-244.

The Court need not decide the indemnification claims before addressing Defendants' claim to the insurance proceeds. All parties have agreed that any amount that Defendants receive from the insurance proceeds will be an offset against any later indemnification payment authorized by the Court. (Def. Rep. Br. at 2 n. 3; Jan. 11, 2011 Tr. at 51-52) (SEC Br. 14)

### C. The Order Of Payments Provision Is Not Applicable

The Court concludes that the "Order of Payments" provision has no application at present and presents no argument against permitting Defendants to obtain reimbursement of their defense costs under the Policy. The Order of Payments provision addresses the allocation of insurance proceeds once a judgment has been entered against a Named Insured for Wrongful Acts covered under the Policy. After a Named Insured "has become legally obligated to to pay . . . damages" for Wrongful Acts covered under the Policy, the Order of Payments provisions explains how insurance proceeds are to be allocated. There has been no judgment that any Named Insured has a legal obligation to pay damages, however. Accordingly, this provision is not applicable.

### CONCLUSION

8

Because Defendants have demonstrated that they have incurred Defense Costs of more than $10 million within the meaning of the Policy, they are entitled to distribution of the insurance proceeds currently being held in a joint account pursuant to this Court's November 25, 2009 Order. Distribution of these monies to the Defendants should be made forthwith.

Dated: New York, New York
September 10, 2012

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge