USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/10/12

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | ECF CASE<br><br>**ORDER**<br><br>09 Civ. 4346 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

This Order addresses Defendants' motions in limine regarding proposed expert testimony from Professor Richard Painter and Professor Lisa Fairfax.

At summary judgment, the Court granted in part the Commission's motion to preclude reports from these experts, finding that they had offered opinions on ultimate issues in this case, including whether the evidence is consistent with an intent to defraud or mislead, and whether certain assumptions allegedly made by Defendants were reasonable. (March 28, 2012 Tr. at 9-10) In rendering such opinions, the Court found that these witnesses were seeking to usurp the function of the Court at summary judgment, and that of the jury at trial. (Id.; see United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) ("although an expert may opine

on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts").

The Court noted at that time, however, that "in determining whether the defendants intentionally or recklessly made false and misleading statements, it may be appropriate for the jury to hear testimony that puts the events of September 2008 in historical context." (Id. at 8) The Court further noted that Professor Painter would likely "be an appropriate person to deliver such testimony." (Id.) As to Professor Fairfax – who in addition to opining on whether Defendants had acted with an intent to defraud or mislead had offered her opinion on whether Defendants' actions on September 15 and 16, 2008 were consistent with good corporate governance – the Court stated that it was "doubtful" that her opinions would be admitted, because "this case is not fundamentally about whether the defendants' practices are consistent with principles of good corporate governance." (Id. at 9). As to both experts, however, the Court reserved decision on the issue of what testimony from them, if any, would be admitted at trial. (Id. at 9-10)

Defendants have moved in limine for the Court to permit both experts to testify at trial. For the reasons stated below, Defendants' motions will be denied.

## DISCUSSION

I. **LEGAL STANDARD**

Whether expert testimony should be admitted is a matter committed to the trial judge's "broad discretion." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). Under Federal Rule of Evidence 702, where

> scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based

upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

"Faced with a proffer of expert scientific [or technical] testimony, then, the [court] must determine ... whether the expert is proposing to testify to (1) scientific [or technical] knowledge and (2) will assist the trier of fact to understand or determine a fact in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). A party seeking to rely on expert testimony bears the burden of establishing, by a preponderance of the evidence, that all requirements have been met. See id., 509 U.S. at 593 n. 10; United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).

"[P]articularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts." Bilzerian, 926 F.2d at 1294. However, the use of expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." Id. "In securities cases, federal courts have admitted expert testimony to assist the trier of fact in understanding trading patterns, securities industry regulations and complicated terms and concepts inherent in the practice of the securities industry." SEC v. U.S. Environmental, No. 94 Civ.6608 (PKL), 2002 WL 31323832, at *2 (S.D.N.Y. 2002) (citing Bilzerian, 926 F.2d at 1294).

The Second Circuit has noted "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." Nimely v. City of New York, 414

F.3d 381, 397 (2d Cir. 2005) (citing Daubert, 509 U.S. at 595). Rule 403 provides that evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading a jury." Fed.R.Evid. 403. "[E]ven if the testimony is admissible under Rule 702, it still must pass muster under Rule 403: its probative value must not be substantially outweighed by unfair prejudice." United States v. Dukagjini, 326 F.3d 45, 54 (2d Cir. 2003).

## II.  PROFESSOR PAINTER

At summary judgment, the Court suggested that expert testimony "that addresses the historically unprecedented nature of the events that the Defendants confronted in mid-September 2008" might be relevant to the jury's determination of whether the Defendants had acted with scienter. (March 28, 2012 Tr. at 8) The Court further suggested that Professor Painter had the background necessary to offer testimony as to how the financial sector ground to a halt on September 15 and 16, 2008, after Lehman filed its bankruptcy petition, and the nearly unprecedented nature of the crisis precipitated by that event.

At a July 13, 2012 conference, the Court again suggested that it might be appropriate to allow Painter to give limited testimony "which would be contextual in nature." (July 13, 2012 Tr. at 5) The Court stated:

> What I mean by this – and this is set forth in my summary judgment opinion – is that I do think the events here – by "the events," I mean the Lehman bankruptcy and the financial fallout from it, which included the collapse of the Reserve Fund – if not unprecedented, is clearly highly unusual and that it might be appropriate in that context to allow defendants to offer testimony which speaks to that issue because it might be pertinent to the jury. . . .

(July 13, 2012 Tr. at 5)

4

In response, defense counsel stated that he would "highlight those portions [of the expert reports] which [we] think are consistent with" the Court's ruling and "strike out those portions [we] think are inconsistent." (July 13, 2012 Tr. at 8)

Defense counsel has not abided by the Court's ruling. In arguing that subsections III(A)-(E) of Professor Painter's report should be admitted (see Def. Painter MIL Br. at 1), defense counsel goes far beyond the limited contextual testimony described by the Court. For example, in Section C of his report, Professor Painter discusses alleged defects and weaknesses in the regulatory scheme that the Bents allegedly were not aware of at the time. (Painter Report (Dkt. No. 385) at 11) Painter argues that Defendants were

> misled by the government, which purported to "supervise" Lehman Brothers but failed to do so, required money market funds to defer to the flawed views of rating agencies about Lehman Brothers and other issuers, and contributed to uncertainty about the value of Lehman Brothers debt securities by arbitrarily bailing out some investment banks but not others.

(Id.) The upcoming trial, however, is not about whether the Government should have more closely supervised Lehman, or about whether it should have rescued Lehman. Instead, it is about whether, inter alia, the Bents acted with necessary scienter on September 15 and 16, 2008. Painter's proposed testimony is not sufficiently focused on that issue.

