| | |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 9/10/12 |
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | **ECF CASE**<br><br>**ORDER**<br><br>09 Civ. 4346 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

This Order resolves the Commission's motion in limine No. 5 (Dkt. No. 509). In that motion, the Commission seeks to preclude Defendants from offering evidence or argument in furtherance of their theory that the Trustees changed the minutes of a September 15, 2008 Fund Board of Trustees meeting as a result of pressure from the Commission. For the reasons stated below, the Commission's motion will be denied.

## BACKGROUND

Briefly summarized, the issue as to the September 15 Board minutes is as follows: as the crisis precipitated by the Lehman bankruptcy progressed on September 15 and 16, 2008, the Fund's Board of Trustees held a number of meetings, at which the Bents updated the Board as to redemptions and other matters. Some of these meetings were tape-recorded. A Board

meeting at 1:00 p.m. on September 15, 2008 (the "1:00 p.m. meeting") was not tape-recorded. The instant dispute between the parties concerns what Bent II said at that meeting about the level of shareholder redemptions.

The original minutes for that meeting – which were approved by the Board in October 2008 (2d Gehring Answering Decl. Ex. G (Birch Decl.) Ex. C at 1) – reflect that Bent II "began by advising the Trustees that redemption requests from shareholders in the Primary Fund had continued unabated throughout the morning. As of the beginning of the 1:00 P.M. call, redemptions from the Primary Fund were approximately 16.5 billion." (DX 58 at 3-4)

On September 30, 2010 – more than two years after this September 15, 2008 Board meeting – the Board's Independent Trustees notified the Primary Fund's recording secretary, Catherine Birch – who is also the Secretary and General Counsel of RMCI – that they wished to make a change to the $16.5 billion redemption number. (2d Gehring Answering Decl. Ex. G (Birch Decl.) ¶ 10; DX 224) The Independent Trustees wanted the minutes changed to state that they had been told at the 1:00 p.m. meeting that the redemption number was "substantially lower than the amount stated." (DX 226 at 7)

In an October 28, 2010 letter to Birch responding to, inter alia, RMCI's complaints about the requested change, Mitchell Auslander – a Willkie Farr & Gallagher lawyer[1] – stated that this requested clarification from the Independent Trustees came "in response to the SEC":

> [I]n your September 30[, 2010] letter, you stated that Ms. DiMartino [a Willkie Farr lawyer] "intended to have the Board of Trustees consider altering previously-approved Board minutes." She did not. The board minutes from the September 15, 2008 meeting

---

[1] Willkie Farr jointly represented RMCI and the Reserve Funds in September 2008. (DX 228) By October 2010, however, the firm's representation of RMCI had ended, and RMCI had asserted that Willkie's continued representation of the Reserve Funds presented a conflict of interest. (DX 228)

2

> of the Board of Trustees state: "As of the beginning of the 1:00 PM call, redemption requests from the Primary Fund were approximately $16.5 billion." As you know, the SEC has for a long time questioned whether RMCI in fact communicated to the Independent Trustees the level of redemptions reflected in the September 15, 2008 board minutes. It is our understanding that the Independent Trustees, advised by their own counsel <u>and in response to the SEC</u>, would like to clarify for the record that the figure reported in the board minutes was merely a factual statement, and not necessarily something they were told at the time. Ms. DiMartino has nothing to do with that decision, and did not cause, and could not cause, the Independent Trustees to "consider altering" board minutes."

(DX 228, at 6) (emphasis added).

The Commission intends to argue at trial that the Board was not notified at the 1:00 p.m. meeting that the redemptions had reached $16.5 billion – and that this constituted material information that was withheld from the Board. Indeed, the Complaint alleges that at the 1:00 p.m. meeting "RMCI vastly understated the actual level of redemptions." (Cmplt., ¶ 75(b)) Defendants will argue that the Board was informed at the 1:00 p.m. meeting that redemptions were at $16.5 billion. Accordingly, as this Court has repeatedly stated (<u>see</u>, <u>e.g.</u>, April 21, 2011 Order (Dkt. No. 365) at 6), what the Defendants told the Board at the 1:00 p.m. meeting about redemptions is a critical issue in this case. Moreover, the facts concerning this matter – as they have emerged in discovery – are far from clear.

As an initial matter, the Commission contends that "there were never any final approved minutes" for the critical 1:00 p.m. meeting. (SEC MIL No. 5 Br. 1) The SEC asserts that the Trustees approved a version of the September 15 minutes "that left the number of redemptions as of the 1 p.m. meeting in brackets, signaling to all who might read them that no consensus had been reached as to the number of redemptions announced at the meeting." (<u>Id.</u> at 5-6) The SEC further asserts that "the brackets were removed before the Minutes were produced to the Commission" and that it was only after a trustee "met with Commission counsel in late

3

October 2008 or sat for his investigative testimony in February 2009 that the Trustees realized what had happened." (Id. at 6)

In contrast, the Defendants assert that the Board minutes at issue were "unanimously approved" by the Board in October 2008. (Def. Opp. Br. at 3) Defendants' argument is supported by the minutes from the Board's October 21, 2008 meeting, which report that the September 15 minutes were approved at the October 21 meeting, with one change: the original draft of the September 15 minutes stated that redemptions of $11.9 billion had been reported at the 1:00 p.m. meeting; the Board voted to change the $11.9 billion number to $16.5 billion. (DX 211; DX 208; see Def. MIL No. 5 Opp. Br. at 9)) The September 15 minutes approved on October 21, 2008 state that Bent II informed the Board that redemptions as of 1:00 p.m. on September 15 were at $16.5 billion. (DX 58)

Testimony and other evidence concerning the amount of redemptions disclosed at the 1:00 p.m. meeting is contradictory and confusing, and may well reflect the chaos and confusion that reigned more generally on September 15. There is evidence from September 16, 2008 suggesting that the Independent Trustees believed that RMCI had provided a figure of $5 billion at the 1:00 p.m. (PX 163 at 1) One of the Independent Trustees testified during the SEC's investigation, however, that he recalled a figure of $8 billion. (Montgoris Inv. Test. 64) The Fund's outside counsel – who was present at the 1:00 p.m. meeting – testified in 2009 that the redemption level disclosed at the 1:00 p.m. meeting was "14 billion or something like that." (2d Gehring Answering Decl. Ex. G (Birch Decl.) ¶ 12) In a May 18, 2010 email to Birch, Independent Trustee Mark Holland sent a markup of the September 15 minutes in which he crossed out the $16.5 billion figure and replaced it with $8 billion. (DX 219 at 4) And then there are the minutes themselves, which originally reflected a $11.9 billion number that was

4

changed in October 2008 to $16.5 billion. (DX 211; DX 208) In short, despite exhaustive discovery in this action, there is no consensus about the amount of redemptions disclosed at the 1:00 p.m. meeting.

What is clear, however – as the SEC concedes – is "that the [Independent] Trustees only decided to put their 'clarification' on the official record in late September 2010 and that that action followed some of them meeting with the Commission." (SEC MIL No. 5 Br. 8) Indeed, it appears that the SEC met with four Independent Trustees between late August 2010 and September 30, 2010, when the Independent Trustees requested the "clarification." (Second Gehring Decl., Ex. E) While the SEC argues that the Independent Trustees had wanted to request this change since at least May 2010 (see SEC MIL No. 5 Br. 8), one obvious question is why did they wait until September 30, 2010, immediately after their SEC interviews had been completed, to request this change? Another obvious question is why a change was not requested at some point between October 2008 and May 2010?

The SEC has offered to "withdraw all documentary evidence of the Trustees' 'clarification' of the signed Minutes" and to stipulate that it will not rely on the September 30, 2010 Board minutes, which reflect the Independent Trustees' statement that none of them recall being informed at the 1:00 p.m. meeting that redemptions at that time totaled $16.5 billion. (Id. at 12; see DX 226 at 7) This proposed stipulation appears to offer little, however, because after one or more of the Independent Trustees testifies on direct examination that "no number close to 16.5 [billion] was conveyed at the 1 p.m. meeting" (id. at 12 n. 8), the witness will be challenged on cross-examination about the $16.5 billion figure used in the minutes for the September 15, 2008 Board meetings. Such cross-examination may well produce testimony that the witness requested – in late September 2010 – that a statement be included in the September 30, 2010

5

Board minutes to the effect that the $16.5 billion figure was never disclosed at the 1:00 p.m. meeting. Accordingly, whether or not the SEC introduces documentary evidence concerning the Independent Trustees' "clarification," the issue is likely to emerge at trial.

The Court will not preclude or limit Defendants from challenging the credibility of the Independent Trustees when they testify that Bent II disclosed redemptions much lower than $16.5 billion at the 1:00 p.m. meeting. The assertion that the Bents misled the Board on this issue is a central allegation in the Complaint, and Defendants are entitled to challenge the Independent Trustees' testimony on this point. Part of Defendants' cross-examination will likely include the fact that the minutes for the September 15, 2008 Board meetings show that the $16.5 billion figure was disclosed at the 1:00 p.m. meeting. To the extent that an Independent Trustee testifies that he requested that Board minutes in October 2010 include a statement that the Independent Trustees were not told at the 1:00 p.m. meeting that redemptions amounted to $16.5 billion, Defendants are entitled to question that witness about all the circumstances surrounding the requested clarification – a request not formally made until two years after the events in question. The Court will not impose restrictions on that cross-examination. To the extent that the Commission wishes to introduce testimony or other evidence suggesting that the minutes for the September 15 meetings are not reliable, it is free to do so.

The Commission's motion to preclude DX 209, 218, 219, 220, 222, 223, 224, 226, and 227 (SEC MIL 5 Br. at 15) is likewise denied. The Commission has had these documents for more than a year. The Court allowed additional discovery – beyond the discovery deadline – concerning the Board minutes issue. See Dkt. Nos. 365, 369. Moreover, the Commission was allowed to supplement its witness list after Defendants produced the documents at issue.

Finally, the Commission's motion to strike the deposition designations of Commission Rule 30(b)(6) witnesses Leonard Schmidt and Michael Holland as more prejudicial than probative under Fed. R. Evid. 403 is denied. The Commission has not demonstrated that it will suffer unfair prejudice from the introduction of these deposition excerpts.

## CONCLUSION

For the reasons stated above, the Commission's motion in limine No. 5 is denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 509).

Dated: New York, New York
       September 10, 2012

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge