USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/2/12

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | ECF CASE<br><br><u>ORDER</u><br><br>09 Civ. 4346 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

  In its motion <u>in limine</u> No. 2 (Dkt. No. 501), the Commission moves to preclude evidence regarding (1) investor reliance on Defendants' statements; (2) action or inaction by the Government after the Fund "broke the buck"; (3) Government oversight of Lehman Bros. and the causes of Lehman's demise; (4) the failings of ratings agencies, and (5) Defendants' claims for fees, expenses, and indemnification.[1]

  For the reasons that follow, the Commission's motion will be granted in part and denied in part.

---

[1] The Commission also seeks to exclude evidence regarding shareholder loss and distributions made to shareholders. Because this aspect of the Commission's motion overlaps substantially with the Defendants' motion <u>in limine</u> regarding investor loss (Dkt. No. 493), it has been addressed in a separate order.

I.     **INVESTOR RELIANCE EVIDENCE**

The Commission seeks to preclude Defendants from offering evidence that investors were not justified in relying on certain allegedly misleading statements made by the Defendants. The Commission's motion is directed at, inter alia, evidence suggesting that (1) investors did not adequately investigate Defendants' public filings; (2) no diligent investor could have believed that the Defendants had the wherewithal to support the Fund's $1.00 NAV; or (3) investors should have known – in the wake of the Lehman bankruptcy – that the Fund's NAV would drop below $1.00, regardless of any statements the Defendants made. This aspect of the Commission's motion in limine No. 2 will be granted.

Reliance is not an element of a fraud claim brought by the Commission. SEC v. Morgan Keegan & Co., Inc., 678 F.3d 1233, 1244 (11th Cir. 2012) ("'Justifiable reliance,' however, is not an element of an SEC enforcement action because Congress designated the SEC as the primary enforcer of the securities laws, and a private plaintiff's 'reliance' does not bear on the determination of whether the securities laws were violated. . . ."); SEC v. Blavin, 760 F.2d 706, 711 (6th Cir. 1985) ("Unlike private litigants seeking damages, the Commission is not required to prove that any investor actually relied on the misrepresentations or that the misrepresentations caused any investor to lose money."); SEC v. Credit Bancorp, Ltd., 195 F.Supp.2d 475, 490-91 (S.D.N.Y. 2002) ("The SEC does not need to prove investor reliance, loss causation, or damages in an action under Section 10(b)[,] Rule 10b–5, or Section 17(a).").

In sum, it is irrelevant whether investors relied on the Defendants' statements, or whether any such reliance would have been reasonable. See Morgan Keegan & Co., Inc., 678 F.3d at 1253 ("[B]ecause due diligence focuses on whether 'the carelessness of a plaintiff should preclude his recovery,' it is properly considered only in a private action brought by an investor,

not an SEC enforcement action") (quoting Thompson v. Smith Barney, Harris Upham & Co., 709 F.2d 1413, 1418 n.7 (11th Cir. 1983)).

Accordingly, Defendants will be precluded from offering evidence concerning whether investors' reliance on Defendants' statements was reasonable, whether investors were diligent in investigating Defendants' statements, and what a diligent investigation would have revealed.

To the extent that the Commission calls witnesses to testify about the materiality of Defendants' statements, the above ruling does not, of course, preclude the Defendants from cross-examining these witnesses as to the "total mix of information" available to them. Because the standard for materiality is "whether the allegedly concealed information, if disclosed, would have been viewed by a reasonable investor as having significantly altered the total mix of information made available," SEC v. Bank of America Corp., 677 F.Supp.2d 717, 718 (S.D.N.Y. 2010) (citing TSC Indus. v. Northway, 426 U.S. 438, 449 (1976)), Defendants have a right to inquire into what the investor's "mix of information" was.

To the extent that Defendants read the Commission's motion as seeking to preclude Defendants from cross-examining investor witnesses as to possible biases, prejudices, or ulterior motives (Def. Opp. SEC MIL No. 2 Br. at 13), the Court imposes no such limitation. A witness's possible bias or prejudice is always relevant. See, e.g., Davis v. Alaska, 415 U.S. 308, 316 (1974) ("[T]he partiality of a witness . . . is 'always relevant as discrediting the witness and affecting the weight of the testimony.'") (quoting 3A Wigmore, Evidence § 940, at 775 (Chadbourn rev. 1970)).

## II. EVIDENCE CONCERNING EVENTS AFTER THE PRIMARY FUND "BROKE THE BUCK"

The Commission seeks to preclude Defendants from offering evidence concerning events that occurred after the Primary Fund "broke the buck" – i.e., fell below an NAV of $1.00. Relying on a November 26, 2008 Fund press release, the Commission argues that the Primary Fund "broke the buck" at 11:00 a.m. on September 16, 2008 (SEC MIL No. 2 Br. at 11-12 (citing PX 93).

The Complaint asserts, however, that "Defendants' campaign of misinformation came to an end at 4:00 p.m. EST on September 16, 2008, when RMCI disclosed that the Primary Fund had broken the buck . . . ." (Cmplt. ¶ 5) Moreover, there is evidence that the Fund's Board of Trustees did not vote to reduce the Fund's NAV from $1.00 to $0.97 until 4:00 p.m. on September 16, 2008. (DX 134 at 7). Finally, the SEC's proposed 11:00 a.m. cut-off relies on an accounting done weeks after the events at issue in this case. Under these circumstances, the Commission's motion to preclude evidence of events after 11:00 a.m. on September 16, 2008 is denied. Evidence of events that occurred prior to 4:00 p.m. on September 16, 2008 will not be automatically excluded based on timing. Evidence of events after this point will be admitted only to the extent that such evidence sheds light on the state of mind of the Defendants as of September 15-16, 2008.

To the extent that the SEC will argue at trial that Defendants were not forthcoming to the SEC about a credit support agreement, about whether the Fund had "broken the buck," or about other matters at issue in this litigation, internal SEC emails reflecting communications with the Defendants on September 15 and 16, 2008 about these matters may be

4

relevant. It is not clear to the Court whether, or to what extent, these communications will be disputed at trial. Accordingly, rulings as to specific exhibits will have to await trial.[2]

The Commission also seeks to preclude evidence concerning its investigation of Lehman and Bank of America's acquisition of Merrill Lynch. DX 245, 294, and 296 – which concern these later investigations – are all precluded. Regulatory action the Government has or has not taken against other actors involved in the financial crisis is not relevant.

Similarly, Defendants will not be permitted to offer evidence concerning remedial measures the Government has put in place since September 16, 2008, concerning the financial system. This includes any reference to efforts by the SEC to improve money market fund regulation, the Troubled Assets Relief Program, and lending through the Federal Reserve's discount window to investment banks. Such evidence does not shed light on the Bents' scienter on September 15 and 16, 2008, and presents a grave risk of jury confusion under F.R.E. 403. DX 214, 239, 240, 242, 244, 295, 297 are therefore precluded.

For the same reasons, evidence concerning the Government's bailout programs post-September 16, 2008 is not admissible. Whether or not the Bents' expectations and assumptions on September 15 and 16 were reasonable cannot be determined by events that happened later. While Defendants may testify to their expectations and assumptions on September 15 and 16, they will not be permitted to bolster their testimony by reference to bailouts or other events that occurred after September 16.

---

[2] Defendants' suggestion that the SEC "secretly fuel[ed] the run on the Fund" (Def. Opp. SEC MIL No. 2 Br. at 18) by leaking information to Bloomberg News mid-day on Tuesday September 16, 2008 that the Fund would be breaking the buck has no basis in reality. It is undisputed that "the run on the Fund" began when the markets opened on Monday morning and that State Street Bank stopped processing redemptions Monday morning.

DX 175 and 176 – which relate to a September 22, 2008 SEC Order granting the Primary Fund permission to suspend redemptions – shed no light on the issues in this case. These exhibits are precluded.

Finally, the newspaper articles and other materials discussing money market funds and the 2008 financial crisis – published after the Fund broke the buck – are excluded as hearsay. (See DX 173, 179, 245, 291-292, 294, 296, and 298-300) These materials – which go far beyond the Primary Fund – also present a grave risk of jury confusion, and are excluded under F.R.E. 403 as more prejudicial than probative.

### III. GOVERNMENT OVERSIGHT OF LEHMAN

The Commission also seeks to preclude Defendants from introducing evidence or argument relating to the Government's oversight of Lehman, and its role in Lehman's collapse.

Defendants argue that the Government's oversight of Lehman – reflected in the Consolidated Supervised Entity ("CSE") program – was a factor in Bent Sr.'s calculation of Lehman's net worth, and his estimate that $100 million would suffice for the credit support agreement. Defendants intend to argue that Bent Sr. believed that Lehman's financial reports were sound, and that this belief was critical to his state of mind on September 15 and 16, and his conclusion that the loss to the Primary Fund related to the $785 million in Lehman paper would be substantially less than $785 million. The SEC does not dispute that Bent Sr.'s beliefs and expectations concerning these issues are relevant to scienter. (July 13, 2012 Tr. at 25-26) Accordingly, Defendants will be permitted to offer testimony and exhibits that shed light on their understanding of Lehman's financials before September 15, 2008. However, evidence or argument regarding the Government's actions or inactions concerning Lehman after September 16, 2012, will not be admitted.

6

The reasons for Lehman's collapse are likewise not relevant to this case. Accordingly, the 600-page Financial Crisis Inquiry Report (produced by the National Commission on the Causes of the Financial and Economic Crisis in the United States) (DX 242), the Court-appointed Lehman examiner's findings (DX 243), and the post-September 16 statements by the Commission and Chairman Schapiro concerning the shortcomings of the CSE program (DX 240-241, 293, 310) are all irrelevant and are precluded.

In sum, there will be no evidence admitted as to the reasons for Lehman's demise or any role the Government might have had in Lehman's collapse. Defendants will be permitted, however, to offer evidence demonstrating their understanding of Lehman's financials as of September 15 and 16, 2008.

## IV.   REPORTS REGARDING THE FAILINGS OF RATING AGENCIES

The Commission plans to call Henry Shilling of Moody's and Peter Rizzo of Standard & Poor's (S&P) to testify about their communications with the Reserve on September 15 and 16, 2008. The Commission expects that these witnesses will testify that "a credit support agreement [was] the only thing that stood between the Reserve Fund and a credit watch once the Reserve Fund's net asset value moved to a certain value." (July 13, 2012 Tr. at 33) These witnesses may also testify that, but for the communications with RMCI, Moody's and S&P would have downgraded the Primary Fund before the Board's announcement on the afternoon of September 16, 2008, that the NAV had dropped to $0.97.

The Commission seeks to preclude DX 242 – The Financial Crisis Inquiry Report referenced above – and DX 238, a 2003 SEC report concerning rating agencies' role in the Enron debacle. The Commission's motion to preclude is granted. Neither of these documents has any relevance to the issues in this case. These reports do not concern money market funds and do not reflect any work or ratings associated with Shilling or Rizzo. Moreover, evidence concerning

7

rating agencies' role in the collapse of Enron, and in the broader 2008 financial crisis, present a grave risk of juror confusion. Accordingly, DX 242 and DX 238 will be excluded because they are irrelevant and because they are more prejudicial than probative under F.R.E. 403.

Defendants will be permitted to cross-examine Shilling and Rizzo as to the legitimacy of their assertion that if the Bents had given them accurate information on September 15 and 16, 2008, the ratings agencies would have quickly downgraded the Primary Fund. This cross-examination will not be permitted to turn into a general exploration of rating agencies' failures in connection with past financial scandals, however.

## V. EVIDENCE REGARDING DEFENDANTS' CLAIMS AGAINST THE FUND FOR FEES, EXPENSES, AND INDEMNIFICATION

The Commission seeks to preclude Defendants from introducing any evidence or argument relating to their claims for management fees, expenses, and attorneys' fees. Defendants do not oppose this aspect of the Commission's motion. (Def. Opp. to SEC MIL No. 2 Br. at 29) Defendants object, however, to the Commission's argument that evidence concerning expenditure of Fund assets by the Independent Trustees should be precluded. Defendants' theory is that the Independent Trustees have a motive to testify adversely to Defendants because they wish to "maintain[] control of the Fund's coffers." (Id.)

The assets of the Fund have been under Court supervision since this action was filed, however. Accordingly, it would be misleading to suggest to the jury that the Independent Trustees and Defendants are vying for control of these assets. The SEC's motion to preclude evidence concerning evidence of the Defendants' claims for management fees, expenses, and attorneys' fees, and evidence concerning the Independent Trustees' expenditure of Fund assets, is granted.

8

## CONCLUSION

The Commission's motion in limine No. 2 is granted in part and denied in part as set forth above.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 501).

Dated: New York, New York
October 1, 2012

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge