USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/2/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II, Defendants, and THE RESERVE PRIMARY FUND, Relief Defendant. | ECF CASE 09 Civ. 4346 (PGG) **ORDER** |

PAUL G. GARDEPHE, U.S.D.J.:

This Order addresses issues that have arisen concerning DX 207, 210, 211, and PX 111. All of these documents were produced by Defendants during discovery, and Defendants marked three of them as trial exhibits. All of these documents reflect communications between Defendants' then-outside counsel – Jonathan Burwick, Rose DiMartino, Elizabeth Gray, and P. Jay Spinola of Willkie, Farr & Gallagher ("Willkie") – and Defendants, including Catherine Crowley, the General Counsel of Reserve Management Company, Inc. ("RMCI"). All of these documents relate to Crowley's preparation of minutes for the September 15 and/or 16, 2008 Fund Board of Trustees meetings, which are integral to this case.

DX 207 is an October 21, 2008 email from Burwick to Defendants Bruce Bent Sr. and Bruce Bent II, to Crowley, DiMartino, and Gray, and to Mark Holland and Stuart Strauss of

Clifford Chance.[1]  The cover email asks the recipients to review changes to the draft September 15, 2008 Board minutes made by Clifford Chance.  The attached minutes contain handwritten changes to a figure representing the amount of redemptions Bent II disclosed at the 1:00 p.m. Board meeting on September 15.  The original figure of $8 billion in redemptions – which is in brackets – is crossed out and replaced with an $11.9 billion figure.  DiMartino has testified that the changes are in Gray's handwriting.  (SEC Sept. 17 Ltr. at Ex. D)  DX 210 is an October 23, 2008 email from Spinola that circulates for comment a draft of the September 15 and 16, 2008 Board minutes to Willkie attorneys, including Gray, and to Crowley.  The email cover sheet suggests that some changes have already been made to the minutes.  DX 211 is an email from Burwick, 16 minutes later that evening, that refers to the minutes annexed to DX 210 and states that they will be delivered to the SEC.  PX 111 is a September 25, 2008 email from Peggy Mitchell in RMCI's legal department to DiMartino, seeking her comments on the September 15 Board minutes.  The attached draft of the Board minutes contains an $8 billion figure for redemptions as of 1:00 p.m.  The $8 billion figure is in brackets.

    The SEC has argued that, in providing these documents during discovery and in marking three of them as trial exhibits, Defendants have waived the attorney-client privilege as to all attorney-client communications related to the preparation and revision of the September 15 and 16 Board minutes.  The SEC seeks discovery of all such communications.  In response, Defendants have withdrawn DX 207, 210, and 211 and have indicated that they will not seek to introduce them at trial.

    As the Court discussed with the parties at the September 25, 2012 conference (Sept. 25, 2012 Tr. at 2), Defendants have waived any attorney-client privilege otherwise

---

[1] Mark Holland, then at Clifford Chance, now at Goodwin Proctor, represents the Independent Trustees. (See Notice of Appearance, Aug. 20, 2009, Dkt. 134).

applicable to these documents because they produced them during discovery and marked them as trial exhibits. See Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency, 811 F. Supp. 2d 713, 744 (S.D.N.Y. 2011) ("Where the content of an attorney-client communication has been disclosed to other parties, that communication is no longer privileged."); Skywark v. Isaacson, No. 96 CIV. 2815(JFK), 1998 WL 647201, at *3 (S.D.N.Y. 1998) ("[T]o the extent that letter reflects attorney-client communications, that privilege was waived by the voluntary production of the letter to defendants' counsel. . . ."). At the conference, the Court asked the parties to provide case law addressing the scope of this waiver; that is, whether Defendants waived the privilege only as to these documents or whether the waiver extends to the entire subject matter of the preparation and revision of the September 15 and 16, 2008 Board minutes. (Sept. 25, 2012 Tr. at 3)

> F.R.E. 502(a) provides:
>
> When the disclosure is made in a federal proceeding . . . and waives the attorney-client privilege . . . , the waiver extends to an undisclosed communication or information . . . only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

F.R.E. 502(a).

Given that these documents were produced by Defendants during discovery, and that three of these documents were marked as defense trial exhibits, it is clear that Defendants' waiver was intentional. Defendants' argument that these documents do not contain attorney-client communications – because they only reflect proofreading changes – "grammatical, factual, and technical corrections – not legal advice" from Defendants' outside counsel (Def. Oct. 1 Ltr.

3

at 1) – is not credible. The numerous lawyers on these emails were not sent the Board minutes to check for typographical errors. They were to review and comment on the minutes – i.e., they were asked to provide legal advice. And they did so. For example, when Gray changed the redemption number from "[8]" to "11.9" billion in DX 207, she was offering a legal opinion that $11.9 billion was the correct number. She was not correcting a typographical error.

        The Defendants next argue that while their disclosure of the documents was intentional, they did not intentionally waive the privilege because they believed that the documents at issue were not privileged. (Def. Oct. 1 Ltr. at 2). However, that distinction is immaterial. See Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 480 (S.D.N.Y. 1993) ("[T]he intent of the party and its attorney not to cause an implied waiver is immaterial if they intentionally undertake actions that have the effect of causing such a waiver."); Women in City Government United v. City of New York, No. 75 Civ. 2868 (MJL), 1986 WL 4684, at *2 (S.D.N.Y. 1986) ("[O]ne need not prove an intent to waive for a waiver to occur."). In any event, as noted above, it is utterly implausible for Defendants to argue that they did not understand that communications between numerous outside lawyers and RMCI's general counsel about minutes concerning critical Board meetings – minutes that upon completion were to be provided to the SEC, which was then engaged in an investigation concerning the events on September 15 – constituted attorney-client privileged communications.

        In order to determine under F.R.E. 502(a) whether Defendants' waiver extends to "undisclosed communications or information," this Court must determine whether "the disclosed and undisclosed communications or information concern the same subject matter" and whether "they ought in fairness to be considered together." F.R.E. 502(a). In order for the Court to make these determinations, the Court will review in camera all "undisclosed communications or

information" concerning preparation and revision of the September 15 and 16, 2008 Board minutes to the extent these materials address redemption levels as of 1:00 p.m. on September 15, 2008. Given the October 9, 2012 trial date, Defendants are to produce these documents forthwith.

Dated: New York, New York
       October 2, 2012

                              SO ORDERED.

                              _____
                              Paul G. Gardephe
                              United States District Judge