| | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:<br>DATE FILED: _10/3/12_ |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE<br>SOUTHERN DISTRICT OF NEW YORK | |

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND<br>DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC.,<br>RESRV PARTNERS, INC., BRUCE BENT SR., and<br>BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | **ECF CASE**<br><br><u>**ORDER**</u><br><br>09 Civ. 4346 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

This Order resolves Defendants' motions in limine to exclude (1) evidence

concerning the Bents' actions as Fund Officers (Dkt. No. 491); (2) PX 267, 268, and 269 (Dkt.

No. 477); (3) evidence relating to valuations of Lehman commercial paper not known to

Defendants on September 15-16, 2008 (Dkt. No. 483); and (4) evidence of the Bents' personal

wealth (Dkt. No. 489). Defendants have also moved in limine to prohibit the Commission from

using group pleading at trial (Dkt. No. 495). This Order also addresses that portion of the SEC's

motion in limine No. 3 seeking admission of certain statements of Defendants, their employees,

and their agents. (Dkt. No. 503)

I.      **EVIDENCE CONCERNING THE BENTS' ACTIONS AS FUND OFFICERS**

Defendants move to exclude evidence and argument concerning actions taken by the Bents in their capacities "as Fund Officers."

Bent Sr. served as chairman of the Reserve Primary Fund's Board of Trustees, and as chairman of both Reserve Management Company, Inc. ("RMCI") and Reserv Partners. (Bent Sr. Decl. in Support of S.J. ¶ 1)  Bent II served as co-chief executive officer and senior vice president of the Reserve Primary Fund, as vice chairman and president of RMCI, and as vice chairman of Reserv Partners.  (Bent II Decl. in Support of S.J. ¶ 1)  Because the Bents wore different hats – while simultaneously serving as both officers of the Fund and as officers of RMCI and Reserv Partners – Defendants argue that not every statement or action of the Bents is chargeable against RMCI and Reserv Partners.

Defendants agree that as to any Board communications regarding the proposed credit support agreement between the Fund and RMCI – communications that necessarily implicate both entities – the Bents' dual roles do not present any issues.  (Def. Fund Officers Br. at 3)  However, Defendants argue that the Court should preclude

> the Bents' communications with the Board as to matters not covered by the
> Management Agreement.  These necessarily include, inter alia, all of the
> alleged nondisclosures in the SEC's summary judgment motions concerning
> State Street's funding of redemptions through daylight overdraft, the ratings
> agencies' supposed expressions of concern, and the calculation of other funds'
> NAVs.  (ECF Doc. 380, p. 31)  To the extent that the Bents reported to the
> Board as to these matters, they did so solely as Fund officers.

(Id. at 5)

On September 15 and 16, 2008, the Bents acted both as advisers to the Fund and as officers of the Fund, and these roles cannot be neatly divided.  The Bents themselves have admitted that they acted in a dual capacity on September 15 and 16:  in his declaration submitted

at summary judgment, Bent Sr. stated: "In general, my efforts on September 15-16, 2008 were undertaken in my dual capacities as Fund and RMCI fiduciaries, which roles I viewed as consistent." (Bent Sr. Decl. in Support of S.J. ¶ 6). Likewise, Bent II stated at summary judgment that "[w]ith regard to the events of September 15-16, I acted as both a Fund and RMCI officer, which I viewed as consistent roles." (Bent II Decl. in Support of S.J. ¶ 2) Having asserted at summary judgment that they functioned in a dual capacity on September 15 and 16, it is not plausible for the Bents to now assert that they actually occupied distinct roles on September 15 and 16, particularly at Board meetings.

The Bents had an ongoing duty as advisers to the Fund that cannot be separated from any statements they may have made at Board meetings. See SEC v. DiBella, 587 F.3d 553, 568 (2d Cir. 2009) ("Although there is no specifically enumerated duty to disclose in section 206(2), an investment advisor can avoid committing fraud on its clients by disclosing material information to them."). In their capacity as advisers to the Fund, the Bents had a duty to disclose "all material facts," regardless of whether they did so in a Board meeting or elsewhere, and irrespective of the capacity in which they learned the information. See SEC v. Moran, 922 F.Supp. 867, 895-96 (S.D.N.Y. 1996) ("Section 206 of the Advisers Act establishes a statutory fiduciary duty for investment advisers to act for the benefit of their clients, requiring advisers to exercise the utmost good faith in dealing with clients, to disclose all material facts, and to employ reasonable care to avoid misleading clients.") (citing Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 17 (1979)). The Bents' duty to disclose "all material facts" did not evaporate when they walked into, or called into, a Board meeting.

The cases cited by Defendants are not to the contrary. United States v. Bestfoods, 524 U.S. 51, 69 (1998) states that a parent corporation is not automatically exposed to liability

for the act of a subsidiary solely because its directors serve on both boards. Bestfoods notes the

""well established principle [of corporate law] that directors and officers holding positions with a

parent and its subsidiary can and do 'change hats' to represent the two corporations separately,

despite their common ownership." Id. (quoting Lusk v. Foxmeyer Health Corp., 129 F.3d 773,

779 (5th Cir. 1997)). There is a "general presumption" in corporate law "that the directors are

wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," but

that presumption may be overcome. Id. at 69-70. While the Bestfoods court declined to set strict

rules for when the "general presumption" is overcome, it noted that

> the presumption that an act is taken on behalf of the corporation for whom the officer
> claims to act is strongest when the act is perfectly consistent with the norms of corporate
> behavior, but wanes as the distance from those accepted norms approaches the point of
> action by a dual officer plainly contrary to the interests of the subsidiary yet nonetheless
> advantageous to the parent.

Id. at 70 n.13. This principle is applicable here. To the extent that a jury concludes that the

Bents were acting contrary to the interests of the Fund, and instead in a manner advantageous to

RMCI and Reserv Partners, there is no presumption that they were acting on behalf of the Fund.

Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296 (2011)

likewise does not support Defendants' argument. In Janus, the investment adviser could not be

held liable because it was not the "maker" of any of the statements alleged to be fraudulent. Id.

at 2304. Here, the Bents were admittedly acting in a dual role, and were always wearing the hat

of the Fund's investment adviser. Neither Bestfoods nor Janus relieves them of responsibility for

statements made to the Board.

Defendants also argue that a liability finding against them cannot be premised on

the Bents' decisions as to when to call a Board meeting, because any such decision was made by

the Bents solely in their capacities as Fund officers. (Def. Fund Officers Br. at 6) More

4

specifically, Defendants contend that they cannot be held liable for the Bents' decision not to call a Board meeting between 1:00 p.m. on September 15 and 10:00 a.m. on September 16 to inform the trustees of material developments.[1]

While the Bents' duty to call a Board meeting is unique to their role as Fund officers (Gehring Decl., Ex. 27 (Bylaws) Art. II § 5), this does not preclude the SEC from contending at trial that the Bents – as the Fund's investment adviser – had an ongoing duty to inform the Board of material developments on September 15 and 16 – including the period between 1:00 p.m. on September 15 and 10:00 a.m. on September 16 – whether it was at a Board meeting or in some other form of communication.

Defendants' motion to exclude evidence of the Bents' actions as Fund officers is denied.

## II.   PX 267, 268, AND 269

Defendants move to preclude three exhibits compiled by the SEC, largely from excerpts of prior testimony given by Defendants or their employees:  "Bent Sr Admissions" (PX 267), "Bent II Admissions" (PX 268), and "Reserv and RMCI Admissions" (PX 269).  The Commission moves for the introduction of these exhibits at trial as admissions of Defendants or their agents under Federal Rule of Evidence 801(d)(2)(A), (B), or (D).

---

[1]  The Complaint alleges that,

> [a]fter adjourning shortly after 1:00 p.m. on September 15 with the belief that the Fund was not in distress and would, if necessary be supported by RMCI, the Board of Trustees did not meet again until approximately 10:00 a.m. on September 16. Unbeknownst to the Board, by this point on September 16, the Fund was about to strike its third hourly NAV of the day on the basis of wholly inaccurate and incomplete information.

(Cmplt. ¶ 114)

Defendants make no substantive objection to PX 267 and PX 268. Statements made by Bent Sr. and Bent II are admissible against them and the corporate entities that they wholly owned and controlled as officers under Fed. R. Evid. 801(d)(2)(A).

PX 269 contains statements by Arthur Bent, Catherine Crowley, Eric Lansky, David Lentinello, Frank Bonnano, John Drahzal, and David Gareis. The SEC argues that these statements are admissible under F.R.E. 801(d)(2)(A), (B) or (D) as party admissions, as statements that Defendants have adopted, or as statements made by agents and employees "on a matter within the scope of that relationship and while it existed." F.R.E. 801(d)(2). The following chart sets forth the positions held by these individuals, the dates of their testimony, and the dates through which they worked for Reserve entities:

| Name | Position(s) Held[2] | Date(s) of Testimony | Termination of Employment |
|---|---|---|---|
| **Arthur Bent** | RMCI: Vice Chairman, COO, Treasurer, Asst. Secretary, Registered Representative RMC: Vice Chairman and COO | 12/11/08 | Present |
| **Catherine Crowley** | RMCI: Senior Vice President, General Counsel, Secretary Reserv Partners: General Counsel RMC: Managing Director, General Counsel | 12/22/08 2/5/09 | Present |
| **Eric Lansky** | Reserv Partners: Registered Representative RMC: Managing Director, Marketing | 11/18/08 | 12/31/08 |
| **David Lentinello** | Reserv Partners: Registered Representative | 2/26/09 | 11/24/10 |

[2] See PX 44 (Organizational Chart of RMCI); PX 88 (Chart of Stock Certificate Ownership); PX 210 (Form BD, filed August 25, 2008); PX 103 (Organizational Chart); Ex. T). As discussed below, RMC – Reserve Management Company – was the "mutual fund processor" for the Primary Fund and other Reserve funds. (PX 210)

6

| | RMC: Director of Mutual Fund Administration | | |
|---|---|---|---|
| **Frank Bonnano** | Reserv Partners: Registered Representative <br> RMC: Director, Marketing | 10/4/10 | 12/15/10 |
| **John Drahzal** | Reserv Partners: Registered Representative <br> RMC: Managing Director, Global Head of Sales | 10/3/08 (30(b)6) <br> 12/11/08 <br> 11/1/08 | 1/24/11 |
| **David Gareis** | Reserv Partners: Registered Representative <br> RMC: Managing Director | 10/12/10 <br> 2/23/11 (30(b)(6) | 11/24/10 |

As the chart indicates, each declarant gave his or her testimony while he or she was still employed by one or more of the Defendants.[3]  As to Crowley, however, Defendants argue that her statements were made in her capacity as an agent of the Primary Fund – or on behalf of some other entity that is not RMCI or Reserv Partners – and therefore are not admissible against RMCI and Reserv Partners.  Defendants also argue that Wells notices served on the Bents and RMCI on December 18 and 19, 2008, created divergent interests between them and the declarants that effectively terminated any agency relationship.[4]

A.     **Legal Standard**

F.R.E. 801(d)(2)(D) provides that a statement is not hearsay if it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  F.R.E. 801(d)(2)(D).  An adverse party seeking to

---

[3] Defendants do not dispute that an agency relationship existed between RMCI or Reserv Partners and Lansky, Lentinello, Bonnano, Drahzal, and Gareis.  Each of these individuals was registered with FINRA as a representative of Reserv Partners.  (See PX 147(f),(g),(h),(k),(n),(p)).

[4] Defendants do not contest the admissibility of statements by Asim Tewary and Gareis, nor could they.  The declarations from which these excerpts were taken were submitted by Defendants at summary judgment.  (Dkt. No. 352 (Tewary declaration); Birnbaum Decl. Exs. G, H, I (Gareis declaration)).  When Defendants submitted these declarations at summary judgment, they "manifested that [they] adopted or believed to be true" the statements contained in those declarations.  Moreover, both Tewary and Gareis were registered representatives of Reserv Partners.  (Ex. U (Tewary); (PX 147(k) (Gareis)).

admit the statements of an agent must "establish (1) the existence of the agency relationship, (2)

that the statement was made during the course of the relationship, and (3) that it relates to a

matter within the scope of the agency." Pappas v. Middle Earth Condo. Ass'n, 963 F.2d 534,

537 (2d Cir. 1992). "[A]lthough the statement to be introduced may not itself be relied upon to

establish the alleged agency relationship, the foundation for its admissibility may be established

by circumstantial evidence." Id. at 538 (internal citation omitted) The Second Circuit has

emphasized the "liberal" standard of admissibility applicable under F.R.E. 801(d)(2), noting that

because

> admissions against a party's interest are received into evidence without many of
> the technical prerequisites of other evidentiary rules – such as, for example,
> trustworthiness and personal knowledge – admissibility under this rule should be
> granted freely. Liberal admissibility of this sort of proof is grounded on certain
> premises. One is that an employee is usually the person best informed about
> certain acts committed in the course of his employment, and another is that while
> still employed an employee is unlikely to make damaging statements about his
> employer, unless those statements are true.

Id. at 537 (citing McCormick on Evidence § 267 (2d ed. 1972); 2 Wigmore, Evidence § 280(2)

(Chadbourn rev. 1979)).

The employee or agent's authority need not be the authority to make the

statements, but rather must be "the authority to take action about which the statements relate."

Id. at 538.

> If an employee/agent was "an advisor or other significant participant in the
> decision making process that is the subject matter of the statement," the
> statements are considered within the scope of employment. Additionally, the
> speaker does not have to be the "final decisionmaker," but simply an advisor or
> significant participant in the decision-making process.

Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, 262 F.Supp.2d 251, 261

(S.D.N.Y. 2003) (quoting United States v. Rioux, 97 F.3d 648, 661 (2d Cir. 1996)). "Whether a

statement concerns a matter within the scope of employment/agency under Fed.R.Evid.

801(d)(2)(C) or (d)(2)(D), is [a] preliminary matter to be determined by the trial court."  Id.

(citing Hill v. F.R. Tripler & Co., Inc., 868 F.Supp. 593 (S.D.N.Y. 1994)).[5]

    **B.**    **Analysis**

        **1.**    **Crowley's Statements Were Within the Scope of Her Employment**

Defendants argue that Crowley's statements are not admissible against the Bents

or RMCI because she was employed by Reserve Management Corporation ("RMC") – which is

not a party to this action – and because her statements were made in her capacity as Secretary of

the Fund.

RMC "is a processor" (Birnbaum Decl., Ex. V (Bent Sr. Inv. Test., Oct. 29, 2008)

at 12), and "the corporate entity that handled all the payment of bills, or the daily processing for

[RMCI,] the investment advisor. . . . [RMCI] paid RMC fees in order for them to contract all the

day-to-day operations." (Birnbaum Decl., Ex. Q (Farrell Inv. Test., Feb. 19, 2009) at 19; see

also PX 210 (describing RMC as "the mutual fund processor for the Reserve Funds")).  While as

a technical matter Crowley may have been employed by RMC, she testified that she served as

general counsel for RMCI, RMC, and Reserve Management Company.  (Gehring Decl. Ex. 16

(Crowley Inves. Int.) at 14-15)  Her testimony concerns, inter alia, advice she provided to the

Bents and RMCI, her review of certain marketing pieces, the potential credit support agreement

---

[5]  Defendants cite to Fed.R. Civ.P. 32(a), which states that "[a]n adverse party may use for any
purpose the deposition of a party or anyone who, when deposed, was the party's officer, director,
managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Depositions admissible under
F.R.E. 801(d)(2) need not be separately analyzed under Fed. R. Civ. P. 32(a).  See, e.g.,
Carpenter v. Forest Meadows Owners Ass'n, 2011 WL 3207778, at *5 (E.D.Cal. July 27, 2011)
("The Court agrees that the Federal Rules of Evidence provide an independent basis from Rule
32(a)(3) for admitting deposition testimony."); Johnson v. Big Lots Stores, Inc., Nos. 04-3201,
05-6627, 2008 WL 2191482, at *3 (E.D.La. Apr. 29, 2008); Aircraft Gear Corp. v. Kaman
Aerospace Corp., No. 93 C 1220, 1996 WL 65990, (N.D.Ill. 1996).

for the Primary Fund, and Board meetings she attended within her capacity as Secretary of the Fund and general counsel to the three Reserve entities. (PX 269 at 1-13)

Defendants argue that Crowley's statements are inadmissible, however, because she "served in a variety of different capacities" (Def. PX 267-269 Br. at 13), and was not subpoenaed in any particular capacity. Defendants also contend that Crowley's statements concerning Board meetings are not admissible, because she attended Board meetings in her capacity as Fund Secretary, and not as Defendants' agent. (Id. at 14)

While Crowley wore multiple hats for various entities, she possessed then, and possesses now, one store of knowledge. Moreover, when attending Board meetings, the evidence demonstrates that she attended in a dual capacity. For example, the minutes for the critical September 15, 2008 Board meetings state that "Catherine Crowley . . . of Reserve Management Company, Inc. ('RMCI')" attended "by invitation of the Board." (DX 58 at 1) The minutes further note that some of the RMCI attendees "are also officers of the [Fund]." (Id.) When the Board's 9:30 a.m. meeting adjourned at 10:15 a.m., the minutes reflect that the Trustees "instructed Ms. Crowley, the General Counsel of RMCI, to keep [the Independent Trustees' counsel] informed of any significant developments." (Id. at 3) In sum, Crowley attended Board meetings both as Secretary of the Fund and also as RMCI's general counsel. Accordingly, her testimony about events during the September 15-16 Board meetings concerns matters that were within the scope of her employment as RMCI's general counsel, and thus falls within F.R.E. 801(d)(2)(D).

The same is true as to Crowley's testimony concerning the preparation of the minutes for the September 15-16, 2008 Board meetings. Her duties as Fund Secretary cannot be neatly separated from her duties as RMCI's general counsel. Crowley took notes at Board

meetings, and her notes were the basis for the minutes that she later prepared. (PX 269 Admission No. 5) Crowley circulated her draft of Board minutes internally at RMCI for comment before they were approved by the Board, however, including to the Bents, to RMCI's chief investment officer Patrick Ledford, and to Patrick Farrell, chief financial officer of RMCI, Reserv Partners, and Reserve Management Corporation. (Id.) Accordingly, Crowley's knowledge about the preparation of the minutes of the September 15-16 Board meetings stems both from her status as the Board's secretary and her status as RMCI's general counsel. Moreover, it is the SEC's theory that Crowley violated her duty to the Fund in preparing the minutes of the September 15 Board meetings, acting in a manner that was designed to protect the interests of the Bents and RMCI at the expense of the Fund. In short, a reasonable jury could find that Crowley was acting in her capacity as RMCI's general counsel when she prepared, circulated, discussed, and edited the Board minutes.

Crowley also provided legal counsel to the Bents and RMCI concerning issues that arose on September 15 and 16, 2008 – including the credit support agreement – and was thus "an advisor or other significant participant in the decision making process that is the subject matter of the statement." Penguin Books U.S.A., Inc., 262 F.Supp.2d at 261.[6]

Finally, Defendants object to statements from Crowley's investigative testimony, which they characterize as reflecting her "private musings." (Def. PX 267-269 Br. at 14) For

---

[6] Defendants argue that investigative testimony of Crowley and other witnesses should be excluded because it is not admissible under any of the rules of evidence that address prior testimony. (Def. PX 267-269 Br. at 16) Once a statement is admissible under F.R.E. 801, however, the hearsay rules in F.R. E. 804(b) are irrelevant. See United States v. Truman, 688 F.3d 129, 142 (2d Cir. 2012) ("the requirements of Rule 804 are irrelevant to determining whether testimony is admissible as nonhearsay pursuant to Rule 801"). Under F.R.E. 801(d), party admissions are not hearsay. Accordingly, these statements need not satisfy a F.R.E. 804 hearsay exception to be admissible. Whether or not Defendants had an opportunity to cross-examine declarants when they gave their investigative testimony is thus irrelevant to the admissibility of that testimony.

example, Defendants complain about the following question:  "Were you thinking along those lines either in the morning of the 15th or early afternoon, i.e. do the Bents have sufficient financial resources to make good on credit support?" (Def. PX 267-269 Br. at 14 (quoting (PX 269, Admission 30)  Defendants argue that Crowley's "private musings" do not "relate to her employment duties."  (Id.)  Crowley was clearly an "advisor or other significant participant" in the conversations with the Bents about the credit support agreement, however.  Accordingly, her response to this question is admissible under F.R.E. 801(d)(2)(D).

In order for her statements to be admissible under Rule 801(d)(2)(D), Crowley need only be speaking as to a matter that matches "the subject matter of [her] job description." Aliotta v. Nat'l. R.R. Passenger Corp., 315 F.3d 756, 762 (7th Cir. 2003) (noting advisory committee note to the 1972 Proposed Rules states that "Rule 801(d)(2)(D) admissions can be made 'concerning [ any ] matter within the scope of the . . . employment.'"); see also Penguin Books U.S.A. Inc., 262 F.Supp. 2d at 260 ("[I]n a Fed.R.Evid. 801(d)(2)(C) inquiry, the individual must have had specific permission to speak on a subject, such as a contract as opposed to in a Rule 801(d)(2)(D) inquiry where the individual only had to have general authority of the business area the contract falls under.")  Whether Crowley expressed these thoughts in her discussions with the Bents is a matter that the Defendants can explore on cross-examination, and that goes to the weight of the evidence rather than its admissibility.[7]

---

[7] The same reasoning applies to statements from Arthur Bent's investigative interview, inasmuch as Defendants allege that these statements reflect only his private thoughts.

### 2.    No Conflicting Litigation Position
####        Terminated the Agency Relationship

Defendants also argue that statements from investigative interviews are not admissible because Wells notices[8] served on RMCI and the Bents in December 2008 (Birnbaum Decl., Ex. F), caused the deponents' interests to diverge from Defendants' litigation interests. (Def. PX 267-269 Br. at 15)

The Second Circuit has explained that statements made by a party's agent are not admissible against that party under Rule 801(d)(2)(D) when the party and the agent have "conflicting litigation positions." Vardanyan v. Close-Up Inter., Inc., 2007 WL 4591821, at *2 (E.D.N.Y. Dec. 28, 2007) (citing SEC v. Geon Industries, Inc., 531 F.2d 39, 43 n.3 (2d Cir. 1976)); see also U.S. v. King, 134 F.3d 1173, 1176 (2d Cir. 1998) (noting that "[t]he construction of Rule 801(d)(2)(D) . . . protects a fully distinct entity from having attributed to it the statements of its agent under circumstances of "conflicting litigation positions"").

No such conflicting litigation positions exist here. As an initial matter, Drahzal's deposition was taken in October 2008 (Gehring Decl. Ex., 19), and Lansky's deposition took place in November 2008. (Gehring Decl., Ex. 20). Both of these depositions thus occurred before the December 2008 Wells notices had been served. (Birnbaum Decl., Ex. F, (2008 Wells Notice to RMCI) at 1) The argument that a conflict of interest arose after the Wells notices were served is undermined by the fact that Defendants' counsel represented Arthur Bent, Bonnano, Drahzal, Gareis, and Lentinello in their post-Wells notices investigative testimony and depositions. (See Birnbaum Opp. Decl., Ex. G)

---

[8] The Wells notices informed Defendants that Commission staff was "considering recommending that the Commission bring [an action]" against Defendants and offered them an "opportunity to make a [responsive submission]." (Birnbaum Decl., Ex. F (2008 Wells Notice to RMCI) at 1)

Other than the Wells notices, Defendants make no argument as to how and why the litigation interests of any of the witnesses diverged from the litigation interests of the Defendants at the time of their testimony. All of the declarants were employed by RMCI or Reserv Partners at the time of their testimony, and Arthur Bent and Crowley are employed by the Bents to this day. See Chart, supra pp. 6-7. In sum, Defendants have not demonstrated divergent interests.

Defendants have likewise cited no cases supporting their divergent interests argument. Indeed, all of the cases cited by Defendants involve obvious adverse interests. See Geon Industries, Inc., 531 F.2d at 43 n.3 (where firm and employee had conflicting litigating positions in potential lawsuit, and firm had suspended employee, district court's refusal to consider employee's statements as admissions under F.R.E. 801(d)(2)(D) was proper); Vardanyan, 2007 WL 4591821, at *2 (statements not within agency because declarant was actively encouraging lawsuit against employer); U.S. v. Petraia Maritime Ltd., 489 F.Supp.2d 90, 93 (D.Me. 2007) ("[O]nce the crew members entered into cooperation agreements with the Government, the interests of the individual declarants diverged significantly from that of their employer and their interests, in fact, became adverse.").

In sum, no conflicting litigation position terminated the agency relationship between Defendants and the declarants whose statements are set forth in PX 269.

### 3.    Declarants' Statements Are Admissible Against the Bents

Where an individual defendant controls the entity that employs the declarant, and is the declarant's ultimate supervisor, the employee is an agent of the defendant for purposes of F.R.E. 801(d)(2)(D), and his statements are admissible against that individual defendant. Rioux, 97 F.3d at 660 (statements of declarants admissible against defendant supervisor where they

14

were hired by defendant, served at his pleasure, and received instruction from him) (citing <u>Zaken</u> <u>v. Boerer</u>, 964 F.2d 1319, 1322-23 (2d Cir. 1992) (court admitted statements made by vice president of sales against president of company where declarant was "directly responsible" to the president, who "directed [the company's] operations and . . . made all the financial decisions").

The record shows that the Bents ran RMCI and oversaw its senior staff, who reported to them – either directly or indirectly. <u>See</u> Birnbaum Decl. Ex. Y (Crowley Dec. 22, 2008 Inv. Test. Tr.) at 16 (Crowley reported directly to Bent II); PX 103 at 3,8 (Lansky reported directly to Bent II); <u>id.</u> at 8 (Bonnano reported directly to Lansky, who reported to Bent II); Birnbaum Decl. Ex. DD (Drahzal Nov. 1, 2010 Dep. Tr.) at 30 (Drahzal, Global Head of Sales, reported directly to Bent II); <u>id.</u> Ex. W (Oct. 12, 2010 Gareis Dep. Tr.) at 28 (Gareis reported directly to Bent II as Director of Operations).

Therefore, the statements in PX 269 are admissible against both the Bents and the entities they controlled.

### 4.    **Statements from RMCI's Malpractice Complaint Are Admissible**

Defendants argue that statements from RMCI's Complaint against its former counsel, Willkie Farr & Gallagher, are not admissible.

"Pleadings in other actions may constitute admissions under Federal Rule of Evidence 801(d)(2) 'and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party.'" <u>Zitz v. Pereira</u>, 119 F. Supp. 2d 133, 140 (E.D.N.Y. 1999) (quoting <u>United States v. McKeon</u>, 738 F.2d 26, 31 (2d Cir. 1984)); <u>see also</u> <u>United States v. GAF Corp.</u>, 928 F.2d 1253, 1259 (2d Cir. 1991) (same); <u>Purgess v. Sharrock</u>, 33 F.3d 134, 144 (2d Cir. 1994) (statement made by attorney in brief admissible under F.R.E. 801(d)(2) as party admission). "It is well-established[, however,] that judicial admissions are

limited to statements of fact, and do not include an attorney's legal theories, arguments, or conclusions." Craft v. Covey, No. 5:10-cv-246, 2011 WL 923487 at *4 (D.Vt. Mar. 4, 2011) (citing United States ex rel Miller v. Bill Harbert Int'l Constr., Inc., No. 95-1231 (RCL), 2007 WL 851871, at *1 (D.D.C. Mar.14, 2007)).

        PX 269 contains excerpts from a malpractice complaint in which RMCI alleges that it and the Fund had adverse interests, and that Willkie had a conflict of interest in simultaneously representing both the Fund and RMCI. (PX 269 at 36)   These statements fall squarely within the language of F.R.E. 801(d)(2)(D), because they were made by RMCI's lawyer – as its agent – concerning a matter within the scope of that relationship.

        Defendants argue that judicial admissions are limited to statements of fact, and do not include an attorney's legal theories. While it may be true that "'the doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case,'" Bill Harbert Int'l Constr., Inc., 2007 WL 851871, at *1 (quoting New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 24 (4th Cir.1963)); see also New York State Nat. Org. for Women v. Terry, 159 F.3d 86, 97 n. 7 (2d Cir. 1998) (judicial admissions are statements of fact rather than legal arguments made to a court) (citing M. Graham, Federal Practice and Procedure § 6726 (Interim ed.1992)), the statements the Commission has excerpted from the malpractice complaint are statements of fact rather than legal theory.

        The malpractice complaint excerpts assert that the Willkie firm had a conflict of interest because its clients – RMCI and the Fund – had adverse interests. To say that parties have adverse interests in a given context – for example, where two parties are bidding on the same house – is to make a factual allegation. To say that a law firm had a conflict of interest likewise does not present a "legal theory of the case." The legal theory in RMCI's complaint

against Willkie is that the firm committed malpractice, but the Commission has not sought to introduce excerpts that address RMCI's legal theory against Willkie. The Court concludes that the excerpts in the malpractice complaint are admissible as non-hearsay under F.R.E. 801(d)(2)(D).

### C.    Counter-Designations and Means of Admitting Testimony

To the extent the SEC seeks to introduce any of the statements contained in PX 267, 268, and 269 at trial, they will be read from the witness chair by an individual standing in as the witness. (See July 13, 2012 Tr. at 83)

Defendants have a right to make counter-designations, where fairness demands that excerpts of testimony be put in context. (Id.) See United States v. Mussaleen, 35 F.3d 692, 696 (2d Cir. 1994) ("While Rule 106 applies only to writings, [the Second Circuit] ha[s] previously explained that the rule of completeness is 'substantially applicable to oral testimony, as well' by virtue of Fed.R.Evid. 611(a), which obligates the court to 'make the interrogation and presentation effective for the ascertainment of the truth.'") (quoting United States v. Alvarado, 882 F.2d 645, 650 n.5 (2d Cir. 1989)). Defendants will not be permitted to offer entire declarations, but may cross-designate where necessary to ensure that the excerpts offered by the SEC are fairly understood in context.

Defendants' motion to exclude PX 267, 268, and 269 is denied.

### III.   EVIDENCE RELATING TO VALUATION OF LEHMAN COMMERCIAL PAPER

Defendants seek to preclude the Commission from offering evidence relating to trades in Lehman commercial paper that Defendants were not aware of on September 15-16, 2008. This motion relates principally to two documents: PX 105, which shows Bloomberg screen shots reflecting trades in Lehman paper on September 15 , and PX 149, which is an audio

recording of a telephone conversation between RMCI's Chief Investment Officer Patrick

Ledford and the Bents on September 15, 2008.  The Commission offers this evidence in support

of its claims under Sections 206(1) and (2) of the Investment Advisers Act, arguing that it is

relevant on the issue of Defendants' efforts on September 15 and 16, 2008 to monitor the value

of the Primary Fund's Lehman assets.

   Defendants first argue that this evidence should be excluded as irrelevant, because

the Court has already dismissed the Commission's claim as to Defendants' Lehman valuation.

This argument has been previously rejected.  In opposing a discovery request to produce

documents concerning their efforts to monitor the value of Lehman debt securities, Defendants

argued that this evidence was no longer relevant after the Court's ruling on Defendants' motion

to dismiss the Commission's fraud claims.  (November 29 Order at 9 (Dkt. No. 350))  In

ordering that these documents be produced, the Court ruled that this information was relevant to

the Commission's Advisers Act claim, stating that

> the Commission alleges that Defendants violated Section 206 by failing to
> disclose to the Board that they had not taken appropriate steps to monitor the
> value of Lehman debt securities on September 15 and 16, 2008.  (Sept. 29, 2010
> Joint Ltr. at 6)  Given this allegation, Defendants' efforts to monitor the value of
> Lehman securities on September 15 and 16, 2008 are relevant.
>
> Defendants argue that the Commission is seeking to evade the effect of this
> Court's February 24, 2010 Memorandum Opinion and Order denying Defendants'
> motion to dismiss.  (Sept. 29, 2010 Joint Ltr. at 9)  In that decision, this Court
> ruled that the Commission cannot argue – for purposes of its fraud claims – that
> certain statements about the value of Lehman debt securities made by Bent Sr.
> and other RMCI representatives at the Board's 9:30 a.m. meeting on September
> 15, 2008, constitute false statements of fact.  The Court's ruling was premised on
> evidence demonstrating that "the Board was aware that Defendants were offering
> opinions as to the value of the Lehman debt," and the fact that the Complaint does
> not allege that "Defendants deliberately misrepresented their opinions as to
> valuation."  See February 24, 2010 Memorandum Opinion and Order at 26.  The
> statements at issue in the February 24, 2010 decision were:  "[1] the
> representation by Bent Sr., Bent II and RMCI's CIO . . . that bids for Lehman
> were between '45 to 80' cents on the dollar, and [2] Bent Sr.'s initial

recommendation to the Board . . . that the Lehman debt be valued at par. . . ." <u>See</u>
<u>Id.</u> at 25.  Defendants contend that since the Commission may not rely on these
statements to prove its fraud claim, the Commission is not entitled to discovery
concerning Defendants' efforts to monitor the value of Lehman debt on
September 15 and 16, 2008. (Sept. 29, 2010 Joint Ltr. at 9)  Defendants are
incorrect.

For purposes of its Section 206 claim, the Commission intends to argue not that
Defendants' statements to the Board about the value of Lehman debt were false
statements of fact, but rather that Defendants' statements suffered from material
omissions – specifically, Defendants failed to disclose to the Board that they had
not taken appropriate steps to monitor the value of Lehman debt securities on
September 15 and 16, 2008. (Sept. 29, 2010 Joint Ltr. at 6)  Accordingly, the
Commission's request is granted and Defendants are directed to produce
documents concerning their efforts to monitor the value of Lehman securities
during September 15 and 16, 2008.

(<u>Id.</u> at 9-10)

      For the same reasons, this evidence is admissible at trial in connection with the

Commission's Section 206 claims.

      **A.**     **<u>PX 105</u>**

      Defendants argue that the trades reflected in PX 105 are not the kind of trades that

RMCI was monitoring on September 15 and 16. (Def. Lehman Br. at 3)  Defendants argue that

this information – concerning odd lots and non-institutional trades – was both unavailable and

irrelevant to the Bents on September 15, 2008, and should therefore be precluded as irrelevant.

Defendants point to the testimony of Michael Luciano – portfolio manager for the Reserve – who

explained that he did not have access to such trades and that they were not indicative of pricing

or valuation for an institutional investor such as the Reserve.  (<u>Id.</u>)

      The Court cannot determine as a matter of law that these trades would have been

irrelevant to the Board on the morning of September 15, 2008.  Luciano's testimony regarding

the significance of these trades goes to the weight of the evidence, which is a question for the jury.[9]

Defendants argue that if PX 105 is admitted, the pricing information it contains should be redacted. The SEC has not explained why the pricing information is relevant or why a redaction would be inappropriate. Accordingly, PX 105 will be admitted only in redacted form.

**B.    PX 149**

PX 149 – a recorded call between the Bents and RMCI Chief Investment Officer Ledford – is relevant for the same reason: it speaks to whether Defendants took appropriate steps to monitor the value of Lehman debt securities on September 15 and 16, 2008.[10] Bent Sr. has testified that he relied on Ledford to report developments in the market and to provide market information about whether a credit support agreement would be viable. (Birnbaum Decl., Ex. J (Bent Sr. Dep. Tr.) at 66-67; Ex. P (Bent Sr. Inv. Test. Tr.) at 89) Because Bent Sr. had "no electronic access to market information" (PX 86 at 22 n.75), he relied on Ledford for this information. Defendants have thus claimed that they monitored the market's valuation of Lehman paper through Ledford, as supervised by Bent Sr. from Italy. In this call, the Bents and Ledford discuss how to value Lehman paper based on the information that Ledford is gathering. This call is relevant to the jury's determination of whether the Bents met their obligations under the Investment Adviser's Act.

---

[9] Defendants also argue that PX 105 should be excluded because it was not produced until 2012 and contains no identifying information. PX 105 was used by the Commission at summary judgment, however. Moreover, it consists of publicly available material. Finally, Defendants have marked as trial exhibits screenshots (DX 42-44) that were not produced in discovery. Defendants' arguments are therefore rejected.

[10] Defendants seek to preclude PX 149. (Def. Lehman Br. at 6) The SEC responds by making arguments about the admissibility of PX 151. PX 151 is a call between Bent Sr. and Ledford which later becomes a conference call with a majority of the Board. The arguments that the SEC makes in its brief are nonetheless applicable to PX 149.

Defendants' motion to exclude evidence relating to trading in Lehman paper is denied.

## IV.    EVIDENCE OF THE BENTS' PERSONAL WEALTH

Defendants seek to preclude evidence of the Bents' personal wealth.

The Commission will not be permitted to introduce evidence of the Bents' financial condition unless the Bents put their wealth at issue by, for example, arguing that "no one in the world could have believed" that the Bents had sufficient assets to support the Fund's $1.00 NAV. Defendants have stated that they will not pursue this strategy at trial. (July 13, 2012 Tr. at 69) (Court: "To the extent you intend to go down the road of 'no one in their right mind would have thought,' then it tends to open the door to an exploration of what their wealth actually is. . . . Ms. Jacobs: "We don't intend to go down that road.")

The Commission argues, however, that the Bents' financial resources are "plainly relevant to whether they could have truly meant . . . that 'sufficient capital could be made available' to support the Primary Fund . . . and that they planned to support the Fund 'to whatever degree is required.'" (SEC Wealth Opp. Br. at 1) The Bents have offered to stipulate that they did not have enough money of their own on September 15 and 16, 2008, without accessing RMCI's resources, to support the Fund's $1.00 NAV. The Commission appears to have accepted this stipulation. (Id. at 3-4) Accordingly, Defendants' motion to preclude evidence of the Bents' wealth is granted on the condition that (1) the Bents make no argument at trial suggesting that no reasonable person could have believed that they had sufficient wealth to support the Fund's $1.00 NAV; and (2) the Bents stipulate at trial that they did not have the resources necessary to support the Fund's $1.00 NAV on September 15 and 16, 2008.

V.     **GROUP PLEADING**

Defendants ask the Court to direct the Commission "not to engage in improper group pleading" at trial.  (Def. Pleading Br. at 3-4)

Where use of the term "Defendants" could be misleading, the Commission is directed not to use that term.  To the extent Defendants seek instructions during trial, or in the jury charge, concerning proof that is being, or has been, offered against fewer than all of the Defendants, they are welcome to submit proposed instructions for the Court's consideration.

**CONCLUSION**

Defendants' motions in limine (Dkt. Nos. 477, 483, 489, 491, 495) are granted in part and denied in part, as set forth above.  The SEC's motion in limine No. 3 (Dkt. No. 503) is granted to the extent it seeks admission of statements of Defendants, their employees, and their agents.

The Clerk of the Court is directed to terminate the motions (Dkt. No. 477, 483, 489, 491, 495).

Dated:  New York, New York
        October 3, 2012

SO ORDERED.

Paul G. Gardephe
United States District Judge

22