*Docket + File*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/8/12__

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | **ECF CASE**<br><br>**JURY CHARGE**<br><br>09 Civ. 4346 (PGG) |

November 7, 2012

I.      GENERAL INSTRUCTIONS ................................................................................. 4

   A.     Introductory Remarks ................................................................................ 4

   B.     Role of the Court ....................................................................................... 4

   C.     Role of the Jury ......................................................................................... 5

   D.     Role of Counsel .......................................................................................... 5

   E.     Sympathy or Bias ....................................................................................... 6

   F.     Burden of Proof .......................................................................................... 6

   G.     What Is and Is Not Evidence ..................................................................... 7

   H.     Direct and Circumstantial Evidence .......................................................... 9

   I.     Witness Credibility .................................................................................. 10

   J.     Prior Inconsistent Statements .................................................................. 11

   K.     Bias of Witnesses .................................................................................... 12

   L.     Opinion Testimony .................................................................................. 12

   M.     Persons Not on Trial ................................................................................ 13

II.     INSTRUCTIONS AS TO SPECIFIC CLAIMS ............................................... 13

   A.     Overview .................................................................................................. 13

   B.     Section 10(b) and Rule 10b-5 Claims (First Claim for Relief).................. 14

      1.      "Device, Scheme, or Artifice to Defraud"; Course of Business Operating as a
      Fraud… ....................................................................................................... 17

      2.      "In Connection With" ......................................................................... 18

      3.      "Material Fact" .................................................................................. 19

      4.      Scienter ............................................................................................. 20

      5.      Aiding and Abetting Section 10(b) and Rule 10b-5 Violations ................. 21

   C.     "Control Person" Liability under Section 20(a)........................................ 24

      1.      "Good Faith" Defense to Control Person Liability ................................. 26

   D.     Section 17(a) Claim (Third Claim for Relief)........................................... 27

   E.     Investment Advisers Act Claims (Fourth-Seventh Claims for Relief) ........................ 31

      1.      "Investment Adviser" ......................................................................... 31

      2.      Section 206(1) and (2) of the Investment Advisers Act .......................... 32

      3.      Aiding and Abetting Section 206(1) and (2) Violations........................... 34

      4.      Section 206(4) of the Advisers Act and SEC Rule 206(4)-8.................... 34

      5.      Aiding and Abetting Section 206(4) and Rule 206(4)-8 Violations........................ 37

III.    General instructions on Corporate and Agency liability................................ 38

IV.     General instructions on Evidence Admitted for A Particular Purpose ............ 39

V.      Affirmative Defense – Advice of Counsel................................................... 40

VI.   Final general instructions ................................................................................. 42

   A.   Right to See Exhibits and Hear Testimony; Communications With Court ................... 42

   B.   Duty to Deliberate/Unanimous Verdict ....................................................... 43

   C.   Verdict Form ................................................................................................ 44

   D.   Duties of Foreperson .................................................................................. 44

   E.   Announcing the Verdict ............................................................................... 44

VII.   CONCLUSION ........................................................................................... 45

I.      **GENERAL INSTRUCTIONS**

    A.      **Introductory Remarks**

       Members of the jury, I will now instruct you as to the law that governs this case. You have been handed a copy of the instructions I will read.  You should feel free to read along or to just listen to me.  You will be able to take your copy of the instructions into the jury room.

       You have heard all of the evidence in the case as well as the final arguments of the parties.  It has been obvious to everyone in the courtroom that you have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

       There are three parts to these instructions.  First, I'll give you general instructions about your role, and about how you are to go about deciding the factual issues in this case. Second, I'll give you instructions concerning the law applicable to this particular case.  Third, I'll give you final instructions about procedure.

       It is important that you listen carefully.  I'm reading these instructions from a prepared text because the law is made up of words, and those words are very carefully chosen. This is not a time to <u>ad lib</u>.  So when I tell you what the law is, it is critical that I use exactly the right words.

    B.      **Role of the Court**

       My duty is to instruct you on the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.  You must not substitute your own notions or opinions of what the law is or ought to be.

### C.      Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You decide what happened.  You must determine the facts based solely on the evidence received in this trial.  Any opinion I might have regarding the facts is of absolutely no consequence.

### D.      Role of Counsel

The personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed an opinion of any kind as to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, that should not enter into your deliberations.

From time to time, the lawyers and I had conferences at the bench and other conferences out of your hearing.  These conferences involved procedural and evidentiary matters, and should not enter into your deliberations at all.

Lawyers have a duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible.  It is my job to rule on those objections.  Why an objection was made is not your concern.  You should not draw any inference simply from the fact that a lawyer objects to a question.  If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you may consider the testimony or exhibit just as you would any other evidence in the case.

### E.       Sympathy or Bias

You must evaluate the evidence calmly and objectively, without prejudice or sympathy.  You must be completely fair and impartial.  Your verdict must be based solely on the evidence presented at this trial, or the lack of evidence.  Our system of justice cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You may not consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or witness.  You must regard the parties as of equal standing in the community, and of equal worth.  All parties are entitled to the same fair trial at your hands.  They stand equal before the law, and are to be dealt with as equals in this court.

The plaintiff is in this case is, as you know, the Securities and Exchange Commission or "SEC," an agency of the federal government.  Two of the defendants – Reserve Management Company, Inc., which I will refer to as "RMCI," and Resrv Partners, Inc. – are corporations.  The two other defendants – Bruce Bent Sr. and Bruce Bent II – who I will refer to as Bent Sr. and Bent II – are individuals.  The mere fact that the SEC is an agency of the federal government does not entitle it to any greater or lesser consideration by you.  Similarly, the fact that RMCI and Resrv Partners are corporations entitles these defendants to no greater or lesser consideration by you.  All litigants stand equal before the law, and government entities and corporations are entitled to the same fair consideration you would give any other party.

### F.       Burden of Proof

The SEC – as the plaintiff in this case – has the burden of demonstrating each element of its claims by a preponderance of the evidence.

To establish by a preponderance of the evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than the evidence opposed to it.  A preponderance of the evidence means the greater weight of the evidence.  The difference in persuasiveness need not be great:  it requires only that you find that the scales tip, however slightly, in favor of the party with the burden of proof – that what the party with the burden of proof claims is more likely than not true.  If you find that the credible evidence as to a particular issue is evenly divided, you must decide that issue in favor of the party that does not have the burden of proof.

What is important here is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of the exhibits that party introduced, or the length of time that party spent on a particular subject.  In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all of the witnesses and all of the exhibits, regardless of who introduced this evidence.  Simply because I have permitted certain evidence to be introduced does not mean that I have decided that it is important or significant.  That is for you to decide.

### G.   <u>What Is and Is Not Evidence</u>

In determining the facts, you must rely upon your recollection of the evidence. The evidence in this case includes the testimony of the witnesses and the exhibits received in evidence, as well as certain "stipulations" or agreements as to facts entered into by the parties. You have also heard excerpts from declarations submitted to the Court and testimony from depositions and other proceedings.  As I told you during the trial, this earlier testimony was given under oath and should be treated by you just like testimony given from the witness stand

here in the courtroom.  Where the parties have stipulated, or agreed, that certain facts are true, you must accept those facts as true during your deliberations.

By contrast, you are not to consider questions asked by the lawyers as evidence. It is the witnesses' answers that are evidence, not the questions.  The questions are significant only insofar as they put the answers in context.

From time to time, I asked witnesses questions.  You should draw no inference from that.  My questions were only intended for clarification or to expedite matters and were not intended to suggest any opinion on my part as to whether any witness was more or less credible than any other witness, or any view as to what your verdict should be.

When I struck or excluded testimony, you may not consider that testimony in rendering your verdict.

To constitute evidence, exhibits must first be received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

Arguments by the lawyers are also not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their closing arguments may help you understand the evidence and assist you in reaching a verdict, but these arguments are not evidence.  Moreover, if your recollection of the evidence differs from the statements made by the lawyers in their arguments to you, it is your recollection that controls.

Finally, any statements that I may have made during the trial do not constitute evidence.  Similarly, the rulings I have made during the trial, as well as any statements I may have made during the trial, are not any indication of my views of what your decision should be. The decision here is for you alone.

8

It is for you alone to decide what weight, if any, should be given to the testimony and the exhibits received in evidence in this case.

### H.        Direct and Circumstantial Evidence

Generally, there are two types of evidence that you may consider in reaching your verdict.

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something seen, felt, touched, or heard.  For example, if a witness were to testify that when he or she left home this morning, it was raining, that would be direct evidence about the weather.  Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts.  For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella, which was dripping wet.  Then a few minutes later another person entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But based on the facts that I have asked you to assume, you could conclude that it had been raining.

That is all there is to circumstantial evidence.  On the basis of reason, experience and common sense, you infer from one established fact the existence or non-existence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven.  Many material facts – such as what a

person was thinking or intending– are rarely easily proven by direct evidence.  Often such facts are established by circumstantial evidence.

Circumstantial evidence is of no less value than direct evidence.

## I.      Witness Credibility

You should evaluate the credibility or believability of the witnesses by using your common sense.  Common sense is your greatest asset as a juror.  Ask yourself whether the witness appeared honest, open and candid.  Did the witness appear evasive or as though he or she was trying to hide something?  How did the witness's responsiveness on direct examination compare to that witness's responsiveness on cross-examination?

If you find that any witness has lied under oath at this trial, you should view the testimony of that witness cautiously and weigh it with great care.  It is for you to decide, however, how much of the witness's testimony, if any, you wish to believe.  Few people recall every detail of every event precisely the same way.  A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects.  It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all or to accept some and reject the balance of that witness's testimony.

In sum, it is up to you to decide whether the testimony of a witness is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, you give to the testimony of that witness.

In evaluating the testimony of any witness, you may consider, among other things:

-        the witness's intelligence;

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case, including testimony from other witnesses and the exhibits that have been received in evidence.

**J.      Prior Inconsistent Statements**

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of prior allegedly inconsistent statements was introduced to help you decide whether to believe the trial testimony of a witness.  If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with an insignificant detail; whether the witness had an explanation for the inconsistency, and whether that explanation accords with your common sense.

It is exclusively your decision, based upon all the evidence and your own good judgment, whether the prior statement was inconsistent, and if so how much weight, if any, to give the inconsistent statement in determining whether to believe all, or part, of the witness's testimony.

### K.    Bias of Witnesses

In deciding whether to believe a witness, you should consider any evidence that the witness is biased in favor or against one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party. You should also take into account any evidence that a witness may benefit in some way from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color the witness's testimony. If you find that a witness is biased, you should view the witness's testimony with caution, weigh it with great care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in the outcome of this case does not mean that the witness has not told the truth. It is for you to decide from your observations and applying your common sense and experience whether the possible interest of any witness has intentionally or otherwise colored or distorted that witness's testimony. You are not required to disbelieve a witness with an interest in the outcome of this case; you may accept as much of that witness's testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### L.    Opinion Testimony

I permitted Professor Richard Painter to express opinions about certain matters that are at issue in this case. Professor Painter offered opinions concerning, among other things, the financial crisis that followed the announcement by Lehman Bros. that it would file a bankruptcy petition, and the historical context for this event. Professor Painter was permitted to give opinion testimony because he possesses specialized knowledge as a result of his education,

12

training, and work experience.  In weighing Professor Painter's testimony, you may consider his qualifications, the reasons he gave for his opinions, and the reliability of the information supporting those opinions, as well as all the factors I have previously mentioned for evaluating witness testimony.  In evaluating Professor Painter's testimony, you may consider the compensation he received in connection with this case as well as the compensation he receives generally from offering opinion testimony.[1]  To the extent you find Professor Painter's opinion testimony credible and reliable, you may rely on it.  To the extent you do not, you need not rely on his testimony.  Opinion testimony should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

### M.  Persons Not on Trial

You must not draw any inference, favorable or unfavorable, towards the SEC or the Defendants on trial, from the fact that any person in addition to the Defendants was not named as a defendant in this case or any other case or was not tried with the Defendants in this case.  Those matters are outside your concern.  You must decide whether Defendants violated the federal securities laws as I will explain those laws to you.  You are only to decide the issues before you based on the evidence presented in this courtroom.

## II.  INSTRUCTIONS AS TO SPECIFIC CLAIMS

### A.  Overview

I will now turn to the law that applies to the specific claims in this case.  In these instructions you will hear me use the word "security."  The term "security," for purposes of the SEC's claims in this case, refers to shares in the Primary Fund.

---

[1]  Based on Model Civil Jury Instructions for the District Courts of the Third Circuit, Instruction 2.11 (2011) and Pattern Jury Instructions of the District Judges Association of the Fifth Circuit, Civil Cases, Instruction No. 2.19 (2009).

The SEC alleges that Defendants RMCI, Resrv Partners, Bent Sr., and Bent II violated three federal statutes, as well as certain rules that the SEC has adopted under those statutes.  The three federal statutes at issue are the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940.[2]  The SEC claims that, in violation of these statutes and certain rules issued pursuant to these statutes, the Defendants made, or caused to be made, a number of false and misleading statements, or made or caused to be made statements that omitted facts that were required to be stated in order to make what was stated not misleading.  The Defendants deny that they made or caused to be made any false or misleading statements, and further deny that they violated any federal statute or SEC rule.

You should be aware that you will be asked to make a separate determination as to each defendant and as to each of the SEC's claims.  Accordingly, you will be required to separately consider what the SEC's claims are against each defendant, and what the evidence is as to each defendant and as to each claim.  Keep in mind that, in order to prevail, the SEC must prove each element of its claims by a preponderance of the evidence.

You will not be asked to determine what legal relief the SEC is entitled to if you determine that it has met its burden as to one or more of its claims.  What relief might later be awarded in this case should play no role in your determinations.[3]

B.   **Section 10(b) and Rule 10b-5 Claims (First Claim for Relief)**

In its First Claim for Relief, the SEC alleges that Defendants RMCI, Resrv Partners, and Bent II violated Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5. I will refer to these claims as the Section 10(b) and Rule 10b-5 claims.

---

[2]  Based on ABA, Model Jury Instructions: Securities Litigation § 1.07, at 11 (1996) [hereinafter ABA Model Jury Instructions].
[3]  Based on Plaintiff's Request to Charge 7; Defendants' Request to Charge 59.

The SEC claims that RMCI, Resrv Partners, and Bent II violated Section 10(b) and Rule 10b-5 by making and by causing to be made false and misleading statements to the investing public, ratings agencies such as Standard & Poors ("S&P") and Moody's, broker-dealers, and others concerning RMCI and the Bents' willingness and ability to protect the Primary Fund's $1.00 Net Asset Value ("NAV") to whatever degree necessary, without disclosure of alleged limitations on, and conditions to, RMCI's and the Bents' willingness and ability to support the $1.00 NAV.  According to the SEC, these statements and omissions include:

    (1) statements made to the public based on and authorized by Bent II's September 15, 2008 1:19 p.m. email (the "1:19 email") in which he stated: "We (Reserve Management Company Inc.) intend to protect the NAV on the Primary Fund to whatever degree is required.  We have spoken with the SEC and are waiting [for] their final approval which we expect to have in a few hours.  You may communicate this to clients on an as needed basis.";

    (2) statements made to the public based on media "talking points" allegedly approved by Bent II; and

    (3) statements made to the public based on the <u>Reserve Insights</u> piece or through transmission of the <u>Reserve Insights</u> piece itself.

The SEC claims that RMCI and Resrv Partners are also liable under Section 10(b) and Rule 10b-5 based on Patrick Ledford's alleged false and misleading statements to Moody's on September 15, 2008 concerning the Primary Fund's satisfaction of redemption requests on September 15, 2008.

With respect to its claims under Section 10(b) and Rule 10b-5, the SEC must prove by a preponderance of the evidence that the defendant you are considering:

    (1)    in connection with a purchase of a security:

(a) either employed a device, scheme, or artifice to defraud;[4]

(b) made an untrue statement of a material fact or failed to state a material fact that was necessary to prevent the statements that were made from being misleading under the circumstances; **or**

(c) engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person; **and**

(2)   acted with scienter – that is, acted knowingly with intent to defraud or with reckless disregard for the truth.[5]

For purposes of its Section 10(b) and Rule 10b-5 claims, the SEC need not establish all three types of unlawful conduct in connection with the purchase of Primary Fund shares.  Proof of any one of these three types by a preponderance of the evidence is sufficient. You must be unanimous as to which type of unlawful conduct was committed by a particular defendant, however.  Unless you all agree that the SEC has proven one of the types of unlawful conduct by a preponderance of the evidence, you must find in favor of the defendant you are considering.[6]

I have used the phrase "made or caused to be made."  The SEC need not prove that the defendant you are considering personally made false and misleading statements, or omitted material facts.  It is sufficient if the SEC establishes that the defendant caused the dissemination of the misleading statement.[7]

---

[4]  Defendants argue that the SEC has only offered evidence of false and misleading statements, and has not offered evidence of a scheme to defraud or a course of business that operated as a fraud.  See Defendant's Objections to SEC's Requests to Charge, at 56.  The evidence here goes beyond mere misrepresentations.  Cf. SEC v. Stoker, 2012 WL 2017736, at *10 (S.D.N.Y. June 6, 2012); In re Alstom SA SEC. Litig., 406 F.Supp.2d 433, 475 (S.D.N.Y. 2005).

[5]  4 Sand et al., Model Federal Jury Instructions (Civil), Instructions 82-3 & 82-8 (2011); ABA Model Jury Instructions § 4.02, at 80.

[6]  Based on charge in United States v. Vilar, 05-cr-621 (RJS) (S.D.N.Y. Nov. 13, 2008)

[7]  Based on charge in SEC v. Stoker, 11-cv-7388 (JSR) (S.D.N.Y. July 31, 2012), Dkt. No. 89.

I will now define a number of the terms I just used, including "device, scheme or artifice to defraud"; "in connection with"; "material fact"; and "scienter."

### 1. "Device, Scheme, or Artifice to Defraud"; Course of Business Operating as a Fraud

A "device, scheme or artifice to defraud" is merely a plan for the accomplishment of a fraudulent objective. Fraud is a general term which embraces all efforts and means that individuals devise to take advantage of others by deception. The law that RMCI, Resrv Partners, and Bent II are alleged to have violated prohibits all kinds of manipulative and deceptive acts. The fraudulent or deceitful conduct alleged need not relate to the investment value of the Primary Fund shares involved in this case.

In order to prove that RMCI, Resrv Partners, or Bent II engaged in a device, scheme, or artifice to defraud, or engaged in a course of business that operated or would operate as a fraud, the SEC must prove, by a preponderance of the evidence, that the defendant engaged in deceptive conduct that went beyond the use of material misrepresentations or material omissions. Misrepresentations or omissions can form part of a fraudulent scheme or fraudulent course of business, but they are not sufficient, standing alone, to establish a device, scheme, or artifice to defraud, or a course of business that operated, or would operate, as a fraud.[8]

It is no defense to a scheme to defraud allegation that the defendant under consideration was not involved in the scheme from its inception or played only a minor role that involved no direct contact with purchasers of Primary Fund shares. It is sufficient if the defendant participated in the scheme or fraudulent conduct that involved the purchase of Primary Fund shares.

---

[8] Based on charge in <u>SEC v. Stoker</u>, 11-cv-7388 (JSR) (S.D.N.Y. July 31, 2012), Dkt. No. 89, at 15.

2. **"In Connection With"**

You need not find that the defendant you are considering actually participated in a securities transaction if the defendant was engaged in fraudulent conduct that was "in connection with" a purchase of Primary Fund shares. "In connection with" is broadly and flexibly defined[9], and it is sufficient if the alleged fraudulent conduct coincided with a purchase of Primary Fund shares.[10]

Accordingly, the "in connection with" aspect of this element is satisfied if you find that there was some nexus or relation between RMCI, Resrv Partners, and/or Bent II's allegedly fraudulent conduct and the purchase of Primary Fund shares. This "nexus" between the alleged fraudulent conduct and a purchase may be satisfied where someone bought Primary Fund shares during the period of allegedly fraudulent conduct.[11]  It is undisputed here that purchases of Primary Fund shares were made during the period of allegedly fraudulent conduct – that is, on September 15 and 16, 2008.

---

[9]  See SEC v. Zandford, 535 U.S. 813, 819 (2002) ("in connection with" requirement "should be 'construed "not technically and restrictively, but flexibly to effectuate its remedial purposes."'" (quoting Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 151 (1972) (quoting SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195 (1963)))); see also SEC MIL No. 1 Order (Dkt. No. 565) at 8 (noting that "in connection with" requirement "has . . . been liberally construed").

[10]  See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006) ("[I]t is enough that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by someone else." (citing United States v. O'Hagan, 521 U.S. 642, 651 (1997)).

[11]  See SEC MIL No. 1 Order (Dkt. No. 565) at 9 ("[I]n an action brought by the SEC, the nexus between the fraud and a purchase or sale may be satisfied so long as 'someone buy[s] or sell[s] the security during the period of allegedly fraudulent conduct.'") (quoting 8 Louis Loss & Joel Seligman, Securities Regulation 3721 (3d ed. 2004)); see also Dabit, 547 U.S. at 85 ("The requisite showing . . . is 'deception "in connection with the purchase or sale of any security," not deception of an identifiable purchaser or seller.'") (quoting O'Hagan, 521 U.S. at 658); United States v. Russo, 74 F.3d 1383, 1391-92 (2d Cir. 1996) (noting Supreme Court's "expansive approach" to Rule 10b-5's "in connection with" requirement) (citing Superintendent of Ins. v. Bankers Life & Casualty Co., 404 U.S. 6, 11 n. 7, 12 (1971)).

18

You should be aware that liability under Section 10(b) and Rule 10b-5 cannot be predicated on communications that allegedly fraudulently persuaded investors not to redeem their Primary Fund shares.[12]

### 3.      "Material Fact"[13]

If you find that the SEC has proved by a preponderance of the evidence that a statement was false or a fact was omitted that was required to be stated in order to make what was stated not misleading, you must next determine whether the fact misstated or omitted was "material" under the circumstances.  A fact is "material" if there is a substantial likelihood that a reasonable investor would have considered it important in deciding whether to buy Primary Fund shares.  An omission is "material" if there is a substantial likelihood that a reasonable investor would have viewed the disclosure of that fact as significantly altering the total mix of information available to someone deciding whether to buy Primary Fund shares.  Materiality must be assessed on the basis of the circumstances existing at the time Primary Fund shares were offered for investment, rather than by hindsight.

Because the law forbids the making of material misrepresentations or material omissions in such circumstances, it does not matter whether the investors to whom they were made were sophisticated or unsophisticated.  The SEC also need not establish that the alleged unlawful conduct was successful – in other words, the SEC need not prove that investors to whom the misleading statements were made actually bought Primary Fund shares.  Finally, it

---

[12]  See SEC MIL No. 1 Order (Dkt. No. 565) at 9 ("[U]nder Section 10(b), 'the requirement of fraud in connection with the purchase or sale of a security is not satisfied by an allegation that plaintiffs were induced fraudulently not to sell their securities.'") (quoting Abrahamson v. Fleschner, 568 F.2d 862, 868 (2d Cir. 1977)); see also SEC v. Northshore Asset Mgmt., No. 05 Civ. 2192(WHP), 2008 WL 1968299, at *8 (S.D.N.Y. May 5, 2008) (same).

[13]  Based on charge in United States v. Villar, 05-cr-621 (RJS) (S.D.N.Y. 2008).

does not matter whether the defendant under consideration profited or received any benefit as a result of the misleading statements.

   To satisfy this element, and to prevail on its claims under Section 10(b) and Rule 10b-5, the SEC need not show that a reasonable Primary Fund investor would have made a different purchasing decision if there had been no allegedly misleading statements or omission. Nor is the SEC required to prove that any investor actually relied on one or more of the allegedly misleading statements or omissions in making a decision to purchase Primary Fund shares.  Nor is the SEC required to show that one or more of the allegedly misleading statements or omissions caused an investor to lose money.  To establish materiality, the SEC must only show that there is a substantial likelihood that a reasonable investor in the Primary Fund would have considered the allegedly misleading statement or omission important in making the decision to purchase Primary Fund shares.

   **4.**  **<u>Scienter</u>**[14]

   The SEC must also establish by a preponderance of the evidence that the defendant you are considering acted with "scienter" – that is, acted knowingly with intent to defraud or with reckless disregard for the truth.  The question of whether a person acted with scienter is a question of fact for you to determine, like any other fact question.  This question requires you to make a determination as to one's state of mind at the time a statement was made, rather than with the benefit of hindsight.

   Here, for purposes of establishing scienter as to RMCI and Resrv Partners, the SEC is relying on evidence concerning the Bents and on Patrick Ledford's statement to Moody's about the payment of redemption requests.

---

[14]  Based on charge in <u>United States v. Villar</u>, 05-cr-621 (RJS) (S.D.N.Y. 2008)

"Intent to defraud," in the context of the securities laws, means to act knowingly and with the intent to deceive.  A person acts "knowingly" when he acts intentionally and deliberately, rather than mistakenly or inadvertently.  A person acts "recklessly" when he engages in conduct that involves an extreme departure from the standard of ordinary care, such that the risk of misleading investors was either known to the defendant or so obvious that the defendant must have been aware of it.  In the context of securities law, a person acts recklessly if he makes a false statement with reckless disregard for whether a statement is true or false or, in the case of omissions, makes a statement with reckless disregard for the material nature of those omissions.

Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required. A person's subjective intent and knowledge may be established through circumstantial evidence, including evidence of the person's words, conduct, and acts; the surrounding circumstances; and the rational or logical inferences that may be drawn therefrom.

## 5.   Aiding and Abetting Section 10(b) and Rule 10b-5 Violations (First Claim for Relief)

I have just described to you what the SEC must prove in order to demonstrate that a defendant has committed a direct or "primary" violation of Section 10b and Rule 10b-5.

In connection with its First Claim for Relief, however, the SEC also alleges that Bent II aided and abetted RMCI's and Resrv Partners' alleged primary violation of Section 10(b) and Rule 10b-5, and that Bent Sr. aided and abetted Bent II, RMCI and Resrv Partners' alleged Section 10(b) and Rule 10b-5 violations.

Section 20(e) of the Securities Exchange Act provides that "any person that knowingly provides substantial assistance to another person in violation of a provision of [the Securities Exchange Act] . . . shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided."[15]  Accordingly, it is not necessary for the SEC to prove that a defendant <u>directly</u> committed a violation of Section 10(b) and Rule 10b-5 for you to find that defendant liable for aiding and abetting another defendant's violation of Section 10(b) and Rule 10b-5.

You may find Bent II or Bent Sr. liable for aiding and abetting if you find by a preponderance of the evidence that the SEC has proved:

(1)     that one or more of the Defendants violated Section 10(b) and Rule 10b-5;

(2)     that Bent II or Bent Sr. provided substantial assistance to that violation; **and**

(3)     that Bent II or Bent Sr. acted with knowledge[16] of the fraud.

Accordingly, in order to find Bent II liable for aiding and abetting a violation of Section 10(b) and Rule 10b-5, you must first find that either RMCI or Resrv Partners committed a violation of these provisions.

And, in order to find Bent Sr. liable for aiding and abetting a violation of Section 10(b) and Rule 10b-5, you must first find that RMCI, Resrv Partners or Bent II committed a violation of these provisions.

I have already instructed you on the elements that the SEC must prove to establish a violation of Section 10(b) and Rule 10b-5.

---

[15]  15 U.S.C. § 78t(e).

[16]  "The Dodd–Frank Act of 2010 amended Section 20(e) to add the words 'or recklessly' after 'knowingly.' . . . . [T]his amendment does not apply [retroactively]."  <u>SEC v. Apuzzo</u>, 689 F.3d 204, 211 (2d Cir. 2012).

In arguing that Bent II and Bent Sr. are liable for aiding and abetting violations of Section 10(b) and Rule 10b-5, the SEC is relying on the same alleged misstatements and omissions that it relied on for the primary violations, with one difference.  The SEC is alleging that Bent Sr. and Bent II are liable for aiding and abetting RMCI's alleged violation of Section 10(b) and Rule 10b-5 in connection with Patrick Ledford's September 15, 2008 statement to Moody's concerning the Primary Fund's payment of redemption requests that day.

As I have stated, in order to find Bent II or Bent Sr. liable for aiding and abetting, you must find that Bent II or Bent Sr. "substantially assisted" RMCI or Resrv Partners in violating Section 10(b) and Rule 10b-5.  To establish this element, the SEC must prove – by a preponderance of the evidence – that Bent II or Bent Sr.'s conduct was a substantial causal factor in the primary violation committed by RMCI or Resrv Partners.  The SEC must demonstrate that Bent Sr. or Bent II associated himself with the unlawful venture, participated in it as something that he wished to bring about, and sought by his actions to make it succeed.

Bent II or Bent Sr.'s conduct does not have to have been the only cause of the violation.  Moreover, inaction or the failure to act may be a form of substantial assistance if you find that it was intended to aid the violation or if the defendant had a duty to act.  In deciding whether the assistance was substantial, you may consider (1) the nature of the violation, (2) the amount and kind of assistance that the defendant provided to the violation, (3) whether the defendant was present when the violation occurred, (4) the relationship between the defendant and the primary violator, (5) the state of mind of the defendant, and (6) how long he provided

assistance to the primary violator.[17]

### C.    "Control Person" Liability under Section 20(a) (Second Claim for Relief)[18]

In its Second Claim for Relief, the SEC alleges that Bent Sr. and Bent II are liable as "control persons" under Section 20(a) of the Securities Exchange Act for RMCI's alleged violations of Section 10(b) and Rule 10b-5.  An individual defendant cannot be found liable under both Section 10(b) and Section 20(a) for the same misstatement or omission.  Thus, you should only consider whether an individual defendant is secondarily liable as a controlling person with regard to a particular misstatement or omission if you find that with regard to that statement or omission RMCI violated Section 10(b) but the individual defendant did not.

In its Second Claim for Relief, the SEC is relying on the same alleged misstatements and omissions that it relies on for aiding and abetting liability, which I just described.  The SEC claims that Bent Sr. and Bent II are liable for RMCI's alleged violations because they "controlled" RMCI.

I will now explain to you what it means for a defendant to control a direct violator of the securities laws.

Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable" under Section 10(b) or Rule 10b-5 "shall also be liable . . . to the same extent as such controlled person . . . ."[19]  A "person" for purposes of Section 20(a) also includes a corporation such as RMCI.  This means that to establish liability under Section 20(a), the SEC must first prove a violation of Section 10(b) and Rule 10b-5 by RMCI, the entity that Bent Sr. and Bent II allegedly controlled.

---

[17]  Based on Plaintiff's Request to Charge 30; Defendants' Requests to Charge 42-44.

[18]  Based on charge in In re Vivendi Universal, S.A. Sec. Lit., No. 02-cv-5571(RJH) (S.D.N.Y.).

[19]  15 U.S.C. § 78t(a)

Section 20(a) broadly defines control.  The following are accepted definitions of "control" under Section 20(a):  any "indirect means of discipline or influence short of actual direction,"[20] or an "ability to exert influence, directly or indirectly, over the decision making process of another,"[21] or "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[22]

To establish control-person liability, the SEC must also prove that Bent Sr. or Bent II "culpably participated" in RMCI's alleged violation of Section 10(b) and Rule 10b-5.[23] To establish that an individual defendant was a "culpable participant" in a primary violation, the SEC must prove that the individual defendant acted with knowledge that – or should have known that – RMCI was engaging in fraudulent or deceptive conduct but did not take steps to prevent it. In the case of alleged inaction, the SEC must show that the defendant's inaction was deliberate and done intentionally to further the fraud or deception.[24]

To summarize, to prevail on its Second Claim for Relief, the SEC must prove by a preponderance of the evidence that:

(1)     RMCI committed a violation of Section 10(b) and Rule 10b-5;

(2)     Bent Sr. or Bent II directly or indirectly controlled RMCI; and

---

[20]   Sennott v. Rodman & Renshaw, 414 U.S. 926, 929 (1973).
[21]   O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions: Civil § 162.222 (2012).
[22]   SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1473 (2d Cir. 1996).
[23]   First Jersey Sec., Inc., 101 F.3d at 1472 (requiring for control person liability that a defendant was 'in some meaningful sense [a] culpable participant[ ] in the fraud perpetrated by [the] controlled person[ ]" (quoting Gordon v. Burr, 506 F.2d 1080, 1085 (2d Cir. 1974)).
[24]   Based on ABA Model Jury Instructions § 4.03[1]; charge in In re Vivendi Universal, S.A. Sec. Lit., No. 02-cv-5571(RJH) (S.D.N.Y.).

(3)     Bent Sr. or Bent II was a culpable participant in the fraud perpetrated by RMCI.[25]

**1.      "Good Faith" Defense to Control Person Liability**[26]

Section 20(a) expressly provides a defense if the controlling person acted in "good faith."[27]  This means that if you find that the SEC has established by a preponderance of the evidence that Bent Sr. and/or Bent II controlled RMCI, and that either knew or should have known that RMCI was engaged in fraudulent conduct, the burden of proof shifts to Bent Sr. and Bent II to establish a good faith defense.  Under Section 20(a), each individual defendant can establish a good faith defense by proving by a preponderance of the evidence that he acted in good faith and that he did not directly or indirectly induce the act or acts constituting the fraud allegedly committed by RMCI.  A control person acts in "good faith" where he takes precautionary measures to prevent the controlled party from causing an injury to someone else.[28]  Whether an individual defendant acted in good faith is determined as of the time his actions were taken.

The assertion of this affirmative defense of good faith does not relieve the SEC of its burden of proving culpable participation as an element of the Section 20(a) claim.  The jury will reach the good faith defense only if it concludes that the SEC has met its burden of

---

[25]  Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998) ("To establish liability under Section 20(a), a "plaintiff must show:  (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation.") (citing First Jersey Sec., 101 F.3d at 1472-73 (internal quotation marks omitted)).

[26]  Based on charge in In re Vivendi Universal, S.A. Sec. Lit., No. 02-cv-5571(RJH) (S.D.N.Y.).

[27]  15 U.S.C. § 78t(a) (control person not liable where "the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action").

[28]  See Carpenter v. Harris, Upham & Co., Inc., 594 F.2d 388, 394 (4th Cir. 1979) ("In order to satisfy the requirement of good faith it is necessary for the controlling person to show that some precautionary measures were taken to prevent an injury caused by an employee.").

demonstrating that RMCI violated Section 10(b) and Rule 10b-5, that Bent Sr. or Bent II

controlled RMCI, and that Bent Sr. or Bent II "culpably participated" in RMCI's fraud.

    **D.**     **Section 17(a) Claim (Third Claim for Relief)**[29]

      In its Third Claim for Relief, the SEC claims that RMCI, Resrv Partners, and Bent

II violated Section 17(a) of the Securities Act. Section 17(a) of the Securities Act generally

prohibits fraud in the offer or sale of securities.[30]

      In order for you to find a violation of Section 17(a), the SEC must prove by a

preponderance of the evidence that, in the offer or sale of Primary Fund shares, RMCI, Resrv

Partners, and/or Bent II, directly or indirectly:

> (1)    employed any device, scheme, or artifice to defraud; or

> (2)    obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

> (3)    engaged in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

      For purposes of its Section 17(a) claim, the SEC is relying on the same alleged

misstatements or omissions that I read to you in discussing the SEC's Section 10(b) and Rule 10b-5

claims. As to Bent II, RMCI, and Resrv Partners, these alleged misstatements and omissions

concern RMCI's willingness and ability to protect the Primary Fund's $1 NAV to whatever

degree necessary, without disclosure of limitations on and conditions to RMCI and the Bents'

willingness and ability to support the Primary Fund's $1 NAV. As I discussed earlier, these

---

[29]  Based on charge in <u>SEC v. Stoker</u>, 11-cv-7388 (JSR) (S.D.N.Y. July 31, 2012), Dkt. No. 89.

[30]  <u>See</u> <u>SEC v. Tzolov</u>, No. 08 Civ. 7699(SAS), 2011 WL 308274, at *2 (S.D.N.Y., Jan. 26, 2011) ("'Section 17(a) of the Securities Act is a general prohibition against fraud in the offer or sale of securities, using the mails or the instruments of interstate commerce.'") (quoting <u>SEC v. McCaskey</u>, No. 98 Civ. 6153, 2001 WL 1029053, at *4 (S.D.N.Y. Sept. 6, 2001)).

statements and omissions include Bent II's 1:19 p.m. email on September 15, 2008; statements made to the public based on the media "talking points" approved by Bent II; and statements made to the public based on the <u>Reserve Insights</u> piece or through the transmission of the <u>Reserve Insights</u> piece.

The SEC also alleges in its Third Claim for Relief that RMCI and Resrv Partners are liable for Patrick Ledford's alleged false and misleading statements to Moody's on September 15, 2008 concerning the Primary Fund's satisfaction of redemption requests on that day.  These misstatements are only attributable to RMCI and Resrv Partners, not to Bent II.

The elements of a Section 17(a) violation are substantially the same as those under Section 10(b) and Rule 10b-5.  As I instructed you in connection with the Section 10(b) and Rule 10b-5 claims, in order to prove that RMCI, Resrv Partners, or Bent II engaged in a device, scheme, or artifice to defraud under Section 17(a)(1), or engaged in a course of business that operated or would operate as a fraud under Section 17(a)(3), the SEC must prove, by a preponderance of the evidence, that the defendant engaged in deceptive conduct that went beyond the use of material misrepresentations or material omissions.  As I instructed you in connection with the Section 10(b) and Rule 10b-5 claims, misrepresentations or omissions can form part of a fraudulent scheme or fraudulent course of business, but they are not sufficient, standing alone, to establish a device, scheme, or artifice to defraud, or a course of business that operated, or would operate, as a fraud.[31]

---

[31]  Based on charge in <u>SEC v. Stoker</u>, 11-cv-7388 (JSR) (S.D.N.Y. July 31, 2012), Dkt. No. 89, at 15.

While the elements of a Section 17(a) violation are substantially similar to those under Section 10(b) and Rule 10b-5, there are several important differences that I will now explain.[32]

First, while the SEC must establish scienter to prove a violation of subsection (1) of Section 17(a) – that is, the SEC must prove that the defendant you are considering acted knowingly with intent to defraud or with reckless disregard for the truth – to prove a violation of subsections (2) and (3) of Section 17(a), the SEC need only prove that a defendant acted with "negligence." This means that even if you find that a defendant did not violate Section 10(b), Rule 10b-5, or Section 17(a)(1) – because that defendant did not act with scienter – you may nonetheless find that defendant liable under Sections 17(a)(2) and (3) if that defendant acted negligently.

"Negligence" is the failure to use reasonable care, which is the degree of care that a reasonably careful person would use under like circumstances.  Negligence may consist either of <u>doing</u> something that a reasonably careful person <u>would not do</u> under like circumstances, or in <u>failing</u> to do something that a reasonably careful person <u>would do</u> under like circumstances.

You should be aware that where a claim only requires that the defendant acted "negligently," you may still find that the defendant violated the law if you find that the defendant acted knowingly or recklessly.  Negligence is simply the minimum that you must find.

The second difference between Section 10(b) and Section 17(a) is that, while Section 10(b) applies to conduct "in connection with" the purchase of securities, Section 17(a) only applies to conduct in the "offer or sale" of securities.  This means that to establish a

---

[32]  See Jury Charge in <u>SEC v. O'Meally</u>, No. 06-cv-06483-LTS-RLE (S.D.N.Y. 2012), Dkt. 187 at 2438 ("The elements of a violation of  Section 17(a) of the Securities Act are similar to those under Section 10(b) of the Exchange Act, with a couple of significant differences that I will now explain to you.").

violation of Section 17(a), the SEC must prove by a preponderance of the evidence that the conduct of the defendant you are considering was committed during the "offer or sale" of Primary Fund shares.

The phrase "offer or sale" is construed broadly, [33] and proof of completed sales is not required for the SEC to prevail on a Section 17(a) claim.[34]  The term "sale" means "every contract of sale or disposition of a security or interest in a security for value."[35]  "Disposition" means a "final settlement or determination" of a matter.[36]  "For value" means "for money or something else valuable."  The term "offer" means "every attempt or offer to dispose of a security or interest in a security, for value."[37]

In this case, there is evidence that employees of Resrv Partners – the sales force selling Primary Fund shares – communicated with investors on September 15 and 16, 2008.  Not every communication between a fund's sales force and an investor constitutes a statement made "in the offer or sale" of securities.[38]  However, in deciding whether the September 15 and 16, 2008 statements cited by the SEC were made "in the offer or sale" of Primary Fund shares, you

---

[33] See United States v. Naftalin, 441 U.S. 768, 773 (1979); See 15 U.S.C. § 77b ("The term 'sale' . . . shall include every contract of sale or disposition of a security or interest in a security, for value.  The term . . . 'offer' shall include every attempt or offer to dispose of . . . a security or interest in a security, for value.").

[34] See SEC v. Tambone, 550 F.3d 106, 112 (1st Cir. 2008) ("[B]ecause section 17(a) applies to both sales and offers to sell securities, the SEC need not base its claim of liability on any completed transaction at all."); SEC. v. Goldman Sachs & Co., 790 F.Supp.2d 147, 164 (S.D.N.Y. 2011) (holding "actual sales [are] not essential" for a Section 17(a) claim (citing SEC v. Am. Commodity Exch., Inc., 546 F.2d 1361, 1366 (10th Cir. 1976)).

[35] Naftalin, 441 U.S. at 773.

[36] Black's Law Dictionary (9th ed. 2009).

[37] 15 U.S.C. § 77b(a)(3).

[38] See SEC MIL No. 1 Order (Dkt. 565) at 6 ("[I]t is doubtless true that not every communication between a fund's sales force and an existing investor – made while a registration statement is in effect – constitutes a statement made "in the offer or sale" of securities. . . .").

may consider whether these statements were made to urge investors to purchase Primary Fund shares.[39]

    The final difference between Section 10(b) and Section 17(a) is that – to prove a violation of Section 17(a)(2) – the SEC must establish that the defendant you are considering obtained money or property by means of the misstatement or omission.  In order to demonstrate that a defendant obtained money or property "by means of" one or more materially misleading statements or omissions, the SEC need not prove that that defendant him or itself made the statements or omissions, but only that he or it used the statements or omissions to obtain money or property.  In the context of this case, the SEC must prove that RMCI and Resrv Partners used a material misrepresentation or material omission to obtain money or property, directly or indirectly.  As for Bent II, the SEC must prove that he knowingly, recklessly, or negligently used a material misrepresentation or material omission to obtain money or property, directly or indirectly, for himself or for his employer.

    **E.**  **Investment Advisers Act Claims (Fourth-Seventh Claims for Relief)**

    In Claims for Relief Four through Seven, the SEC alleges that RMCI, Bent Sr. and Bent II violated Sections 206(1), (2), and (4) of the Investment Advisers Act and SEC Rule 206(4)-8.  I will now describe the elements of these claims.

    **1.**  **"Investment Adviser"**

    To be liable under the Investment Advisers Act, a defendant must be an "investment adviser."  It is undisputed that RMCI and Bent Sr. are investment advisers within

---

[39] See id. ("[S]uch statements can fairly be viewed as both urging a Primary Fund investor to hold onto Fund shares already owned, and to purchase more.  And, of course, Primary Fund shares were available for sale; indeed, $1.5 billion of Fund shares were purchased on September 15 and 16, 2008.").

the meaning of the Investment Advisers Act.  Therefore, you need only determine whether Bent

II is an investment adviser under the Investment Advisers Act.

Under the Investment Advisers Act, an "investment adviser" is

[a]ny person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.[40]

If you find that the SEC has established by a preponderance of the evidence that:

(1)     Bent II was engaged in the business of advising the Primary Fund, including the Fund's Board of Trustees, as to the value of securities, or exercised control over what purchases and sales of securities held by the Primary Fund should be made; and

(2)     he received compensation, at least in part, for those services,

then you should find that Bent II was an investment adviser under the Investment Advisers Act.

**2.      Section 206(1) and (2) of the Investment Advisers Act (Fourth Claim for Relief)**

In its Fourth Claim for Relief, the SEC alleges that RMCI, Bent Sr., and Bent II

violated Sections 206(1) and (2) of the Investment Advisers Act.  To prove a violation of Section

206(1) or (2), the SEC must establish by a preponderance of evidence that RMCI, Bent Sr. and

Bent II, as investment advisers

(1)     employed a device, scheme, or artifice to defraud any client or prospective client; or

(2)     engaged in any transaction, practice, or course of business which operated or would operate as a fraud or deceit upon any client or prospective client.

These two subsections refer to a "client."  For purposes of Section 206(1) and (2),

the client is the Fund's Board of Trustees.

---

[40]   15 U.S.C. § 80b-2(11).

For purposes of its Fourth Claim for Relief, the SEC relies on the following

alleged false and misleading statements and omissions:

(1) Bent II's statement at the September 15, 2008 1:00 p.m. Board of Trustees meeting that RMCI would enter into a credit support agreement with the Primary Fund to protect its $1.00 NAV, and Bent Sr.'s statement that sufficient capital could be provided for that purpose, without disclosure of alleged limitations on and conditions to RMCI's and the Bents' willingness and ability to support the $1.00 NAV.

(2) RMCI's, Bent II's, and Bent Sr.'s alleged failure, on September 15, 2008, to disclose facts to the Board of Trustees about the difficulties the Primary Fund was having raising cash.

(3) RMCI's, Bent II's, and Bent Sr.'s alleged failure on September 15 and 16, 2008 to disclose to the Board of Trustees communications with the public or ratings agencies about credit support for the Fund's $1.00 NAV.

The elements of a violation of Sections 206(1) or (2) are similar to, but not

entirely the same as, the elements necessary to prove a violation of Section 10(b) and Section

17(a).  The SEC is required to demonstrate by a preponderance of the evidence that a defendant

committed a fraudulent act, misstatement, or failure to disclose, and must make a showing of

materiality.  I have already explained the meaning of those terms to you.  However, unlike

Section 10(b) or Section 17(a), under Section 206 of the Advisers Act, the SEC need not show

that the alleged misstatement was "in connection with" the purchase of a security, or "in the offer

or sale" of a security.[41]

As to state of mind, for purposes of Section 206(1), the SEC must prove scienter,

which I defined for you earlier as acting "knowingly with intent to defraud or with reckless

disregard for the truth."

For Section 206(2), the SEC may prevail by demonstrating either scienter or

"negligence," a term which I also defined for you earlier.

---

[41]  SEC MIL No. 1 Order (Dkt. No. 565) at 13 (citing Abrahamson, 568 F.2d at 877).

### 3.    Aiding and Abetting Section 206(1) and (2) Violations (Sixth Claim for Relief)

The SEC claims in its Sixth Claim for Relief that Bent Sr. and Bent II aided and abetted RMCI's violations of Sections 206(1) and (2) of the Advisers Act. In order to find either Bent Sr. or Bent II liable for aiding and abetting a violation of Section 206(1) or (2) of the Investment Advisers Act, you must first find that RMCI violated either Section 206(1) or (2). For purposes of its aiding and abetting claim in the Sixth Claim for Relief, the SEC is relying on the same alleged statements and omissions cited in connection with the primary violation alleged in the Fourth Claim for Relief.

I have already instructed you on the standard for aiding and abetting liability. If you find that the SEC has proven by a preponderance of the evidence that Bent Sr. or Bent II substantially assisted RMCI in violating Section 206(1) or (2) of the Investment Advisers Act, and that Bent Sr. or Bent II did so knowingly or recklessly, then that defendant is liable under the Sixth Claim for Relief for aiding and abetting.

### 4.    Section 206(4) of the Advisers Act and SEC Rule 206(4)-8 (Fifth Claim for Relief)

In its Fifth Claim for Relief, the SEC alleges that RMCI, Bent Sr., and Bent II violated Section 206(4) of the Investment Advisers Act and SEC Rule 206(4)-8. To prove a violation of Section 206(4) and Rule 206(4)-8, the SEC must establish by a preponderance of evidence that RMCI, Bent Sr., and Bent II, as investment advisers, did one or more of the following:

(1)    made an untrue statement of a material fact to an investor or prospective investor in the Primary Fund, or omitted to state a material fact necessary to make statements made to such investors, in the light of the circumstances under which they were made, not misleading; or

34

(2)     engaged in any act, practice, or course of business that was fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the Primary Fund.

In connection with its Fifth Claim for Relief, the SEC is relying on different alleged misstatements or omissions for each defendant.

For Bent Sr., the SEC is relying on (1) statements made to investors or prospective investors through transmission of <u>Reserve Insights</u>; and (2) statements made to investors or prospective investors based on <u>Reserve Insights</u>.

For Bent II, the SEC is relying on statements made to the public (1) based on and authorized by Bent II's September 15, 2008 1:19 p.m. email; (2) based on media "talking points" allegedly approved by Bent II; and (3) based on <u>Reserve Insights</u> or through the transmission of the <u>Reserve Insights</u> piece itself.

For RMCI, the SEC is relying on all of the alleged misstatements or omissions of Bent Sr. and Bent II, <u>and</u> Patrick Ledford's alleged false and misleading statements to Moody's on September 15, 2008, concerning the Primary Fund's satisfaction of redemption requests on September 15, 2008.

The elements of a violation of Section 206(4) and Rule 206(4)-8 are similar to, but not the same as, the elements for a violation of Section 10(b) and Section 17(a).  The SEC is required to demonstrate, by a preponderance of the evidence, a fraudulent act, misstatement, or failure to disclose, and materiality.  I have already explained the meaning of those terms to you.  However, unlike under Section 10(b) or Section 17(a), under Section 206(4) of the Investment Advisers Act and Rule 206(4)-8, the SEC need not show that the alleged fraud was "in

connection with" a purchase of a security, or "in the offer or sale" of a security.[42]  Moreover, as I will explain in a moment, statements aimed at persuading investors not to redeem their Primary Fund shares may provide a basis for liability under Section 206(4) of the Investment Advisers Act and Rule 206(4)-8.  As to state of mind, under Section 206(4) and Rule 206(4)-8, the SEC may prevail by demonstrating either scienter or negligence.

As I mentioned earlier, there is evidence that Resrv Partners employees – who served as the sales force selling Primary Fund shares – spoke to investors or potential investors in the Primary Fund on September 15 and 16, 2008.  The SEC alleges that these communications, including statements and emails containing Reserve Insights, were intended both to encourage investors to purchase shares or additional shares in the Primary Fund, and to discourage investors in the Primary Fund from redeeming their shares on September 15 and 16, 2008.

Unlike under Section 10(b) and Section 17(a), fraudulent communications intended merely to discourage investors from redeeming their shares – as opposed to purchasing additional shares – may constitute a violation of Section 206(4) and Rule 206(4)-8.  However, if you find that these communications from Resrv Partners employees were false, fraudulent and misleading, in order to attribute those statements to RMCI, Bent Sr. or Bent II – meaning, hold them responsible for these statements – you must determine that RMCI, Bent Sr., or Bent II exercised control over these statements made by Resrv Partners employees.[43]  In other words,

---

[42]  SEC MIL No. 1 Order (Dkt. No. 565) at 13 (citing Abrahamson, 568 F.2d at 877).

[43]  See id. at 17 ("A reasonable jury could find here that the Bents had complete control over both RMCI and Partners, and that RMCI and the Bents exercised complete control over the statements made by Partners.").

you must determine that the statements made by Resrv Partners employees were crafted and/or approved by RMCI, Bent Sr., or Bent II and were issued at their direction.[44]

### 5.   Aiding and Abetting Section 206(4) and Rule 206(4)-8 Violations (Seventh Claim for Relief)

In its Seventh Claim for Relief, the SEC claims that Bent Sr. and Bent II aided and abetted RMCI's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8.

In order to find a defendant liable for aiding and abetting a violation of Section 206(4) of the Investment Advisers Act and Rule 206(4)-8, you must first find that RMCI violated these provisions.  I have already instructed you on the standard for aiding and abetting liability.

In its Seventh Claim for Relief, the SEC claims that Bent Sr. and Bent II aided and abetted RMCI's alleged misstatements or omissions concerning RMCI's willingness and ability to protect the Primary Fund's $1 NAV to whatever degree necessary, without disclosure of alleged limitations on and conditions to RMCI and the Bents' willingness and ability to support the Fund's $1.00 NAV.  As discussed earlier, these statements and omissions include Bent II's 1:19 p.m. email on September 15, 2008; statements made to the public based on the "talking points" allegedly approved by Bent II; and statements made to the public based on Reserve Insights or through the transmission of Reserve Insights.

If you find that the SEC has proven by a preponderance of the evidence that Bent Sr. or Bent II substantially assisted RMCI in violating Section 206(4) of the Investment Advisers Act and Rule 206(4)-8, and that Bent Sr. or Bent II did so knowingly or recklessly, then that defendant has aided and abetted the primary violation of Section 206(4) of the Investment Advisers Act and Rule 206(4)-8.

---

[44]  See id. ("[A] jury could reasonably find that the public statements made by Partners had been crafted by RMCI and the Bents and were issued at their.

## III.   GENERAL INSTRUCTIONS ON CORPORATE AND AGENCY LIABILITY

As you know, there are four defendants in this case.  Two of them – RMCI and Resrv Partners – are corporations.  A corporation may only act through its employees or agents.  Therefore, to prove liability against RMCI or Resrv Partners, the SEC must prove that an agent of the corporation committed a culpable act with the requisite scienter – for those claims that require scienter – and that the act (and accompanying mental state) are attributable to the corporation.[45]  I have previously defined "scienter" for you.  An "agent" is simply a person acting on behalf of and at the direction of another.[46]  Generally, a corporation such as RMCI or Resrv Partners is chargeable with the acts and knowledge of its employees and agents – committed within the scope of their employment or agency – unless the employee or agent "totally abandoned" the corporation's interests and "acted entirely for his own or another's purpose."[47]  "An employee acts within the scope of his or her employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control.  An employee's act is not within the scope of employment when it occurs within an

---

[45]  <u>Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.</u>, 531 F.3d 190, 195 (2d Cir. 2008) ("To prove liability against a corporation, of course, a plaintiff must prove that an agent of the corporation committed a culpable act with the requisite scienter, and that the act (and accompanying mental state) are attributable to the corporation."); 2 Thomas Lee Hazen, <u>Treatise on the Law of Securities Regulation</u> § 12.8[4], at 444 (4th ed. 2002) ("Corporate Scienter") (describing how Second Circuit "established a more lenient rule for pleading corporate scienter in comparison to the actual proof that must be presented at trial."); <u>SEC</u> v. <u>Daifotis</u>, No. C 11-00137, 2012 U.S. Dist. LEXIS 81306, at **40-41 (N.D. Cal. June 12, 2012) ("[A] corporation can only act through its agents, so the corporation itself, cannot have scienter.").

[46]  <u>See</u> Restatement (Third) of Agency § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.").

[47]  <u>In re Parmalat Secs. Litig.</u>, 684 F.Supp. 2d 453, 472 (S.D.N.Y. 2010), <u>aff'd sub nom Food Holdings Ltd. v. Bank of America Corp.</u>, 432 Fed. App'x 73 (2d Cir. 2011); O'Malley et al., 3 Fed. Jury Prac. & Instr. § 108:01 (6th ed. 2012).

independent course of conduct not intended by the employee to serve any purpose of the employer."[48]

   As you know, certain of the claims here require scienter, and certain of the claims do not.  As I previously instructed you, for purposes of establishing scienter as to RMCI and Resrv Partners, the SEC is relying on evidence concerning the Bents and on Patrick Ledford's statement to Moody's about the payment of redemption requests.   The SEC does not claim that any other employee or agent of RMCI or Resrv Partners acted with scienter.

   Individuals, such as Bent Sr. and Bent II, can also act through agents.  In order to find that the statement of an agent is binding on Bent Sr. or Bent II, you must find that Bent Sr. or Bent II ordered the statement at issue to be made, approved the statement, or furnished the statement at issue.  In other words, Bent Sr. and Bent II may be held liable for statements made by their agents if Bent Sr. or Bent II caused the dissemination of false or misleading statements. For those claims that require scienter, you must also find that Bent Sr. or Bent II acted with the requisite scienter, as I have defined that term for you.

## IV. GENERAL INSTRUCTIONS ON EVIDENCE ADMITTED FOR A PARTICULAR PURPOSE

   The SEC alleges that RMCI, Bent Sr., and Bent II made false and misleading statements to members of the Primary Fund's Board of Trustees.  Evidence concerning these alleged false and misleading statements to the Board of Trustees can only provide a basis for liability under Section 206(1) and (2) of the Investment Advisers Act.  Statements made to the Board of Trustees cannot provide a basis for holding any defendant liable under Section 10(b) and Rule 10b-5, under Section 17(a), or under Section 206(4) of the Investment Advisers Act and Rule 206(4)-8.

---

[48]  Restatement (Third) of Agency § 7.07 (2006).

There has been evidence about "media talking points" allegedly authorized by Bent II, including evidence that Bent II authorized transmission of these "media talking points" to The Wall Street Journal.  It is undisputed that the The Wall Street Journal never published the "media talking points."  Accordingly, proof that Bent II authorized transmission of "media talking points" to The Wall Street Journal cannot provide a basis for securities fraud liability.[49]  This evidence was admitted for your consideration only in connection with your obligation to determine whether Bent II acted with the requisite degree of scienter.

There is evidence that the "media talking points" were sent to CraneData.com and that CraneData.com published a story referencing the "media talking points."  You may consider this evidence in determining whether the SEC has met its burden of demonstrating an actionable misstatement or omission under Section 10(b) and Rule 10b-5, Section 17(a), and Section 206(4) of the Investment Advisers Act and Rule 206(4)-8.

## V.    AFFIRMATIVE DEFENSE – ADVICE OF COUNSEL[50]

Bent Sr. and Bent II have presented an advice of counsel defense concerning certain of their conduct at issue in this case.

Let me say at the outset that Bent Sr. and Bent II have not presented any advice of counsel defense as to statements made to the Primary Fund's Board of Trustees.  Accordingly, there is no advice of counsel defense to the SEC's Fourth and Sixth Claims for relief under Sections 206(1) and (2) of the Investment Advisers Act.

---

[49]  See Manavazian v. Atec Group, Inc., 160 F.Supp.2d 468, 484 (E.D.N.Y. 2001) ("Communications that fail to reach the market . . . cannot support a securities fraud claim.") (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 173-75 (2d Cir. 1998)).

[50]  Based on Plaintiff's requested instruction 32; Defendant's requested instruction 58; Markowski v. SEC, 34 F.3d 99, 105 (2d Cir. 1994) (setting forth the elements of a good faith reliance on counsel affirmative defense).

The Bents' advice of counsel defense concerns the SEC's claims regarding (1) the $10 million figure in the draft credit support agreement; and (2) the media talking points. Bent Sr. and Bent II argue that they relied in good faith on the advice of their in-house counsel at the time, Catherine Crowley, and on the advice of their outside lawyers at the firm of Willkie Farr & Gallagher. Bent Sr. and Bent II have the burden of proving their good faith advice of counsel defense by a preponderance of the evidence.

To establish good faith reliance on advice of counsel, a defendant must prove, by a preponderance of the evidence, each of the following elements:

(1)     that he made a complete disclosure of all relevant facts to counsel;

(2)     that he requested counsel's advice as to the legality of the contemplated action;

(3)     that he received advice from counsel that the contemplated action or statement was legal; **and**

(4)     that he reasonably relied in good faith on that advice.

If you find that Bent Sr. or Bent II has proven each of these elements by a preponderance of the evidence as to the statements I just referenced, these statements cannot be relied on to make a determination that Bent Sr. or Bent II had an intent to defraud under Section 10(b) and Rule 10b-5, under Section 17(a), or under Section 206(4) of the Advisers Act and Rule 206(4)-8.

With respect to these statements, you may still find that Bent Sr. or Bent II acted recklessly under these statutes and rules, or that they acted negligently under Sections 17(a)(2) and 17(a)(3), and under Section 206(4) of the Advisers Act and Rule 206(4)-8.[51] However, in determining whether Bent Sr. or Bent II acted recklessly or negligently in connection with the

---

[51] See Jury Charge in SEC v. O'Meally, No. 06-cv-06483-LTS-RLE (S.D.N.Y. 2012), Dkt. 187 at 2442 (instructing that even if a defendant proves advice of counsel defense, "[y]ou may still find that the Defendant acted recklessly under Sections 10(b) and 17(a)(1) or negligently under Sections 17(a)(2) and 17(a)(3)").

statements I listed above, one factor you may consider is whether they have demonstrated good faith reliance on advice of counsel.

## VI.    FINAL GENERAL INSTRUCTIONS

### A.    Right to See Exhibits and Hear Testimony; Communications With Court

We will send into the jury room an index reflecting all the exhibits received in evidence and a copy of all of the documents that were received in evidence.

If you want to hear any of the tape recordings that were received in evidence, make that request and those taped conversations will be played for you in the courtroom. Transcripts of tape recordings will not be sent into the jury room, because the transcripts were not received in evidence.  Transcripts were provided to assist you in listening to the calls, but it is the calls and not the transcripts that were received in evidence.

You will recall that electronic spreadsheets showing telephone calls and purchases of Primary Fund shares were received in evidence.  If you wish to see any of the information contained in these electronic spreadsheets, make that request and we will make that information available to you here in the courtroom.

If you want any of the testimony sent back to you, you may request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony or any other item of evidence.

If you want any further explanation of the law as I have explained it to you, you may also request that.  As I noted earlier, however, you may take into the jury room your copy of these instructions.

Any communication to me should be made in writing, signed by your foreperson. Please include the date and time, and then give the note to one of the marshals.  Please make any

notes as clear and precise as possible.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**B.**      **Duty to Deliberate/Unanimous Verdict**

You will be asked to determine whether the SEC has met its burden of proving, by a preponderance of the evidence, each element of its claims as to each defendant.  Your decision on these issues must be unanimous.

You will also be asked to determine – again unanimously – whether either of the Bents has sustained his burden of proving, by a preponderance of the evidence, his "good faith" defense to control person liability in connection with the SEC's Second Claim for Relief.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be most in accordance with the truth.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

43

If you are divided, do <u>not</u> report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open court.

### C.      Verdict Form

Your verdict will be organized according to a verdict form.  This form will assist you in reaching a verdict and lists the questions you must answer based on the instructions that I have given you.

### D.      Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  It is customary for Juror Number 1 to serve as the foreperson, and that is what we will do here.  The foreperson doesn't have any more power or authority than any other juror, and her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  She will send out any notes, and when the jury has reached a verdict, she will notify the marshal that the jury has reached a verdict, and you will come into open court and deliver your verdict.

### E.      Announcing the Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom and deliver your verdict.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## VII.    <u>CONCLUSION</u>

Members of the jury:  that concludes my instructions to you.  Thank you for your time and attention.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give.

\* \* \* \*

The marshal will now be sworn.  Members of the jury, you may now begin your deliberations.