Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY  10178-0060
Tel.  212.309.6000
Fax: 212.309.6001
www.morganlewis.com

**John Dellaportas**
Partner
212 309-6690
JDellaportas@MorganLewis.com



September 12, 2013

**Via Email (Michael_Herman@nysd.uscourts.gov)**

Hon. Paul G. Gardephe
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *SEC v. Reserve*, Case No.: 09-CV-04346

Dear Judge Gardephe:

We respectfully write, on behalf of defendants in the above-referenced case, to respond to plaintiff SEC's September 9, 2013 letter to the Court addressing "new matters."

First, the February 28, 2013 Colorado Order referenced by the SEC in its letter was part of a negotiated settlement with the Securities Commissioner of the State of Colorado.  Following the jury's verdict in this case, the Colorado Securities Commissioner agreed: (a) to dismiss with prejudice all claims brought against Bruce Bent, Sr. (no claims were ever brought against Bruce Bent II); and (b) to discontinue the claims brought against RMCI and Resrv Partners without either entity having to pay any fine or penalty.  In exchange, the two entity defendants – having ceased operations in 2010 – agreed to conduct no further such business in the State of Colorado.  As the SEC has never proposed any resolution remotely comparable to the one in Colorado, we do not believe those settlement terms have any relevance to this action.

Second, in *SEC v. Pentagon Capital Management, PLC,* 2013 WL 4017028, *8 n.7 (2d Cir. Aug. 8, 2013), Judge Sweet did not impose "six billion dollars" of penalties, as the SEC suggests, but rather "civil penalties in the amount equal to Defendants' pecuniary gain for late trades ...." *SEC v. Pentagon Capital Management PLC*, 844 F.Supp.2d 377, 427 (S.D.N.Y. 2012).  In this case, defendants made no pecuniary gain; to the contrary, if the class settlement is approved, they will be incurring a seven-figure loss for their efforts on the Fund's behalf from September 15, 2008 onward – which efforts were held to be necessary and not tied to any alleged wrongdoing.  (Mar. 28, 2012 Tr. 64:4-15.)  In any event, since the civil penalty in *Pentagon Capital* was based on defendants' gain, and not on the number of violations, the footnoted comment to which the SEC cites in its letter had no bearing on the actual holding of that case.

Hon. Paul G. Gardephe
September 12, 2013
Page 2



Further, at issue in *Pentagon Capital* were third-tier penalty for violations of Section 10(b) of the Exchange Act and Section 17(a)(1) of the Securities Act. The SEC still has not cited a case imposing third-tier penalties for violations of Sections 17(a)(2) or (3) of the Securities Act, or Sections 206(2) or (4) of the Adviser's Act, the statutes at issue here.

Nor are the two cases factually analogous. *Pentagon Capital* was a bench trial at which Judge Sweet, serving as finder of fact, found 10,052 late trades by defendant, each a separate securities law violation. 844 F. Supp.2d at 427. In our case, by contrast, the jury did not find multiple violations. (When defendants proposed a comprehensive verdict form which would have had the jury specifically identify the act(s) it found to be a violation (ECF Doc. No. 527-1), the SEC opposed that request, claiming that: "the Jury is not required to write an essay." (ECF Doc. No. 531-1, p. 4.)) Nor is there any "meaningful" support in the trial record to infer such findings from the verdict. *See Rapoport v. SEC*, 682 F.3d 98, 108 (D.C. Cir. 2012). As we explained in our post-trial brief, the violations for which RMCI and Resrv Partners were held liable were necessarily based on statements made by Patrick Ledford to Moody's in a single telephone call – statements which were not alleged to have reached any investors. (ECF Doc. 627, pp. 1, 6-8.) As for the Bent II negligence finding, nothing in the trial record supports a finding that it related to multiple securities "offers." Indeed, according to post-trial interviews, the jurors expressly rejected the SEC's claim to that effect. *See Wall Street Journal, "*Behind the Bent Verdict," Nov. 26, 2012 ("In another claim, the SEC alleged that Bruce Bent II, along with his company, made false statements while selling a security, according to court filings. But jurors said they had heard almost no evidence related to the sale of securities.").

Lastly, the SEC persists in speaking of so-called "victims," even though this Court has twice held that "the SEC will be estopped from arguing that any civil penalty to be imposed should be determined in part on the basis of investor losses." (Mar. 28, 2012 Tr. 20:6-21:8; *accord,* ECF Doc. No. 544, p. 2 n. 1. Even were it not precluded, the SEC never established that any investor lost money based on anything it claims defendants did wrong, as all the supposedly wrongful conduct occurred well after State Street Bank had stopped funding redemptions, at which point no investor was receiving further proceeds under any circumstances.

In sum, the SEC's claim of "hundreds" of violations is baseless and would lead to an "absurd result." *See In re optionsXpress, Inc.,* Admin. Proc. File No. 3-14848 (Initial Decision, June 7, 2013) at 101 (http://www.sec.gov/alj/aljdec/2013/id490bpm.pdf ). We respectfully refer the Court to defendants' brief in opposition to the SEC's post-trial motion (ECF Doc. 627, pp. 30-37), wherein we more fully address these issues.

Sincerely,

*s/John Dellaportas*

cc:     All Counsel of Record [via email]