Similarly, in Section D of his report – which addresses the Government's response to Lehman's bankruptcy – Professor Painter argues that "the government did not publicly disclose its plan to rescue the financial industry, leaving investors ill-informed about what to expect next." (Painter Report at 19) Painter also contends that Government use of bailouts was "arbitrary and unpredictable." (Id.) The Government's handling of the Lehman bankruptcy and its fallout will not be on trial, however, and Professor Painter's focus on such issues presents a grave risk of jury confusion if he is permitted to testify.

5

While Section B of Painter's report comes closer to describing the historically unprecedented nature of the events of mid-September 2008, it consists largely of quotes from newspaper articles published at that time. (Painter Report at 7-11) Inasmuch as Painter plans to summarize these articles, his proposed testimony would bring no specialized knowledge that might assist the jury. See Fed. R. Evid. 702. To the extent that he plans to read these articles to the jury, he would be no more than a mouthpiece for hearsay.[1] United States v. Mejia, 545 F.3d 179, 197 (2d Cir. 2008) (expert may not "simply transmit . . . hearsay to the jury"); Marvel Worldwide, Inc. v. Kirby, 777 F.Supp.2d 720, 729 (S.D.N.Y. 2011) ("Although Rule 703 of the Federal Rules of Evidence permits an expert to rely on hearsay in reaching his own opinion, 'a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.'") (quoting Louis Vuitton Malletier v. Dooney & Bourke, Inc., 525 F.Supp.2d 558, 666 (S.D.N.Y. 2007). Moreover, the newspaper articles quoted in Painter's report are not useful in providing historical context.

In sum, Defendants have not made a good faith effort to comply with the Court's instructions concerning the proper parameters for Painter's testimony. As a result, Painter's

---

[1] In arguing that Painter's reliance on newspaper articles is proper (Def. Painter MIL at 6), Defendants cite cases that are inapposite. In United States v. Damrah, 412 F.3d 618, 625 n.4 (6th Cir. 2005), for example, the Government's terrorism expert testified at a Daubert hearing that he had relied in part on certain books, press releases, newspaper articles, and U.S. government publications. The newspaper articles were not "revealed" or read to the jury. Id. In United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994), an FBI agent was allowed to give expert testimony "regarding the organization, structure, and terminology of organized crime families." Id. The Second Circuit found that these topics were proper subjects for expert testimony "[d]espite the prevalence of organized crime stories in the news and popular media." Id. Nowhere in that case does the court discuss whether the expert could have relied on newspaper articles. Finally, in Arista Records LLC v. Lime Group LLC, No. 06 CV 5936(KMW), 2011 WL 1674796, at *16 (S.D.N.Y. May 2, 2011), a copyright infringement case, Judge Wood allowed expert testimony on damages where the expert's testimony was based on his review of "academic literature, market research data, Plaintiffs' own financial statements and disclosures, industry reports, and government studies." Id. The expert was not permitted to read newspaper articles to the jury or to summarize their substance.

proffered testimony contains legal conclusions, prejudicial hearsay, and irrelevant matter about which no expert testimony is required or helpful. Because of Professor Painter's focus on the Government's alleged regulatory missteps in supervising Lehman and mishandling of the fallout from its bankruptcy, his proposed testimony presents a grave risk of jury confusion. The Court concludes that his proposed testimony would be more prejudicial than probative, and it will be excluded under Fed. R. Evid. 403.

### III.  PROFESSOR FAIRFAX

Defendants have offered Professor Fairfax as an expert on good corporate governance. (Dkt. No. 475; Def. Fairfax Br. at 2) At summary judgment, however, the Court expressed doubt as to whether expert testimony on good corporate governance was relevant to this case, given that the issues before the jury turn on whether Defendants complied with the federal securities laws. The Court noted that "to the extent that Professor Fairfax is permitted to testify about whether defendants' actions were consistent with good corporate governance, it presents some risk that the jury may become confused about what are the key issues in this case." (March 28, 2012 Tr. at 9)

The Commission has since represented that it does not intend "to argue at trial that Defendants' actions were inconsistent with principles of good corporate governance and that 'this inconsistency supports . . . an intent to defraud.'" (SEC Fairfax MIL Opp. at 7 (quoting March 28, 2012 Tr. at 9)) Accordingly, Professor Fairfax's proposed testimony not only presents a significant risk of jury confusion, but also is not necessary to rebut any arguments that the Commission will make at trial. Her proposed testimony concerning corporate governance will be excluded as more prejudicial than probative under Fed. R. Evid. 403.

Defendants now argue, however, that Professor Fairfax should be allowed to testify as to the fiduciary duties of officers and directors, because this issue is relevant to the Commission's Investment Advisers Act claims. Fairfax's report does not address investment advisers' fiduciary duties, however. Instead, Fairfax's report addresses solely whether the Bents' actions on September 15-16, 2008 "comport with good corporate governance practices, as informed by case law and relevant statutes." (Fairfax Rep. (Dkt. No. 386) at 2-3). Defendants cannot at this late date, on the eve of trial, seek to expand the scope of Fairfax's expert testimony. See Fed. R. Civ. P. 26(a)(2)(A) and (B).

Professor Fairfax will not be permitted to testify at trial.

## CONCLUSION

For the reasons stated above, Defendants' motions in limine to permit Richard Painter and Lisa Fairfax to testify at trial are denied. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 473, 475).

Dated: New York, New York
September 10, 2012

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge